**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERTO CLEMENTE JR.;
KIMBERLY DSCHUHAN; RYAN NORTON
KAILEE CLEMENTE; AND
THE ROBERTO CLEMENTE JR. FAMILY       CIVIL DIVISION
AGENCY LLC

      Plaintiffs,                  Civil Action No. 2:22-cv-56


ALLSTATE INSURANCE COMPANY;       **COMPLAINT**
TOMAINO INSURANCE AGENCY;
JOHN TOMAINO; AND JUSTIN YOUNG


      Defendants.           **JURY TRIAL DEMANDED**


## COMPLAINT

Plaintiffs, Roberto Clemente Jr, Kimberly Dschuhan, Ryan Norton, Kailee Clemente, and The Roberto Clemente Jr. Family Agency LLC ("Plaintiffs"), by and through their undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendants and states as follows:

## INTRODUCTION

The most famous name in Pittsburgh could not shield Mr. Roberto Clemente Jr. and his family from racial discrimination. Black franchisees have historically faced discrimination in their attempts to secure a franchise relationship with major corporations. The Clemente family's endeavor with Allstate was another instance. From the start, Plaintiffs suffered from discrimination when a white Allstate employee expressed that Roberto Clement Jr. could not use his own name in connection with his insurance agency that would operate under the Allstate umbrella. This employee said this despite other white agents using their family name for their

insurance agencies.  He fabricated this falsehood in an apparent attempt to prevent Mr. Clemente and his family from entering the insurance agency business with Allstate.

Unfortunately, the discrimination did not stop. At an Allstate-sponsored RV event, a white attendee hurled the racist remark, "I wonder if the n*gger had flight insurance." This was in obvious reference to Mr. Clemente's late father, the world-renowned humanitarian and baseball player, Roberto Clemente.  Plaintiffs informed Allstate of this appalling comment and the racism that they experienced at an Allstate-sponsored event.  But instead of standing behind Mr. Clemente, his family, and The Roberto Clemente Jr. Family Jr. Agency, Allstate advised Plaintiffs to no longer do public events.  Allstate did not offer support.  Allstate did not offer to take corrective action to ensure that these comments would not be tolerated at Allstate business functions.  Instead, Allstate discriminated against a minority-owed agency by telling them that if they cannot tolerate racist customers, they should not continue to do public events.

The discrimination was severe and pervasive. Throughout Plaintiffs' contractual relationship with Allstate, Allstate refused to engage them in good faith.  Allstate stymied their business by not changing their Google My Business pictures to reflect that they now owned the agency.  Instead, when patrons searched for The Roberto Clemente Jr. Family Agency, they saw a street view of the previous agency that Plaintiffs purchased.  Further, Allstate refused to change the sign that still bore the previous agency's name. Instead, they "fixed" the sign by taping blue tape over the previous name.  This tape, however, did not cover the previous agency's name at night, when the lights illuminating the sign would show through the tape.  In juxtaposition, after Allstate terminated Plaintiffs' contract, Allstate immediately changed the sign, which they should have done previously under the parties' contractual obligations.

Moreover, Allstate terminated Plaintiffs' contract for pretextual reasons. Allstate provided the reason that Plaintiff applied a discount to customers' policies that Allstate did not sanction. Yet Allstate trained Plaintiffs on how to apply this discount and to provide it to customers. And after Allstate terminated Plaintiffs' contract, Allstate gave the trainer – who instructed Plaintiffs on the discounts – customers from Plaintiffs' contractually-bought book of business.

From the beginning, Allstate did not want Plaintiffs. They made this clear. They did not want Plaintiffs because their newly-formed-minority-owned agency threatened the established agencies that are almost exclusively white-owned. So, Allstate, through its employees and supervisors, thwarted Plaintiffs' business success. Plaintiffs' name could not shield them from racial discrimination.

## JURISDICTION AND ADMINISTRATIVE REMEDIES

1.      All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2.      Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3.      This Court has subject matter jurisdiction under the varying federal statutes alleging a cause of action in this case, including, but not limited to 42 U.S. Code § 2000e and 42 U.S. Code § 1981.

4.      On or about August 30, 2021, Plaintiffs dual-filed a charge with the Pittsburgh office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations.[1] *See* EEOC Charge of Discrimination, attached as Exhibit 1.

---

[1] Plaintiff will seek leave to amend and add PHRA claims after the requisite one-year time period has passed.

5.      The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiffs timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue letter that the EEOC issued.  *Id*.

6.      Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

**PARTIES**

7.      Roberto Clemente Jr. is a Black Latino male who, at all relevant times, was a licensed insurance agent who had an ownership stake in The Roberto Clemente Jr. Family Agency LLC.

8.      Kimberly Dschuhan is Roberto Clemente Jr.'s mother-in-law.  She, at all relevant times, was a licensed insurance agent who had an ownership stake in The Roberto Clement Jr. Family Agency LLC.

9.      Ryan Norton is Roberto Clemente Jr.'s brother-in-law. He, at relevant times, was an insurance agent with The Roberto Clemente Jr. Family Agency LLC.

10.     Kailee Clemente is Roberto Clemente Jr.'s wife.  She was, at relevant times, a non-licensed insurance agent who had an ownership stake in The Roberto Clemente Jr. Family Agency LLC.

11.     Allstate Insurance Company ("Allstate") is a nationwide insurance company that sells insurance policies, and, upon information and belief, is an affiliate of Allstate Insurance Corporation.

12.     Tomaino Insurance Agency is a purported independent contractor of Allstate Insurance Company and is licensed to sell insurance policies in the Commonwealth of Pennsylvania.

13.     John Tomaino is the owner of the Tomaino Insurance Agency and, at all relevant times, had the power to bind the insurance company.

14.     Justin Young served as an Allstate employee in a corporate role and controlled the appointment process for independent contractors/franchisees to become affiliated with Allstate. He is also a former independent contractor of Allstate Insurance Company and now owns his own independent agency.

## FACTUAL BACKGROUND

15.     In or around 2007, Ms. Dschuhan started to strategize.  At the time, she worked for Nationwide Insurance as a top producing agent.  Although she exceeded expectations in that role, she sought to embark on a venture that would procure an ownership stake for her and her family.

16.     Mr. Clemente and his wife, Ms. Clemente, decided to join Ms. Dschuhan in this venture.  Ms. Dschuhan is Ms. Clemente's mother and Mr. Clemente's mother-in-law.

17.     Ms. Dschuhan sought to obtain a book of business for her and her newly-formed family partnership.  Ms. Dschuhan researched books of business for sale.  After a thorough search, Ms. Dschuhan began negotiations with Daniel Cone for his book of business ("Book").

18.     In or around July 2017, Ms. Dschuhan and Mr. Clemente continued negotiations with Mr. Cone to purchase a premium-sized Book valued in excess of or around $1,300,000 for a purchase price of or around $225,000.  Plaintiffs would acquire the Cone Agency upon the purchase of Mr. Cone's Book.

19.     To facilitate the sale, Mr. Cone involved Justin Young, an Allstate Field Sales Leader ("FSL").  Mr. Cone's Book was contingent on the purchaser remaining affiliated with

Allstate.  Plaintiffs would find out that during these negotiations, Mr. Young failed to disclose certain information, which, amongst other things, included the Book not being fully vested.

20.     In or around August 2017, Mr. Young requested that Mr. Clemente, Ms. Clemente, and Ms. Dschuhan meet to discuss business strategy with Eric Copenhaver.  Mr. Young and Mr. Copenhaver, however, failed to disclose the meeting's true purpose; that is, for Plaintiffs to disclose business strategy, plans, and secrets.

21.     During this meeting, Mr. Young and Mr. Copenhaver repeatedly expressed sarcasm and levied inappropriate and offensive comments.  Although Allstate stated, at the time, that it endeavored to retain a workforce that mirrors the diversity of its customers and communities it serves, Mr. Young's and Mr. Copenhaver's actions demonstrated the opposite.

22.     In or around August 2017 to January 2018, Mr. Young consistently "moved the goalposts" with respect to when The Roberto Clemente Jr. Family Agency could begin its official affiliation with Allstate.  This caused Plaintiffs to have to push back the start of their business operations.

23.     On January 10, 2018, Ms. Dschuhan received the below email from Mr. Young.



24.     Mr. Young again memorialized that Plaintiffs' minority-owned agency would have its start date pushed back. And, in addition, Mr. Young stated that Plaintiffs could not use the name Roberto Clemente Jr. in their agency.

25.     Despite buying a Book from an agency who used the full name of its owner – Daniel Cone – Mr. Young told Plaintiffs that they could not use the name, Roberto Clemente Jr. There was no Allstate policy making this name unavailable. Rather, Mr. Young did not want Plaintiffs to utilize the name of a prominent Afro-Latino athlete, entrepreneur, and humanitarian who shared the same name as his father.

26.     In fact, other agencies – which are white owned – used the name of their owners/financial backers for their agency name.



27.   Mr. Clemente contacted Allstate after he received a copy of this email.  Allstate stated that they were sorry for the experience that Mr. Clemente had and that the actions of Justin Young are not representative of Allstate.

28.   Another territory manager for Allstate also called Mr. Clemente and Ms. Dschuhan to apologize for Mr. Young's actions.

29.   In or around March 2018, FSL William Baldy introduced Plaintiffs to Ms. Valerie Staudt, who was assigned as Plaintiffs' Agency Process Specialist.  Mr. Young previously

employed Ms. Staudt before her promotion to Corporate Agency Process Specialist in or around December 2014.

30.     On or around June 1, 2018, The Roberto Clemente Jr. Family Agency LLC executed a contract with Allstate Insurance Company ("Contract").  Exhibit 2.  This Contract appointment The Roberto Clemente Jr. Family Agency to represent Allstate in its Exclusive Agency Program.

31.     Per the terms of that contract, The Roberto Clemente Jr. Agency became an independent contractor/franchisee of Allstate.

32.     Allstate, however, retained the power to determine in its sole discretion all matters relating to its business and the operation of Allstate.

33.     The Contract further stated that it would employ the Key Person, who was identified in the agreement as "Kimberly Dschuhan."  Allstate employed Ms. Dschuhan "to provide services under this Agreement for its term."

34.     After Plaintiffs became an official independent contractor/franchisee of Allstate, Plaintiffs expected that Allstate would use the official agency name on communications with clients and/or prospective clients.   Plaintiffs paid for this service under the Blueprint Program.

35.     Allstate, however, refused to use Plaintiffs' agency name, which is clearly Afro-hispanic, in the introduction letter to Plaintiffs' book of clients.

36.     Further, Allstate refused to use The Roberto Clemente Jr. Family Agency name on its agent listing page. Instead, Allstate only listed Ms. Dschuhan's name.

37.     In or around 2018, Plaintiffs informed Ms. Staudt that Allstate had yet to provide Plaintiffs signage to which they were entitled.

IV. **COMPANY PROPERTY, CONFIDENTIALITY:**

A. The Company will furnish Agency such signs, forms, manuals, records, and other materials and supplies as the Company deems advisable to assist Agency. All such property and information furnished by the Company will remain the property of the Company. In addition, the Company will offer, at Agency's expense, such additional materials and supplies as the Company feels may be helpful to Agency.

... or in any manner, directly or indirectly, disclose to any

38.     Instead of providing the requisite signs and materials, Allstate coordinated for a signage company to cover up the previous agent's name with blue tape.  Other agencies, however, were afforded proper signage so that they could represent Allstate and their agencies in a professional manner.

39.     Allstate also declined to replace the signage on The Roberto Clemente Jr. Family Agency's building after Plaintiffs made repeated requests.  The signage still bore the name of the previous agency, Daniel Cone Agency.  The standard practice, however, is for Allstate to replace old signage automatically, without request, within a week.

40.     Allstate also informed Plaintiffs that they could not place their own sign reading their agency name, The Roberto Clemente Jr. Family Agency.  In contrast, the old agency still had its name affixed to the building.

41.     In or around November 2018, Plaintiffs noticed that the sign, which still had only blue tape covering it, began to light up at night during store hours.  The signage, in bright letters, displayed: "Cone Agency, 412-621-4811."  The sign at daytime with blue tape:



42.     The sign at night:

Nov 19, 2018, 5:21 PM

Hi Val.  Why does Dans Agency still show on the sign?  I just took this today.  Did you hear back from anyone about getting a new one?  Thanks. Kim.

43.     In or around November 19, 2018, Ms. Dschuhan reported to Allstate and sent pictures, which detailed the problem.  The signage above Plaintiffs' building still had yet to be changed.  Other white agencies, however, were given proper signage upon request.

44.     Rather than fix the problem, Allsate had the previous signage company return and tape over the blue tape again.  Ms. Dschuhan conversed with the employee for the signage company and explained that simply placing another layer of blue tape looked unprofessional.

45.     The incorrect signage affected Plaintiffs' brand as agents. Plaintiffs endeavored to enter a contractual relationship with Allstate that allowed them to build a brand and business as independent contractors.  This relationship included the right to freely associate their own individual brand with Allstate.  And the parties contractual relationship contemplated such a relationship.  Instead of facilitating this relationship, Allstate, through its employees and agents, intentionally hindered – from the inception of Plaintiffs' business – a black and latino owned/represented business from establishing its brand and customer base.

46.     In or around January 2019, Plaintiffs attended a Pittsburgh RV event located at the David L. Lawrence Convention Center in Pittsburgh at which Plaintiffs would be an insurance company vendor and while representing Allstate.

47.     All Plaintiffs, and Mr. Clemente's son, Roberto Clemente III, greeted those attending the event in front of their booth, which advertised Allstate and their agency.  A white male approached Plaintiffs and hurled racial slurs.  He directed the comment "wonder if the n*gger had flight insurance" to Mr. Clemente.  Mr. Clemente's father, a humanitarian recognized worldwide for his unequivocal pursuit of human rights,  died tragically in an airplane crash while taking supplies to earthquake survivors in Nicaragua.  Although Mr. Clemente's father was Pittsburgh's most renowned humanitarian, his son's family witnesses close up virulent racism at an Allstate-sponsored event.

48.     Plaintiffs complained to Allstate.  Specifically, Plaintiffs complained to Valerie Staudt, Bill Baldy, and Eric Copenhaver.  Allstate, however, did nothing to address this appalling, racist encounter that Plaintiffs had to endure.  Rather, Mr. Copenanhaver responded that Plaintiffs should just not participate in vendor shows anymore and that they should use postcard mailers instead for advertising.

49.      Not only did Allstate fail to intervene and support its minority-owned vendor when faced with virulent racism, Allstate ratified it. By telling Plaintiffs that they should not make public appearances, Allstate validated the racist notion that minorities should just not participate so they can avoid discrimination.  Allstate, upon information and belief, did not tell any white-owned agencies to not publicly participate in vendor shows.

50.      In or around March 2019, Plaintiffs advised Allstate that the Google My Business page for their business still showed a streetview image of the previous agent's, Daniel Cone, window and signage.  Allstate owned the domain name for The Roberto Clemente Jr. Family Agency.  As such, Plaintiffs could not alter the images shown.  Plaintiffs continued to have the wrong signage associated with their agency. This caused clients to confuse Plaintiffs' business with a business that was no longer operational.

51.      Allstate retained the sole control of its web domain.  Plaintiffs, although presented as independent contractors, were at Allstate's whims when it came to an essential portion of its business; that is, its online business presence through Google.

52.      The inability to advertise their business on Google caused Plaintiffs to suffer significant losses in customer acquisition and retention.

53.      In or around March 2019, Plaintiffs complained to Rebecca Kincade, Senior Marketing Consultant, to correct The Roberto Clemente Jr. Family Agency's signage and Google listing.    Still, Allstate never intervened to assist Plaintiffs with the sign change.

54.      Allstate never changed Plaintiffs' sign.  Rather, the old sign with blue tape affixed on top of the old agency's name remained in place until The Roberto Clemente Jr. Family Agency closed in August 2020.

55.     Plaintiffs also advised Allstate that The Roberto Clemente Jr Family Agency was not listed on Allstate's website, and, by extension, Allstate's Local Agent Locator.  Instead, Allstate only listed Ms. Dschuhan on the website.

56.     This led to an immeasurable loss of customer acquisition potential.  Potential and current clients often stated that they could not find Plaintiffs' agency because the sign on the building had the wrong name and Plaintiffs' correct agency name was not listed on Allstate's website, which Allstate owned and retained control over.

57.     Similarly, Plaintiffs complained that Allstate used the wrong phone number inside their Allstate digital proposal/ quote illustration.  Again, Allstate did nothing. This caused prospective and current clients to call the wrong number.  This caused confusion and frustration amongst Plaintiffs' customer base.

58.     In or around October 2019, Allstate displayed further intentional discrimination. One of Plaintiffs' clients called Allstate's customer service center (1-800-allstate) to ask for Plaintiffs' correct business number after noticing that Allstate provided the incorrect number. Allstate placed the client on hold for over an hour.  After the client finally got through to Allstate's customer service representative, the representative intentionally discriminated against Plaintiffs by referring to their agency name as a "dead black baseball player."  The representative then referred the customer to finish the paperwork with a different agency.

59.     The Robert Clemente Family Jr. Agency was started with the mission of filling a gap for minority and Spanish-speaking residents of the entire Commonwealth of Pennsylvania, which included residents of Pittsburgh where Plaintiffs' agency was a licensed producer to execute insurance policies.

60.     In or around March 2020, the Covid-19 pandemic swung into full effect.  The Roberto Clemente Jr. Family Agency's business, like most businesses, was impacted.

61.     On or around July 28, 2020, Ms. Dschuhan received a call from a male individual who identified himself as a fraud investigator for Allstate.  This investigator questioned Ms. Dschuhan and Mr. Norton regarding the practice of applying a widow discount to certain policies.

62.     Allstate corporate educator, Valerie Staudt, who worked in tandem with John Tomaino, instructed Plaintiffs on how and when to apply these discounts.  Plaintiffs only applied discounts in accordance with how Allstate instructed them to do so.

63.     On or around August 20, 2021, Ms. Dschuhan received an email from Allstate inviting her to a Zoom call with Eric Copenhaver and Mark Pianelli.

64.     On or around August 21, 2021, Mr. Pianelli and Mr. Copenhaver informed Ms. Dschuhan that Allstate decided to terminate Ms. Dschuhan's R3001C contract.  They informed her that she had to close her office immediately.  And they gave her only two hours to accomplish this task, which included wiping her computers, making final deposits, and placing a closed sign on the door.  Ms. Dschuhan lived 45 minutes away from the office.

65.     Ms. Dschuhan was told that the termination was for Fraud.

66.     Plaintiffs received a letter detailing the conditions of their termination.  Allstate iterated that it has the absolute right to approve any buyer to whom Plaintiffs wished to sell their Book.  Allstate informed Plaintiffs that they had to successfully sell their Book by December 1, 2020.

67.     Following the termination, Plaintiffs had to recoup their investment by selling their Book.  Allstate, by and through its agents, interfered with and made this process impossible.

68.     Although Plaintiffs purchased a Book, they did not have sole discretion to whom they could sell the Book following their termination.  Rather, Mr. Copenhaver and Allstate retained veto power over the sale of the Book.

69.     Allstate did not approve certain potential buyers for the Book, which prevented Plaintiffs from selling it.  On at least one occasion, Allstate provided a pretextual reason for blocking the sale.

70.     Allstate stymied the sale of the Book by not allowing Plaintiffs to sell it to independent agents. But it allowed other agents – Justin Young for example – to own allstate agencies and a separate independent agency.

71.     Despite Mr. Copenhaver being charged with helping Plaintiffs facilitate a sale, he was purposefully unhelpful.  He informed Plaintiffs that he was retiring during this transitional period and did not inform his predecessor on the situation.

72.     Plaintiffs were eventually made aware that if they could not sell the Book, a TPP process would ensue.  Plaintiffs never received any official documents explaining this TPP process.  Thus, Plaintiffs were never informed of the consequences of not selling their Book in time.

73.     In or around February 2021, Plaintiffs' clients received communications from John Tomaino, which stated that Mr. Tomaino was now Plaintiffs' clients' new agent.

74.     Mr. Tomaino is the agent who previously trained Plaintiffs on how to apply discounts.  Plaintiffs used this technique and Allstate fired them.  Mr. Tomaino, who is a white male, was allowed to teach this technique, and then leverage Plaintiffs' hardship because of his teachings to acquire Plaintiffs' client base.

75.     Plaintiffs lost the full value of their investment into the Book and the insurance business with Allstate.  Plaintiffs' investment would have matured and they would have capitalized on a measurable return.  However, due to Defendants' actions, Plaintiffs' never realized these gains.

76.     Although Plaintiffs purchased the Book directly from Daniel Cone, Allstate stripped Plaintiffs of their ownership of the Book when it unilaterally decided to terminate Plaintiffs' contract with Allstate.  Plaintiff gave consideration for the Book.

77.     Plaintiffs have not received any compensation for the Book that they forfeited due to Allstate's illegal termination of their services/contractual agreement.  Apart from their monetary loss, they were damaged in their professional and personal relationships and reputations from Defendants' actions.

**Allstate Employed Each Individual Plaintiff**

78.     Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

79.     Allstate exercised control over each of the Plaintiffs.

80.     Allstate dictated many terms of their employment.  Allstate determined how Plaintiffs could advertise their business, what signage Plaintiffs could use in or on their business, what domain address they could use for their website, and the ways in which Plaintiffs could write policies.

81.     Allstate also contracted for non-compete agreements with the individual Plaintiffs.   There is a strong presumption that an independent contractor with a non-compete provision is an employee, not an independent contractor.

82.     Allstate had the power to terminate the individual Plaintiffs employment, which it did.

83.     Allstate was the joint employer, or, in the alternative, sole employer of the individual Defendants. Allstate had the power to alter, supervise, and control Plaintiffs' conditions of employment to a substantial degree.

84.     Allstate unilaterally determined the compensation that The Roberto Clemente Jr. Family Agency would receive.

85.     Allstate controlled and approved all new business.  Allstate maintained authority to decline business that Plaintiffs generated.

86.     Allstate maintained control of whether policies purchased from Plaintiffs were renewed and set the guidelines for renewal.

### COUNT I
**Section 1981**
***Race Discrimination, Hostile Work Environment, and Retaliation***
(Plaintiffs v. Defendants)

87.     Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

88.     Mr. Clemente is an Afro-hispanic male.  Ms. Clemente, Mr. Norton, and Ms. Dschuhan are white.  But they were discriminated against because of their association with Mr. Clemente.

89.     The Third Circuit has recognized associational discrimination claims, which are based on familial or other relationships with persons discriminated against based on race.

90.     Defendants' discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under  42 U.S.C. § 1981; as such, its remedies are implicated.

91.     Plaintiffs had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

92.     Plaintiffs were at will employees, which implicates their right to make and enforce contracts.

93.     In the alternative, Plaintiffs were independent contractors, which implicates their right to make and enforce contracts.

94.     Defendants abridged Plaintiffs' right to make and enforce contracts by its discriminatory conduct toward Plaintiffs.

95.     As a result of Defendants' actions, Defendant has denied Plaintiffs the right to the same terms, conditions, privileges and benefits of their employment with Defendant.

96.     Defendants, by and through its supervisors, intentionally discriminated against Plaintiffs on the basis of race.

97.     Plaintiffs are a member of a protected class and were qualified for the position that Plaintiffs held.

98.     Defendants' actions altered Plaintiffs' work environment.

99.     The discrimination that Plaintiffs faced detrimentally affected Plaintiffs. And this discrimination would detrimentally affect a reasoanble pereson in like circumstances.

100.    This severe and pervasive environment continued throughout Plaintiffs' employment.

101.    Defendants are liable for their supervisors under respondeat superior.

102.    Plaintiffs participated in protected conduct.  Defendant retaliated against Plaintiffs because of his participation in protected activities.   There is a causal connection between

Plaintiffs' participation in protected activities and the adverse employment action from which Plaintiffs suffered.

103.    Specifically, Plaintiffs participated in protected conduct by complaining about a racist incident at an Allstate-sponsored event.

104.    As a direct and proximate result of Defendant's acts and conduct, Plaintiffs has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

105.    The wrongful acts and conduct of Defendant was done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

106.    Plaintiffs suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiffs.

107.    Plaintiffs complained about race discrimination in the contractual processes with Allstate.

108.    Plaintiffs were terminated as a result of Defendants' discriminatory conduct.

109.    Allstate discriminated against Plaintiffs during the process in which Plaintiffs attempted to sell their Book.  Allstate intentionally stymied Plaintiffs from selling their economic interest to a private buyer.

110.    But for Plaintiffs' opposition to race discrimination, they would not have expierenced the retaliation to which Allstate subjected them to.

111.    Justin Young intentionally discriminated against Plaintiffs when he attempted to prevent Plaintiffs from using their name in association with their business.  His reasons were pretextual.  Other white agencies were allowed to use their name with their respective agency.

Mr. Young endeavored to preclude Plaintiffs from using the Roberto Clemente name for fear that Plaintiffs would attract minority business away from Mr. Young.

112.     John Tomaino, by and through his agency, concocted a scheme to deprive a minority-owned agency of its Book. Mr. Tomaino instructed Plaintiffs  on how to apply certain discounts. Then, after they were terminated for applying such discounts, Mr. Tomaino absconded with Plaintiffs' Book.

113.     Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT II
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Race Discrimination; Retaliation; Hostile Work Environment)
*Plaintiffs v. Allstate Insurance Company*

114.     Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

115.     Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiffs of the rights guaranteed under Title VII.

116.     Defendant is a covered employer under Title VII and employees more than 15 employees.

117.     As a result of Defendant's actions, Defendant has denied Plaintiffs the right to the same terms, conditions, privileges and benefits of Plaintiffs' employment with Defendant.

118.     Mr. Clemente is an Afro-hispanic male.  Ms. Clemente, Mr. Norton, and Ms. Dschuhan are white.  But they were discriminated against because of their association with Mr. Clemente.

119.    Defendant, by and through its supervisors, intentionally discriminated against Plaintiffs on the basis of race.

120.    Plaintiffs are a member of a protected class and are qualified for the position that Plaintiffs held.

121.    Defendant's actions altered Plaintiffs' work environment.

122.    The discrimination that Plaintiffs faced detrimentally affected Plaintiffs. And this discrimination would detrimentally affect a reasoanble person in like circumstances.

123.    This severe and pervasive environment continued throughout Plaintiffs' employment.

124.    Defendant is liable for its supervisors under respondeat superior.

125.    Plaintiffs participated in protected conduct.  Defendant retaliated against Plaintiffs because of their participation in protected activities.  There is a causal connection between Plaintiffs' participation in protected activities and the adverse employment action from which Plaintiffs suffered.

126.    Specifically, Plaintiffs participated in protected conduct by complaining about a racist incident at an Allstate-sponsored event.

127.    As a direct and proximate result of Defendant's acts and conduct, Plaintiffs has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

128.    The wrongful acts and conduct of Defendant was done with deliberate indifference to the statutory rights of Plaintiffs.

129.    Plaintiffs suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiffs.

130.    Plaintiffs were terminated as a result of Defendant's discriminatory conduct.

131.    Allstate discriminated against Plaintiffs during the process in which Plaintiffs attempted to sell their Book.  Allstate intentionally stymied Plaintiffs from selling their economic interest to a private buyer.

132.    Justin Young intentionally discriminated against Plaintiffs when he attempted to prevent Plaintiffs from using their name in association with their business.  His reasons were pretextual.  Other white agencies were allowed to use their name with their agency.  Mr. Young endeavored to preclude Plaintiffs from using the Roberto Clemente name for fear that Plaintiffs would attract minority business away from Mr. Young.

133.    Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

<u>**COUNT III**</u>
**Breach of Contract**
**(Roberto Clemente Jr. Family Agency  v. Allstate)**

134.    The Roberto Clemente Jr. Family Agency entered into a contractual agreement in which Plaintiffs received an affiliation Allstate and The Roberto Clemente Jr. Family Agency compensated Allstate for this affiliation.

135.    The parties exchanged valuable consideration for their respective promises.

136.    The parties distilled their offer and acceptance into a written contractual agreement.

137.    Every contractual agreement carries with it the implied duty of good faith and fair dealing.

138.    Allstate breached its contractual obligations by terminating the contract based on a discriminatory (illegal) reason.

139.    Allstate breached its contractual agents when one of its agents instructed Plaintiffs on a certain insurance technique and then, after Plaintiffs utilized this instruction, used this insurance practice as pretext to terminate the contract.

140.    Allstate further breached other contractual terms of the parties' agreement.

141.    Upon information and belief, due to Allstates' actions they were able to convert Plaintiffs' Book, based on bad faith.

142.    As a direct and proximate result of Defendant's unlawful practices, Plaintiffs is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's intentional, discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT IV**
**Fraud**
**(Plaintiffs v. Allstate Insurance Company and Tamaino Insurance Agency)**

143.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

144.    Defendants materially misrepresented that Plaintiffs would be able to operate with the Book in good faith.  Specifically, Allstate, by and through its agents, represented that Plaintiffs would have a good faith opportunity to grow their book.

145.    Similarly, the Tamaino Insurance Agency, by and through John Tamaino, represented that Plaintiff's utilize certain discount techniques.

146.    Allstate made these statements knowing that they did not intend to treat Plaintiffs in the same manner as other agencies.  Rather, Allstate, by and through their employees, knew

that an agency that shares a last name with a famous baseball star might compete with and take business from other agencies. As such, from the beginning, Plaintiffs were sabotaged and not allowed the same business opportunities.

147.    Tamaino Insurance Agency communicated the discount technique, in the alternative, with knowledge that the technique was not correct pursuant to Allstate's policies and practices.  Upon information and belief, the Tamaino Insurance Agency had a part in Allstate terminating Plaintiffs because they used the technique that the Tamaino Insurance Agency taught them.

148.    Allstate intended for Plaintiffs to rely on their statements.  They endeavored for Plaintiffs to rely on their statements because they could not outright refuse to allow them to become an agency pursuant to anti-discrimination laws. As such, they used bad faith as a means to end around anti-discrimination laws and prematurely terminate Plaintiffs without sufficient cuaase.

149.    Tamaino Insurance Agency intended for Plaintiffs to rely on its statements that the technique that it taught Plaintiffs, by and through John Tomaino, was the correct technique.

150.    Plaintiffs justifiably relied on Allstate's statements.

151.    Plaintiffs justifiably relied on theTomaino Insurance Agency's statements.

152.    As a direct and proximate result of Defendants' unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

### COUNT V
**Conversion**
**(Plaintiffs v. Tomaino Insurance Agency)**

153.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

154.    Plaintiffs had a property right in their Book that for which they supplied valuable consideration.   The Tomaino Insurance Agency deprived Plaintiffs of this right.

155.    The Tomaino Insurance Agency did not have Plaintiffs' consent to interfere with Plaintiffs' property rights.

156.    The Tomaino Insurance Agency did not have a lawful justification.  The Tomaino Insurance Agency leveraged the purported illegal technique, described herein, to abscond with clients from Plaintiffs' Book.

157.    Upon information and belief, The Tomaino Insurance Agency still services these clients.

158.    As a direct and proximate result of Defendants' unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's acts unless and until the Court grants the relief requested.

### COUNT VI
### Unjust Enrichment
### (Plaintiffs v. Allstate and Tomaino Insurance Agency)

159.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

160.    Plaintiffs conferred a benefit to the Defendants.  Defendants now have Plaintiffs' Book for which they paid valuable consideration.

161.    Defendants' appreciated that Plaintiffs paid valuable consideration for the Book.

162.    Defendants' acceptance and retention of such benefits under these circumstances would be inequitable for Defendants to retain the benefit without the payment of value.

163.     As a direct and proximate result of Defendants' unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's acts unless and until the Court grants the relief requested.

**COUNT VII**
**Tortious Interference**
**(Plaintiffs v. Tomaino Insurance Agency and John Tomaino)**

164.     Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

165.     A valid contract existed between Plaintiffs and Allstate Insurance Company.

166.     Defendants knew about the existence of the contract between Plaintiff and Allstate Insurance Company.

167.     Defendants acted intentionally and improperly by teaching Plaintiffs the discount technique for the purpose of eventually securing Plaintiffs clients.

168.     Defendants' actions caused Plaintiff to suffer injury.

169.     As a direct and proximate result of Defendants' unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's acts unless and until the Court grants the relief requested.

**PRAYER FOR RELIEF**
**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

    a)   Declaring the acts and practices complained of herein to be in violation of Section 1981 and Title VII;

b) Enjoining and permanently retraining the violations alleged herein;

c) Entering judgment against the Defendants and in favor of the Plaintiffs in an amount to be determined;

d) Awarding compensatory damages to make Plaintiffs whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiffs has suffered or may suffer as a result of Defendant's improper conduct;

e) Awarding compensatory damages to Plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

f) Awarding punitive damages to Plaintiffs;

g) Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, PHRA, and at common law;

h) Awarding Plaintiffs the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

i) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


Respectfully submitted,


/s/ Andrew Lacy, Jr.

Dated: January 10, 2022                          Andrew Lacy, Jr. Esq.

**THE LACY EMPLOYMENT
LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law
.com

*Counsel for Plaintiff*