IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERTO CLEMENTE, JR., KIMBERLY
DSCHUHAN, RYAN NORTON, KAILEE
CLEMENTE, THE ROBERTO CLEMENTE
JR. FAMILY AGENCY LLC,

               Plaintiffs,

    v.

ALLSTATE INSURANCE COMPANY,
TOMAINO INSURANCE AGENCY, JOHN
TOMAINO,

               Defendants.

2:22-CV-00056-CCW

## **OPINION**

This case arises from the breakdown of the relationship between the Roberto Clemente Jr. Family Agency, LLC (the "Clemente Agency") and Allstate Insurance Company. Plaintiffs—the agency itself, three of its owners (Roberto Clemente Jr., Kimberly Dschuhan, and Kailee Clemente), and one of its non-owner agents (Ryan Norton)—allege that the breakdown was the result of discrimination. Defendants include not only Allstate, but also the Tomaino Insurance Agency and its owner, John Tomaino (collectively, the "Tomaino Agency"), who were allegedly involved in the events giving rise to Plaintiffs' operative Second Amended Complaint. *See* ECF No. 36. Presently before the Court are Allstate's and the Tomaino Agency's Motions to Dismiss, ECF Nos. 43 & 49, in which they separately argue under Federal Rule of Civil Procedure 12(b)(6) that Plaintiffs have failed to state a claim for relief. For the reasons that follow, Allstate's Motion will be GRANTED IN PART and DENIED IN PART and the Tomaino Agency's Motion will be

GRANTED in its entirety.  The Court will grant Plaintiffs leave to amend their allegations to address the deficiencies identified by Allstate and the Tomaino Agency.

I.     **BACKGROUND**

The following facts are taken from the Second Amended Complaint, which the Court takes as true for the purpose of ruling on the instant Motions to Dismiss.  Although the Second Amended Complaint spans 346 numbered allegations, the Court will address only those allegations necessary to address the arguments raised in Allstate's and the Tomaino Agency's Motions.

Roberto Clemente played eighteen seasons for the Pittsburgh Pirates major league baseball team before dying tragically in a plane crash while on a humanitarian mission to Nicaragua.  He was subsequently inducted into the National Baseball Hall of Fame.  Roberto Clemente's son, Roberto Clemente Jr., is a licensed insurance agent.  ECF No. 36 ¶ 7.  Mr. Clemente Jr. is married to Kailee Clemente, who is also a licensed insurance agent, as is her mother, Kimberly Dschuhan (Mr. Clemente Jr.'s mother-in-law).  *Id.* ¶¶ 8, 10.  Ryan Norton, Mr. Clemente Jr.'s brother-in-law, is also a licensed insurance agent.  *Id.* ¶ 9.  At all relevant times, Ms. Dschuhan, Mr. Clemente Jr., and Ms. Clemente each had an ownership interest in the Clemente Agency, where Mr. Norton was a non-owner agent.  *Id.* ¶¶ 7–10.

The formation of the Clemente Agency begins with Ms. Dschuhan, who was formerly a successful insurance agent for Nationwide Insurance.  *Id.* ¶ 14.  While working as a Nationwide agent, she began exploring the purchase of a "book of business" from an existing agency, which would enable her to own her own agency.  *See id.* ¶¶ 14–16.  After a search, Ms. Dschuhan entered negotiations with Daniel Cone, an Allstate agent, resulting in a July 2017 Letter of Intent under which Mr. Cone would sell his book of business to the Clemente Agency.  *Id.* ¶¶ 16, 19–20.  The

sale was contingent on Allstate's approval and the Clemente Agency's formal affiliation with Allstate. *Id.* ¶ 21.

The approval and affiliation process did not go smoothly.  According to Plaintiffs, Justin Young, an Allstate representative, "consistently 'moved the goal posts' with respect as to [sic] when [t]he [Clemente Agency] could complete its official affiliation with Allstate and open its doors." *Id.* ¶ 24.  Among the issues was a dispute over whether the Clemente Agency could do business as the "Roberto Clemente Jr. Family Agency, LLC," because Mr. Clemente Jr. was a "financial backer[]" and not "the person holding the licenses" for the agency. *Id.* ¶ 25.  Despite these issues, Allstate approved the sale and Mr. Cone sold his book of business to the Clemente Agency pursuant to an Asset Purchase Agreement dated May 1, 2018. *Id.* ¶¶ 16, 34;  ECF No. 36-2.

The next month, the Clemente Agency and Allstate formalized their affiliation with an Exclusive Agency Agreement ("EAA") dated June 1, 2018.  ECF No. 36-3.  Pursuant to the EAA, Allstate authorized the Clemente Agency to sell its insurance products to cover risks located in Pennsylvania, and the Clemente Agency agreed not to sell any other insurer's products. *See generally id.*  Allstate also agreed to provide signage and materials as it deemed "advisable." *Id.* § IV(A).  The EAA further provided that the relationship between the Clemente Agency and Allstate was "that of an independent contractor for all purposes" and that employees of the Clemente Agency were not Allstate employees. *Id.* §§ I(D), III.  The EAA could be terminated immediately for cause, or without cause upon ninety days written notice. *Id.* § XVII(B).

According to Plaintiffs, their experience with Allstate did not improve after the signing of the EAA.  For one thing, the name issues continued, and Allstate refused to update its listings and provide signage that reflected the name "Roberto Clemente Jr. Family Agency, LLC."  ECF No.

36 ¶¶ 28, 45–50. Plaintiffs also allege that other Allstate agencies in the area were jealous of the Clemente Agency's association with "one of the most beloved Black athletes of all time," which gave the Clemente Agency a competitive advantage with minority customers and thus caused friction with the other agencies. *Id.* ¶¶ 164–67. In one instance of alleged friction, Plaintiffs claim that the Tomaino Agency "stole[] one of their customers," by "g[iving] the client a lower quote than the Plaintiffs had first provided." *Id.* ¶¶ 82–83. Upon bringing the issue to Allstate's attention, an Allstate representative, Valerie Staudt, reached out to Mr. Tomaino, who "criticiz[ed] the way that Plaintiffs quoted insurance" and told her that Plaintiffs, quote, "should have changed this to this, and changed this to this," with respect to certain unspecified discounts. *Id.* ¶ 87. Ms. Staudt then trained Plaintiffs on those unspecified discount practices, which Plaintiffs began to employ. *Id.* ¶ 101.

The issues between the Clemente Agency and Allstate came to a head on August 21, 2020, when Allstate informed Ms. Dschuhan that it had decided to terminate the EAA. *Id.* ¶ 114. Allstate told Ms. Dschuhan that the termination was "for fraud," without "providing any analysis for its decision." *See id.* ¶¶ 116–17; *see also* 36-3 § XVII(B)(3) (Allstate may terminate EAA immediately upon proving written notice for cause including fraud). Earlier that summer, an Allstate fraud investigator had contacted Ms. Dschuhan and Mr. Norton "regarding the practice of applying a widow discount to certain policies" (a practice that the Second Amended Complaint does not further describe). ECF No. 36 ¶ 112. For its part, the Clemente Agency denies committing any fraud, and claims that "[i]f there were any mistakes" it was because they relied on certain representations by Mr. Tomaino and Ms. Staudt, apparently pertaining to widow discounts. *Id.* ¶ 117. Although the Second Amended Complaint is not entirely clear on this point, it appears that Plaintiffs are referring to what Ms. Staudt communicated to Plaintiffs in response to the

Tomaino Agency's alleged theft of a Clemente Agency customer—i.e., that Plaintiffs "should have changed this to this, and changed this to this," with respect to certain unspecified discounts.  *Id.* ¶ 87.

The Clemente Agency had a qualified right to sell its book of business upon termination of the EAA, which it invoked.  ECF No. 36-4.  Under its arrangement with Allstate, the Clemente Agency had until December 1, 2020 to find a buyer, which had to "meet Allstate's eligibility requirements."  *Id.*  Allstate retained an "absolute right of approval of the buyer."  *Id.*  According to Plaintiffs, they failed to sell the Clemente Agency's book of business by December 1, 2020, because "Allstate . . . interfered with and made this process impossible," including by providing a pretextual reason for blocking at least one potential sale.  ECF No. 36 ¶¶ 127, 129.  Plaintiffs further contend that in October 2020, the Tomaino Agency agreed to receive "certain seeded policies owned by [the Clemente Agency]," despite the fact that Plaintiffs still had until December 1, 2020 to sell the Clemente Agency's book of business.  *Id.* ¶ 138.

From there, the Second Amended Complaint moves ahead to August 26, 2021, when Plaintiffs filed a Charge of Discrimination with the Equal Employment Opportunity Commission, asserting that Allstate terminated the EAA and took various other actions against Plaintiffs for discriminatory reasons.  *See generally* ECF No. 36-1.  The specifics of Plaintiffs' allegations of discrimination are discussed in detail below, but they rest largely upon Allstate's alleged disparate treatment of Plaintiffs because the Clemente Agency is minority owned (Mr. Clemente Jr. is Afro-Hispanic) and the Clemente Agency's use of the name associated with a famous Afro-Hispanic baseball player, Roberto Clemente.  *See generally* ECF No. 36.  The EEOC ultimately did not reach the merits of Plaintiffs' Charge of Discrimination and dismissed it as untimely filed.  ECF No. 36-1 at 11.

Plaintiffs then turned to this Court for redress, filing their original Complaint on January 10, 2022.  ECF No. 1.  Plaintiffs filed a First Amended Complaint on April 20, 2022, *see* ECF Nos. 19–20, 29, which Allstate and the Tomaino Agency moved to dismiss, ECF Nos. 32, 34. Instead of opposing the motions, Plaintiffs filed their Second Amended Complaint.  ECF No. 36. In the Second Amended Complaint, Plaintiffs assert claims for:  (1) a violation of 42 U.S.C. § 1981 (Count I, against all defendants);  (2) a violation of Title VII of the Civil Rights Act of 1964 (Count II, against Allstate);  (3) breach of contract (Count III, against Allstate);  (4) fraud (Count IV, against all defendants);  (5) conversion (Count V, against Tomaino);  (6) unjust enrichment (Count VI, against all defendants);   and (7) tortious interference (Count VII, against all defendants).  Allstate and the Tomaino Agency have separately moved to dismiss the Second Amended Complaint for failure to state a claim.  ECF Nos. 43, 49.  With briefing complete, the motions are now ripe for adjudication.[1]

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*   Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility

---

[1] The Court has jurisdiction over Counts I and II, which raise federal questions, under 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Counts III–VII under 28 U.S.C. § 1367.

standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

## III.    ANALYSIS

Because Allstate's alleged breaches of its contractual obligations to Plaintiffs factor into each of Plaintiffs' other claims, the Court will address the breach of contract claim against Allstate (Count III) first.  The Court will apply Pennsylvania law to the state-law claims because the parties have cited only Pennsylvania law in their analysis and therefore implicitly agree that it controls. *See Commonwealth Cap. Corp. v. Getronics, Inc.*, 147 Fed. App'x 253, 254–55 (3d Cir. 2005) (requiring federal courts sitting in diversity to apply the law that the parties "explicitly or implicitly" have chosen).

7

A.     **The Court Will Deny Deny Allstate's Motion to Dismiss Plaintiffs' Breach of Contract Claim**

In Count III, Plaintiffs allege that Allstate failed to live up to various contractual obligations.  In Pennsylvania, a claim for breach of contract has three elements:  "(1) the existence of a contract, including its essential terms;  (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (cleaned up).  Allstate argues that Plaintiffs have not plausibly alleged the second of those elements—breach.  ECF No. 50 at 25–29.[2]  In response, Plaintiffs point to four breaches that they claim to have plausibly alleged:  (1) Allstate failed to provide the Clemente Agency with signage under the EAA;  (2) Allstate breached its duty to allow Plaintiffs to sell the Clemente Agency's book of business before December 1, 2020;  (3) Allstate did not adhere to the EAA's termination provision;  and (4) Allstate failed to provide Plaintiffs with its Blueprint Service.  ECF No. 58 at 2630.  The Court agrees that these breaches are plausibly alleged, such that the claim should proceed to discovery.

With respect to the first and second alleged breaches, Allstate relies heavily on the fact that the relevant agreement vests Allstate with significant discretion regarding its performance.  As to signage, the EAA requires Allstate to provide the Clemente Agency with only "such signs, forms, manuals, records, and other materials and supplies as the Company **deems advisable** to assist [the] Agency."  ECF No. 36-3 § IV(A) (emphasis added).  Similarly, Allstate purported to reserve "the absolute right of approval of the buyer" for the Clemente Agency's book of business post-termination, with the buyer having to "meet Allstate's eligibility requirements."  ECF No. 36-4 at

---

[2] In its opening brief, Allstate argues briefly that Plaintiffs did not plead the "contractual obligations of Allstate that were allegedly breached."  ECF No. 50 at 25–26.  To the extent that Allstate is arguing that Plaintiffs failed to plausibly allege the existence of a contract with respect to the four breaches at issue, that argument would fail (at least in light of Allstate's limited argument on the issue).

1.  According to Allstate, these discretionary reservations are fatal to Plaintiffs' claim because "there can be no breach where a party is simply exercising its discretionary rights under a contract." ECF No. 61 at 7 & n.14.

Allstate's argument overstates the bounds of its discretion.  Every contract contains as an implied term the duty of good faith and fair dealing.  *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 170 (3d Cir. 2013).  Consistent with that duty, "where discretion is given under a contract, the discretion must be exercised reasonably."  *Orange v. Starion Energy PA, Inc.*, No. CV 15-773, 2016 WL 1043618, at *3 (E.D. Pa. Mar. 16, 2016), *aff'd*, 711 F. App'x 681 (3d Cir. 2017).  Here, Plaintiffs have set forth sufficient factual matter to plausibly allege that Allstate breached its agreements with Plaintiff despite the discretion those agreements afforded Allstate.

First, Plaintiffs have plausibly alleged that Allstate unreasonably denied it signage owed under the EAA.  The signage dispute stems from the Clemente Agency's acquisition of Mr. Cone's book of business.  *See* ECF No. 36 ¶¶ 46–55.  In taking on Mr. Cone's book, Plaintiffs also took over his storefront, which had a large blue awning that displayed the words "Allstate" and, in smaller font, the words "Cone Agency" along with the Cone Agency's phone number.  *Id.* ¶¶ 49, 52;  ECF No. 36-2 § 1.  Despite numerous requests to provide the same signage for the Clemente Agency, Allstate refused, and instead simply covered up the words "Cone Agency" and the phone number as shown here:



ECF No. 36 ¶ 52.   These allegations give rise to the plausible inference that Allstate acted unreasonably by denying the same signage to two agencies that were essentially identically situated.   In terms of the EAA itself, these allegations demonstrate that Allstate deemed the signage "advisable" for the Cone Agency and was not reasonable in reaching the opposite conclusion as to the Clemente Agency.   ECF No. 36-3 § IV(4).

Second, Plaintiffs have plausibly alleged that Allstate unreasonably blocked Plaintiffs' sale of the Clemente Agency's book of business.   As alleged in the Second Amended Complaint, Allstate failed to communicate with the Clemente Agency and its prospective buyers and provided a pretextual reason for refusing to approve one potential buyer by refusing to approve a sale to an independent agent when Allstate allowed other independent agents (including Mr. Young) to own Allstate agencies.   ECF No. 36 ¶¶ 127–31.   Together, these allegations give rise to a plausible inference that Allstate's refusal to approve a sale of the Clemente Agency's book of business was not a reasonable exercise of its discretion.   *See Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super.

1992) (bad faith includes "lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance").

Turning to Plaintiffs' third alleged breach—Allstate's termination of the EAA—Allstate argues that it was entitled to terminate the EAA "immediately" for cause based on Plaintiffs' fraud. ECF No. 61 at 8.  Plaintiffs respond that they committed no fraud, and thus, that the termination was a breach of the EAA.  ECF No. 36 ¶ 118;  ECF No. 58 at 30.  Implicit in this argument is an interpretation of the EAA that would allow Allstate to terminate the agreement for fraud only if Plaintiffs in fact committed fraud (as opposed to an interpretation of the EAA that, for example, allowed Allstate to terminate for cause if it reasonably believed Plaintiffs committed fraud after an appropriate inquiry).  Because Allstate has not challenged that interpretation at this stage, the Court will assume, without deciding, that Plaintiffs correctly interpret the EAA's for-cause termination provision.

With that interpretation in mind, Plaintiffs have plausibly alleged that they never committed fraud and thus that Allstate breached the EAA by terminating the agreement without providing the Clemente Agency ninety days written notice required where termination is not for cause.  *See* ECF No. 36-3 § XVIII.  Although the Second Amended Complaint is sparse regarding the charge of fraud against the Clemente Agency, it apparently concerned a "widow discount" practice that the Tomaino Agency also employed.  *See* ECF No. 36 ¶ 112.  Because Plaintiffs allege that Allstate was aware of this practice by the Tomaino Agency and actively encouraged Plaintiffs to employ it, it is plausible that the practice was not fraudulent and thus could not serve as a basis to terminate the EAA for cause.  *See id.* ¶¶ 87–90.  Plaintiffs, accordingly, have plausibly alleged that Allstate breached the EAA's termination provision.

11

Finally, Allstate does not address Plaintiffs' fourth alleged breach, concerning the Blueprint Program.  Although the Second Amended Complaint contains limited information about the program, Plaintiffs have plausibly alleged this breach, too.  According to Plaintiffs, they paid Allstate for its Blueprint Service program under which Allstate allotted Plaintiffs with "a designated dollar amount that could only be used for the Blueprint program."  ECF No. 36 ¶ 42. Despite having paid for the program, Plaintiffs "were never able to enjoy the full benefits of the program," which consistent primarily of marketing assistance.  *Id.*  These allegations set forth a typical breach—Plaintiffs claim that they paid for performance they did not receive.

In sum, Plaintiffs have plausibly alleged at least four breaches of contract by Allstate. Count III will therefore proceed to discovery.

**B.     The Court Will Dismiss Count I as to the Tomaino Agency but Not Allstate**

In Count I of the Second Amended Complaint, Plaintiffs claim that Allstate and the Tomaino Agency violated section 1981, which guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The elements of a section 1981 claim are:  (1) that the plaintiff is a member of a protected class;  (2) intent to discriminate based on race;  (3) discrimination that concerns the right "to make and enforce contracts";  and (4) but-for causation.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020);  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).  Both Allstate and the Tomaino Agency argue that Count I must be dismissed because the Clemente Agency has failed to plausibly allege intent to discriminate and but-for causation, and Allstate further argues that any discrimination did not concern the right to make or enforce a contract.  ECF No. 44 at 5–9;  ECF No. 50 at 9–16.  Allstate also raises two threshold issues—that the claim is time-barred as to conduct predating the EAA, and that Ms. Dschuhan, Ms. Clemente,

12

and Mr. Norton cannot bring a section 1981 claim because they are white.  ECF No. 50 at 7–8, 19–20.  The Court will address the two threshold issues first.

### 1.      Plaintiffs' Section 1981 Claim Is Not Time-Barred

Allstate's first threshold argument is that Count I should be dismissed insofar as it concerns "pre-contractual conduct (e.g., entering into contracts)" because the claim would be barred by a two-year statute of limitations.  ECF No. 50 at 8.  Plaintiffs respond that they are "not bringing any pre-contractual Section 1981 claim" but even if they were, that evidence of discrimination outside the statute of limitations may still be used to prove later discriminatory intent.  ECF No. 58 at 14.  Based on Plaintiffs' concession, and for the avoidance of doubt, Plaintiffs may not pursue any pre-contractual section 1981 claims in this matter, to the extent that their allegations could be construed as raising such a claim.  At this juncture the Court need not rule on the question of whether any pre-contractual conduct would be admissible to establish intent.

### 2.      Ms. Dschuhan, Ms. Clemente, and Mr. Norton Are Not Precluded from Bringing a Section 1981 Claim Because They Are White

Allstate's next threshold argument is that Count I should be dismissed as to Ms. Dschuhan, Ms. Clemente, and Mr. Norton because they are white.  ECF No. 50 at 19–20.  For support, Allstate cites (1) caselaw from within the Third Circuit stating that the plaintiff being a "racial minority" is an element of a section 1981 claim and (2) the statutory text, which guarantees all persons the same rights to make and enforce contracts "as enjoyed by white citizens."  *Id.*19 (quoting *Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. 11-1117, 2012 WL 1828028, at *17 (W.D. Pa. May 18, 2012);  42 U.S.C. § 1981(a)).  Plaintiffs respond that Ms. Dschuhan, Ms. Clemente, and Mr. Norton, are bringing an association claim that is viable under section 1981, and would be recognized by the Third Circuit.  ECF No. 58 at 14–15.  The Court agrees with Plaintiffs that such a claim is viable.

Initially, Allstate is correct that courts within this circuit—including the Third Circuit itself—have set forth the elements of a section 1981 claim to include that the plaintiff "is a member of a racial minority." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). The Third Circuit, however, made that statement in a case involving non-white plaintiffs, *id.* at 793, and Allstate has not directed the Court to a case (nor has the Court found one on its own) where the Third Circuit has answered the question presented here: whether a white plaintiff can bring an associational discrimination claim under section 1981. Thus, the issue is one for this Court to decide in the first instance.

Turning to the text of section 1981, Allstate's argument is undermined by Supreme Court precedent interpreting the statute. Allstate's textual argument is straightforward: it argues that because the statute guarantees all persons the same rights "'*as enjoyed by white citizens*' . . . . only non-White individuals (racial minorities) may bring a § 1981 claim." ECF No. 50 at 19. The Supreme Court, however, rejected that very argument in *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 286–87 (1986), where it held that section 1981 applied "to racial discrimination in private employment against white persons." The Supreme Court explained that the phrase "as is enjoyed by white citizens" is one that simply emphasizes "the racial character of the rights being protected" and that by its own terms the statute "applies to 'All persons,' including white persons." *Id.* at 287 (internal quotation marks omitted). Given the Supreme Court's holding in *McDonald*, this Court cannot conclude that Ms. Dschuhan, Ms. Clemente, and Mr. Norton are barred from bringing a section 1981 claim simply because they are white.

Although *McDonald* did not concern an associational discrimination claim, and thus does not conclusively resolve the viability of such a claim, the Court concludes that such a claim is available under section 1981. For one thing, the Third Circuit recently acknowledged the viability

14

of such a claim in the Title VII context, *see Kengerski v. Harper*, 6 F.4th 531, 538–39 (3d Cir. 2021), and there is substantial overlap between section 1981 and Title VII, at least in cases (like this one) involving employment disputes, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 256–57 (3d Cir. 2017) ("The substantive elements of a [racial discrimination] claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII." (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009))).  For another, the courts of appeals that have reached this question have found section 1981 associational discrimination claims viable.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 574–75 (6th Cir. 2000);  *Parr v. Woodmen of the World Life Ins.*, 791 F.2d 888, 890 (11th Cir. 1986);  *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114–15 (5th Cir. 1986);  *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1149 (4th Cir. 1980);  *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 (2d Cir.), *on reh'g*, 520 F.2d 409 (2d Cir. 1975).

The Court is persuaded by the reasoning of these cases.  As a textual matter, a claim that the plaintiff has been discriminated against because of their association with someone of another race implicates the "racial character" of the rights protected by section 1981 as interpreted in *McDonald*, 427 U.S. at 286–87 (quoting *Georgia v. Rachel*, 384 U.S. 780, 791 (1966)).  The Court perceives no material difference between such a claim and the one approved of in *McDonald*, where a white plaintiff claims to have been discriminated against because of their own race.  *See id.*  More broadly, the availability of an associational discrimination claim is harmonious with Congress's "intent to enact 'sweeping legislation implementing the thirteenth amendment to abolish all the remaining badges and vestiges of the slavery system.'"  *Brown*, 250 F.3d at 797; *see also Johnson*, 215 F.3d at 574.  Holding that white plaintiffs cannot bring a claim under section

1981 to redress discrimination based on their association with racial minorities would be antithetical to that Congressional purpose.

Accordingly, the Court concludes that white plaintiffs are not precluded from bringing an associational discrimination claim under section 1981.  Allstate's Motion will therefore be denied insofar as it seeks to dismiss the section 1981 claim brought by Ms. Dschuhan, Ms. Clemente, and Mr. Norton because they are white.

### 3.  Plaintiffs Have Plausibly Alleged that Allstate, but Not the Tomaino Agency, Acted with Discriminatory Intent

Both Allstate and the Tomaino Agency contend that the Clemente Agency has failed to plausibly allege the element of discriminatory intent, arguing that Plaintiffs' allegations on the issue are conclusory.  Plaintiffs respond that they have plausibly alleged intent, pointing to the following factual allegations from the Second Amended Complaint:  (1) after terminating the EAA, Allstate replaced the Clemente Agency with a white-owned agency (the Tomaino Agency); (2) Allstate treated the Clemente Agency less favorably than white-owned agencies;  (3) Allstate failed to address instances of racism directed at Plaintiffs;  (4) Allstate treated its minority customers less favorably than its white customers;  (5) the Tomaino Agency stole clients from the Clemente Agency and "w[as] likely involved in having Plaintiffs falsely targeted for fraud";  and (6) the Tomaino Agency acquiesced to Allstate's discriminatory conduct.  ECF No. 54 at 4–11; ECF No. 58 at 4–12.  The Court concludes that the factual allegations are sufficient to plead discriminatory intent as to Allstate.  The same, however, cannot be said as to the Tomaino Agency.

Before addressing these allegations, the Court notes that at this stage, all Plaintiffs must establish is a plausible inference of intent to discriminate.  *Twillie v. Erie Sch. Dist.*, No. CIV.A. 11-165, 2013 WL 4666072, at *4 (W.D. Pa. Aug. 30, 2013), (citing *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir.2008)), *aff'd*, 575 F. App'x 28 (3d Cir. 2014).  At times, Allstate suggests that

the Supreme Court's recent decision in *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020), heightened the standard for pleading discriminatory intent, but the Court does not read the decision to do so.  Instead, *Comcast* addresses the *causation* standard that applies to section 1981 claims—which the Court discusses below—not the separate discriminatory intent element of such a claim.  140 S. Ct. at 1019.  The case therefore does not disrupt the preexisting precedent that a plaintiff asserting a section 1981 claim need only allege facts that give rise to a plausible inference of discriminatory intent, a standard which is consistent with that ordinarily applied to pleading elements of a claim.

Turning to the allegations concerning Allstate, the Court concludes that Plaintiffs have plausibly alleged intent to discriminate based on race.  Although the Second Amended Complaint is replete with conclusory allegations regarding Allstate's discriminatory intent, there are nevertheless enough specifically pleaded facts to allow the claim to proceed.

First, Plaintiffs have alleged that Allstate singled out the minority-owned Clemente Agency for less favorable treatment than white-owned agencies, which contributes to the plausibility of intentional discrimination.  *Rittenhouse Ent., Inc. v. City of Wilkes-Barre*, 782 F. App'x 148, 154 (3d Cir. 2019) (singling out bar that served more minorities for policing than other bars with similar complaints gave rise to inference of discrimination in section 1981 case);  *cf. Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716–17 (3d Cir. 2012) (dismissing a section 1981 claim where plaintiff "fail[ed] to allege how [Defendant] treated non-minority contractors any differently than it treated him").  For example, Plaintiffs have alleged that both the Clemente Agency and the Tomaino Agency used the same "widow discount" practice but that only the Clemente Agency's EAA was terminated based on the discounts, despite the fact that Allstate was aware that the Tomaino Agency also used the practice.  ECF No. 36 ¶¶ 87–92.  Plaintiffs also allege that Allstate

did not provide the Clemente Agency with the same signage as white-owned agencies—rather than providing the same awning as it did for Mr. Cone, Allstate simply taped over references to the Cone Agency. *Id.* ¶¶ 46–54. Finally, Plaintiffs include allegations that Allstate refused to allow Plaintiffs to use the name Roberto Clemente Jr. Family Agency, LLC—associated with a famous Afro-Hispanic athlete—despite other white-owned agencies using similar "Family Agency" style names. ECF No. 36 ¶ 29.

Second, after terminating the EAA, Allstate allegedly replaced the minority-owned Clemente Agency with the white-owned Tomaino Agency. In similar contexts, courts have concluded that replacing a member of a protected class with someone from outside the protected class can give rise to the inference of discriminatory intent. *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007). Thus, the fact that Allstate had allegedly replaced Plaintiffs with the Tomaino Agency contributes to the plausibility of Plaintiffs' allegations regarding Allstate's intent to discriminate.

Taken together, these two sets of factual allegations give rise to a plausible inference of discrimination, which is all that is required at this stage of the proceedings. Thus, the Court need not address whether Allstate's response to alleged discrimination, and alleged instances of discrimination by Allstate employees would contribute to such a conclusion.

Turning to the Tomaino Agency, Plaintiffs have failed to plead facts that give rise to the same inference of discriminatory intent. Plaintiffs argue that the fact that the Tomaino Agency replaced the Clemente Agency implicates not only Allstate, but also the Tomaino Agency. ECF No. 58 at 4–6; ECF No. 54 at 1–2. But in the employment context, although an employer replacing an employee from a protected class with someone from outside the protected class may give rise to an inference of discrimination *by the employer*, it does not give rise to the same inference of

discrimination by the new employee.  *See Johnson*, 214 F. App'x at 242.  Here, accordingly, Allstate replacing the Clemente Agency with the Tomaino Agency is probative of Allstate's intent to discriminate but not the Tomaino Agency's.

Nor does the allegation that the Tomaino Agency stole clients from the Clemente Agency or had it targeted for fraud add to the analysis, after setting aside the conclusory allegations that the Tomaino Agency's actions were racially motivated.  Plaintiffs allege that the Tomaino Agency stole their customer "because of the race of Roberto Clemente Jr. and the other individual Plaintiffs' association with him" and that "[i]f Mr. Clemente were white, Mr. Tomaino would not have, upon information and belief, taken this client."  ECF No. 36 ¶ 97.  These and the similar allegations of intent that Plaintiffs set forth in the Second Amended Complaint are legal conclusions that this Court must disregard in considering the Tomaino Agency's Motion.  *See Gross*, 487 F. App'x at 716–17 ("While the Amended Complaint alleges an abundance of wrongdoing by [defendant] and its employees, it fails to allege any facts supporting the conclusion that those acts were motivated by discrimination on the basis of race.  Instead, it alleges a series of unfortunate events and then states, in conclusory fashion, that the reason for those events is that [defendant] harbored discriminatory animus towards [plaintiffs].").

Finally, Plaintiffs' acquiescence theory fails, at least as presently presented.  To support this theory, Plaintiffs rely on one case, *James v. TCA Health, Inc.*, No. 20-cv-4010, 2021 WL 2853395, at *4 (N.D. Ill. July 8, 2021), where the plaintiff plausibly alleged that an individual defendant with authority to fire the plaintiff violated section 1981 when she acquiesced in the plaintiff's termination, even though she was not "personally involved."  Here, by contrast, there is no allegation that the Tomaino Agency had the authority to terminate Plaintiffs' relationship with Allstate.  The holding of *James* is therefore inapplicable.

In short, while Plaintiffs have set forth factual allegations that give rise to a plausible inference that Allstate intended to discriminate against Plaintiffs based on Mr. Clemente Jr.'s race, they have not done so as to the Tomaino Agency. The Court, accordingly, will dismiss Count I as to the Tomaino Agency.

### 4. Plaintiffs Have Plausibly Alleged Discrimination as to Contractual Rights

Allstate's next argument is that the Clemente Agency has failed to plausibly allege that the discrimination concerned the right to "make and enforce contracts." ECF No. 50 at 7. Under section 1981, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Clemente Agency points to at least four contractual rights that Allstate allegedly denied them because of race: (1) the right to appropriate signage under the EAA; (2) the right to sell their book of business on or before December 1, 2020; (3) the right to training under Allstate's "Blueprint program"; and (4) their termination rights under the ESA. ECF No. 58 at 12–14. These arguments essentially overlap with the breaches of contract alleged in Count III, and the Court has already concluded that the Clemente Agency has plausibly alleged a claim for breach of contract on these points. *See supra* at 8–12. Accordingly, Plaintiffs have plausibly alleged that Allstate's discrimination impinged Plaintiffs' right to make and enforce contracts under section 1981.

Allstate separately argues that the individual plaintiffs' section 1981 claims must be dismissed because they are not a party to the EAA. ECF No. 50 at 8. Allstate is correct that "Section 1981 offers relief . . . so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). It is also correct that the only parties that were a party to the EAA were Allstate and the

Clemente Agency, not any of the individual plaintiffs.  ECF No. 36-3.  Accordingly, the individual plaintiffs—Mr. Clemente, Jr., Ms. Dschuhan, Mr. Norton, and Ms. Clemente—may not bring any section 1981 claims predicated on Allstate's impairment of rights under the EAA.

That does not, however, entirely preclude the individual plaintiffs' section 1981 claims because the Second Amended Complaint leaves open the plausible possibility that the individual plaintiffs were a party to the alleged agreement with Allstate concerning the "Blueprint program." *See* ECF No. 36 ¶ 42 ("Plaintiffs further paid for a service under the Blueprint Program. . . .  Yet Plaintiffs were never able to enjoy the full benefits of the program (primarily marketing) based on the racial discrimination identified in this Complaint.").  Accordingly, the Court will dismiss Count I as to the individual plaintiffs except to the extent that they allege interference with their rights under the Blueprint program agreement.

### 5.    Plaintiffs Have Plausibly Alleged Causation

Allstate's final argument is that that Plaintiffs have failed to plausibly allege that but for Mr. Clemente Jr.'s race (and the remaining Plaintiffs' association with Mr. Clemente Jr.), they would not have been deprived their contractual rights.  ECF No. 50 at 13–16.  Under the Supreme Court's decision in *Comcast*, this but-for standard applies at all stages of the case.  140 S. Ct. at 1014–15.  Thus, to overcome Allstate's Motion, Plaintiffs must show that they have plausibly alleged but-for causation.  The Court concludes that they have.

In conjunction with the above factual allegations concerning Allstate's discriminatory intent, Plaintiffs allege that as an agency with Spanish-speaking agents and associated with a famous Afro-Hispanic baseball player, they were better positioned than their white competitors to obtain business from minority customers in the Pittsburgh area.  ECF No. 36 ¶¶ 164–68, 178.  This, according to Plaintiffs, caused white-owned agencies (such as the Tomaino Agency) to become

jealous, potentially upsetting Allstate's relationships with its network of (all white) agents and giving Allstate a compelling reason to terminate its relationship with Plaintiffs and otherwise fail to perform under its agreements. *Id.* These allegations, while not dispositive on the issue of discriminatory intent, are enough to allow the claim to proceed to discovery when taken together with the facts that give rise to a plausible inference of discriminatory intent.

### C. The Court Will Grant in Part and Deny in Part Allstate's Motion to Dismiss Plaintiffs' Title VII Claim

In Count II, Plaintiffs allege that Allstate violated Title VII by terminating the individual plaintiffs for discriminatory reasons—Mr. Clemente Jr.'s race, the other plaintiffs' association with Mr. Clemente Jr., and as retaliation for reporting discrimination. Title VII protects employees from workplace discrimination. *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013). Thus, a Title VII claim is viable only if the defendant is an employer. *Id.* at 119. Allstate argues that dismissal is warranted because Plaintiffs have failed to plausibly allege that Allstate employed them and, separately, because Plaintiffs failed to timely file their Charge of Discrimination with the EEOC. ECF No. 50 at 20–25. The Court concludes that Plaintiffs have plausibly alleged an employment relationship, but that their claim is untimely as to adverse actions predating November 3, 2020.[3]

#### 1. Plaintiffs Have Plausibly Alleged an Employee-Employer Relationship

In moving to dismiss Count II, Allstate relies heavily on the EAA's description of the Clemente Agency and the individual plaintiffs as "independent contractor[s]" of Allstate and not employees. ECF No. 50 at 20–21. However, the parties' formal classification of their relationship is not dispositive. *See Stouch v. Bros. of Ord. of Hermits of St. Augustine*, 836 F. Supp. 1134, 1139

---

[3] Allstate also argues that Title VII and section 1981 share the same elements of discriminatory intent and causation, such that the Court should dismiss Count II for the same reasons it gave as to Count I. ECF No. 50 at 25 n.14. Because the Court has rejected those arguments as to section 1981, it will do the same as to Title VII.

(E.D. Pa. 1993). Instead, courts must conduct a wholistic inquiry into "the hiring party's right to control the manner and means by which the product is accomplished," using the non-exhaustive factors set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (quoting *Darden*, 503 U.S. at 323). Those factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hiring party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Darden*, 503 U.S. at 323–24). Although courts "generally focus on which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities," no single factor is determinative and "all of the incidents of the relationship must be assessed and weighed." *Id.* (cleaned up). As demonstrated by the factors themselves, the inquiry is a fact-intensive one and ill-suited to resolution on the pleadings. *See Easterday v. USPack Logistics LLC*, No. 15-7559 (RBK/AMD), 2016 WL 11704552, at *6 (D.N.J. June 29, 2016).

Here, while Allstate correctly notes that it did not pay Plaintiffs' salaries or hire and fire individual employees, *see* ECF No. 36-3 § III, those facts are not determinative, and other allegations demonstrate that Allstate exercised significant control over Plaintiffs' work. For example, Plaintiffs argue that Allstate: provided materials and other "instrumentalities" of the business, such as email addresses, computer software, and a laptop; imposed substantial training requirements; dictated working hours; restricted Plaintiffs' means of communication with customers (for example, Plaintiffs were not allowed to communicate with customers by text message); and prevented Plaintiffs from selling non-Allstate products. *See generally* ECF No. 36 ¶¶ 191–247. These factual allegations, in combination with others in the Second Amended

Complaint give rise to the plausible inference that Allstate employed the individual plaintiffs. Discovery will provide an opportunity for further factual development of "all of the incidents of the relationship" between Plaintiffs and Allstate, *Faush*, 808 F.3d at 214 (quoting *Darden*, 503 U.S. at 324), at which point Allstate will have the opportunity to raise this issue of an employment relationship again.

### 2.     Allstate's Timeliness Argument Is Well Taken

Allstate also argues that the Court should dismiss Count II as untimely.  Before filing a Title VII claim in federal court, a plaintiff must "file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. A claim filed beyond this 300-day lookback period is time-barred."  *Donahue-Cavlovic v. Borough of Baldwin*, Civil Action No. 2:15-cv-1649, 2017 WL 4862072, at *4 (W.D. Pa. Oct. 26, 2017) (citation omitted).  Plaintiffs— who filed their charge with the EEOC on August 30, 2021—acknowledge that their claim fails to meet the 300-day lookback period insofar as it concerns conduct pre-dating November 3, 2020 (most notably, Allstate's August 2020 termination of their alleged employment).  ECF No. 58 at 23–26.  Plaintiffs argue, however, that they have alleged timely claims pertaining to Allstate's post-termination conduct and that equitable tolling saves the otherwise untimely facets of their claim.

Plaintiffs point to two post-termination actions by Allstate that fall within the 300-day lookback period:  (1) refusing to approve Plaintiffs' sale of the Clemente Agency's book of business;  and (2) "falsely report[ing] Plaintiffs to the insurance department" at some point in 2021. ECF No. 58 at 24.  The Court, however, will address only the first of those contentions because the date of the second alleged action is not pleaded (as Plaintiffs themselves acknowledge).  *Id.* at 24 n.15.  As to Allstate's refusal to approve a sale of the Clemente Agency's book of business, the

Court agrees that this action falls within the limitations period, since Plaintiffs had until December 1, 2020 to complete a sale.  Allstate argues that this post-termination action cannot serve as the basis for a Title VII claim because it did not affect Plaintiffs' "future employment opportunities," but the Court disagrees.  ECF No. 50 at 24–25 (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 n.15 (3d Cir. 1997), *abrogated by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).  At the very least, Allstate's allegedly wrongful refusal to approve a sale of the book of business plausibly delayed Plaintiffs' finding new employment (though it did not necessarily).

Turning to the question of equitable tolling, Plaintiffs are correct that the doctrine can cure an otherwise untimely EEOC filing.  The Third Circuit has

> instructed that there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).  Excusable neglect, however, is insufficient justification for equitable tolling.  *Pizio v. HTMT Glob. Sols.*, 555 F. App'x 169, 176 (3d Cir. 2014).  The fact that the plaintiff was pro se when they filed a untimely EEOC claim can make equitable tolling more appropriate.  *Merit v. Se. Pa. Transit Auth.*, 276 F. Supp. 2d 382, 385 (E.D. Pa. 2003).  In general, whether equitable tolling applies is a fact-intensive issue that is "not generally amenable to resolution on a Rule 12(b)(6) motion."  *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301–02 (3d Cir. 2010).

Plaintiffs' opposition to Allstate's timeliness argument relies most heavily on demonstrating that "in some **extraordinary** way" they were "**prevented** from asserting" their rights.  *Oshiver*, 38 F.3d at 1387 (emphasis added).  In doing so, Plaintiffs point out that they were pro se when they filed with the EEOC, were focused on selling the Clemente Agency's book of business, and were impacted by COVID-19.  ECF No. 58 at 25.  While there may be circumstances

in which specific impacts of COVID-19 could serve as a basis for equitable tolling, Plaintiffs have pleaded nothing to demonstrate what about COVID-19 "prevented [them] from asserting" their rights. *Oshiver*, 38 F.3d at 1387. Instead, they allege only that COVID-19 was ongoing at the relevant time, without describing what impact it had on Plaintiffs and their effort to assert their rights. ECF No. 36 ¶ 188. The mere existence of the COVID-19 pandemic is insufficient justification for equitable tolling; otherwise, the 300-day limitations period would be meaningless after March 2020 when the pandemic began because every plaintiff would be able to avail themselves of equitable tolling. *Congelio v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, No. 2:21-cv-902-NR, 2022 WL 103284, *4 & n.5 (W.D. Pa. Jan. 11, 2022). Nor does the fact that Plaintiffs were focused on selling the Clemente Agency's book demonstrate how Plaintiffs were prevented from exercising their rights. Plaintiffs' opportunity to sell their book of business terminated on December 1, 2020, leaving them with about 225 days to file a timely EEOC charge encompassing Allstate's termination of the EAA and their employment. That leaves Plaintiffs' pro se status, which alone is insufficient to justify equitable tolling. *Cf. Merit*, 276 F. Supp. 2d at 385–86 (pro se status coupled with health issues justified tolling).

Plaintiffs also argue that they were misled by Allstate, but this argument fails to justify equitable tolling because it concerns conduct that was within the 300-day deadline. According to Plaintiffs, Allstate misled them into thinking that they would have a legitimate opportunity to sell the Clemente Agency's book of business. ECF No. 58 at 25. But Allstate's failure to approve a sale of the book culminated on December 1, 2020—within the limitations period for Plaintiffs' EEOC charge, and thus there is no need to apply equitable tolling to save that facet of Plaintiffs' Title VII claim. The alleged misrepresentation concerning the sale of the Clement Agency's book of business, however, does not concern the untimely facets of Plaintiffs' claim—most notably,

Allstate's termination of the EAA in August 2020.  Thus, it does not justify tolling with respect to the untimely portions of Plaintiffs' Title VII claim.

Plaintiffs, therefore, have failed to plausibly allege facts that support the application of the equitable tolling doctrine, and the Court will dismiss Count II except to the extent that it is based on discriminatory actions taken after November 3, 2020.

### D.      The Court Will Dismiss Plaintiffs' Fraud Claim

Turning to Count IV, Plaintiffs allege that Allstate and the Tomaino Agency defrauded Plaintiffs by misrepresenting "certain discount techniques" in order to fabricate a pretextual reason for terminating the EAA and usurping Plaintiffs' business.  ECF No. 36 ¶ 315.  Both defendants move to dismiss the fraud claim for failing to adhere to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  The Court agrees with Defendants and will dismiss Count IV.

In Pennsylvania, the six elements of fraud are:  (1) a misrepresentation;  (2) that is material;  (3)  knowledge of or recklessness as to falsity;  (4) intent to induce reliance;  (5) actual, justifiable reliance;  and (6) resulting injury.  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022).  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy the Rule, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (cleaned up).  Further, the plaintiff must allege "the general content of the misrepresentation."  *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102 (3d Cir. 2017) (internal quotation marks omitted).

Here, Plaintiffs' Second Amended Complaint is devoid of the particulars required under Rule 9(b). According to Plaintiffs, Allstate "injured Plaintiffs when Valerie Staudt taught Plaintiffs fraudulent discount techniques for the sole purpose of targeting Plaintiffs' business for fraud." ECF No. 58 at 32 (citing ECF No. 36 ¶¶ 92, 170, 331, 344). This allegedly occurred when Ms. Staudt condoned discount techniques employed by the Tomaino Agency and then taught them to Plaintiffs. *Id.* (citing ECF No. 36 ¶¶ 92, 120). The Tomaino Agency is implicated in the fraud because, Plaintiffs argue, Mr. Tomaino "told Plaintiffs through Ms. Staudt that they 'should have changed this to this, and changed this,' specifically referencing that Plaintiffs should have changed their discount practice." ECF No. 54 at 12 (citing ECF No. 36 ¶¶ 87–88).

Absent from Plaintiffs' allegations are any particulars about what made the relevant discount practices improper; indeed, there is next to no detail in the allegations about what the discount practice was, except that it involved undefined "widow" discounts. *See* ECF No. 36 ¶ 112. Mr. Tomaino's alleged "this to this" statement is unhelpful without some context from which to glean what it is that Mr. Tomaino and Allstate told Plaintiffs to do and why it was incorrect or otherwise improper. Plaintiffs, as parties to the conversation with Ms. Staudt where she relayed the statement, presumably are aware of that context but have failed to plead it. Without this information about the content of the alleged misrepresentation and further information about when and in what context Allstate and Tomaino Agency made the misrepresentation, Defendants have been deprived of "notice of the precise misconduct with which [they are] charged," in violation of Rule 9(b). *Frederico*, 507 F.3d at 200–01. To satisfy that Rule, Plaintiffs must do more than reference "certain techniques" Defendants induced them to employ—Plaintiffs must describe those techniques and why it was a misrepresentation to suggest that Plaintiffs could employ them. ECF No. 36 ¶¶ 90, 170.

The Court, accordingly, will grant Allstate's and the Tomaino Agency's Motions and dismiss Count IV.  Because the Court concludes that Count IV is insufficiently pleaded, it will not address Allstate's alternative arguments that the claim is time barred or barred by the "gist of the action doctrine."  ECF No. 50 at 29–30.

### E.    The Court Will Dismiss Plaintiffs' Conversion Claim

In Count V—conversion—Plaintiffs allege that the Tomaino Agency unlawfully acquired policies from the Clemente Agency's book of business prior to the December 1, 2020 sale deadline. The Tomaino Agency argues that Plaintiffs' conversion claim fails because the allegations in the Second Amended Complaint demonstrate that any acquisition of the policies took place after the Clemente Agency lost any property interest it held in the policies.  ECF No. 44 at 14–15.  The Court agrees with the Tomaino Agency.

In Pennsylvania, conversion "is widely understood as the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification."  *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. 2013) (internal quotation marks omitted).  Thus, "a person may incur liability for conversion by unreasonably withholding possession from one who has the right to it."  *Id.* (quoting *Martin v. Nat'l Sur. Corp.,* 262 A.2d 672, 675 (Pa. 1970)) (cleaned up).

Initially, the Court notes that the Tomaino Agency does not challenge the propriety of bringing a conversion claim with respect to Plaintiffs' property interest in policies serviced by the Clemente Agency.  Thus, the Court will assume, without deciding, that such an interest can serve as the basis for Plaintiffs' conversion claim, despite the fact that conversion ordinarily concerns tangible goods.  *See* ECF No. 54 at 16 (describing "[a]cquiring possession of the goods" as an element of conversion).  Setting that issue to the side, Plaintiffs would still need to allege an interest

29

in the policies "at the time of the alleged conversion," i.e., the time of the alleged interference with Plaintiffs' interest. *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003) (quoting *Chrysler Cred. Corp. v. Smith*, 643 A.2d 1098, 1100 (1994)). The instant dispute turns on whether Plaintiffs can do so.

They key date in this regard is December 1, 2020. The Tomaino Agency argues that, at the very least, by that date Plaintiffs lost any interest they had in the policies because that was their deadline to sell the Clemente Agency's book of business. ECF No. 44 at 18–19, 18–19 n.13. According to the Tomaino Agency, any conversion did not occur until February 2021, when the Tomaino Agency began servicing the policies. *Id.* at 18. Plaintiffs, for their part, appear to concede the premise that they lost their interest in the policies after December 1, 2020. *See* ECF No. 54 at 15–16. They argue instead that the conversion took place in October 2020, when "Mr. Tomaino agreed to receive certain seeded policies owned by [the Clemente Agency] from Allstate." ECF No. 36 ¶ 138; *see* ECF No. 54 at 16.

Based on the allegations of the Second Amended Complaint, the Court concludes that any conversion that occurred took place in February 2021, well after Plaintiffs lost their interest in the policies allegedly converted. While Plaintiffs allege the existence of an agreement in October 2020 by which the Tomaino Agency would accept certain Clement Agency policies, they expressly allege that the Tomaino Agency took no other action at that time. ECF No. 36 ¶ 138 (alleging that Mr. Tomaino never asked Plaintiffs for client introductions, never had a discussion regarding the transition, and never asked Plaintiffs why he was "getting these policies for free"). There is no allegation that the Tomaino Agency began servicing these policies or acting upon any "agreement" that existed with Allstate until February 2021, when "Plaintiffs' clients received communications from Mr. Tomaino, which stated that Mr. Tomaino was now Plaintiffs' clients' new agent." *Id.* ¶

134.  Thus, to the extent that there was some agreement between Allstate and the Tomaino Agency in October 2020 to receive Clemente Agency policies at some unspecified time, the allegations make clear that the Tomaino Agency took no action to interfere with Plaintiffs' interest between that date and December 1, 2020.  Instead, the Tomaino Agency only began servicing the policies over two months after Plaintiffs' interest expired.  To the extent that Plaintiffs allege that the existence of the October 2020 agreement itself interfered with Plaintiffs' interest in the seeded policies, it has failed to substantiate its argument with factual allegations.

Accordingly, the Court will grant the Tomaino Agency's Motion and dismiss Count V. Because the Court concludes that Plaintiffs have failed to plausibly allege a property interest in the policies at the time of the alleged conversion, it need not address the Tomaino's alternative arguments regarding the gist of the action and economic loss doctrines.

### F.    The Court Will Dismiss Plaintiffs' Unjust Enrichment Claim

In Count VI, Plaintiffs bring a claim for unjust enrichment against both Allstate and the Tomaino Agency.  With respect to the Tomaino Agency, Plaintiffs describe the unjust enrichment claim as a "companion" to their fraud and conversion claims, available "to divest the defendant of a benefit obtained by committing the tort."  ECF No. 54 at 17 (quoting *M3 U.S. Corp. v. Hart*, 516 F. Supp. 3d 476, 505 (E.D. Pa. 2021)).  Because the Court has dismissed those "companion" claims, the Court will also dismiss Plaintiffs' unjust enrichment claim against the Tomaino Agency.  *See supra* at 27–31.  Allstate argues that the Court should do the same for it, and this Court agrees.

In its opening brief, Allstate argued that Count VI must be dismissed because "unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract," as is the case here.  ECF No. 50 at 33 (quoting *Betras v. Oli-Car*

*Inc.*, No. 2:21-CV-00873-CCW, 2021 WL 5239938, at *6 (W.D. Pa. Nov. 8, 2021)).  In opposition, Plaintiffs do not contest that principle of law and instead offer one of their own:  "where a third-party beneficiary of a contract receives a benefit from that contract under circumstances where it would be inequitable for the third party to retain that benefit for free, the third party has been unjustly enriched."  ECF No. 58 at 33.  According to Plaintiffs, this principle applies because "Allstate intentionally stymied Plaintiffs from selling their economic interests to third parties (not Allstate) and then reaped the benefit of obtaining Plaintiffs' Book and utilizing [sic] in the way in which Allstate saw fit."  *Id.*

There are a few problems with Plaintiffs' argument.  Most obviously, Plaintiffs have failed to plead the existence of any agreement under which Allstate was a third-party beneficiary and received the benefit.  Without such allegations, the legal principle presented by Plaintiffs is inapplicable by its own terms.  Apparently appreciating this problem, Plaintiffs suggest that they can recover because Allstate prevented them from selling the Clemente Agency's book of business, thereby preventing the creation of the predicate agreement.  *See id.*  That argument, however, fails because it runs headlong into the rule that unjust enrichment is unavailable where the subject matter falls within the scope of a contractual agreement.  *Betras*, 2021 WL 5239938, at *6.  At its core, Plaintiffs' argument is that Allstate prevented Plaintiffs from selling the Clemente Agency's book of business, *as they were allowed to under their agreement with Allstate*. Therefore, there is a contract that covers the subject matter of the dispute, and a claim for unjust enrichment is unavailable.  The Court, accordingly, will grant Allstate's Motion and dismiss Count VI.

### G.     The Court Will Dismiss Count VII as to the Tomaino Agency but Not Allstate

In Count VII, Plaintiffs' final claim, they allege that Allstate and the Tomaino Agency interfered with (1) Plaintiffs' contract to purchase Mr. Cone's book of business, (2) a standalone agreement between Plaintiffs and Allstate's loan company, and (3) the EAA.  ECF No. 36 ¶¶ 338–46.  Both Allstate and the Tomaino Agency move to dismiss this Count in its entirety.  The Court will grant in part and deny in part Allstate's motion and grant the Tomaino Agency's Motion in full as to Count VII.

To state a claim for tortious interference with contract under Pennsylvania law, a plaintiff must plausibly allege the following elements:  (1) a contract or prospective contract;  (2) the defendant's "purposeful action" specifically intended to interfere with the contract or prospective contract;  (3) an absence of privilege or justification;  and (4) actual legal damages.  *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).  In determining whether the defendant acted without privilege or justification, courts consider various factors, including the nature of the defendant's conduct and their motive, the interests of the various parties involved, the relationship between the parties, and the "social interests in protecting the freedom of action of the actor and the contractual interests of the other."  *Windsor Sec., Inc. v. Hartford Life Ins.*, 986 F.2d 655, 663 (3d Cir. 1993) (quoting Restatement (Second) of Torts § 767 (1979)).

As to Allstate, the Court will dismiss Count VII except to the extent that it alleges Allstate's interference with the Clemente Agency's purchase of the Cone book.  Plaintiffs allege that Allstate interfered with that agreement by unlawfully terminating the EAA, thereby depriving Plaintiffs of the benefit of their bargain with Mr. Cone.  ECF No. 58 at 33–34.  Allstate's only response is that it justifiably terminated the EAA for fraud, but the Court has already ruled, in addressing Plaintiffs'

33

breach of contract claim, that they have plausibly alleged that the purported termination for fraud was unwarranted.  *See supra* at 11.  Accordingly, Allstate has not provided grounds to dismiss Count VII insofar as it alleges Allstate interfered with the Clemente Agency's contract with Mr. Cone.  Otherwise, Count VII will be dismissed as to Allstate because Allstate cannot interfere with the EAA, which it is a party to, *see Sterling Nat'l Mortg. Co., Inc. v. Mortg. Corner, Inc.*, 97 F.3d 39, 45 (3d Cir. 1996), and because Plaintiffs have alleged no specifics about the nature of the purported loan agreement or how Allstate interfered with it, *see* ECF No. 36 ¶ 133 (alleging only that "[b]ecause of Defendants' actions, Plaintiffs received notification that they were in default of that loan").

Turning to the Tomaino Agency, the Court will dismiss Count VII in its entirety for reasons largely overlapping with the Court's analysis of Plaintiffs' other state-law claims.  In response to the Tomaino Agency's Motion, Plaintiffs argue that the Tomaino Agency interfered with the EAA and, by extension, the Cone agreement by teaching Plaintiffs discount techniques that served as the basis for Allstate's termination of the EAA for fraud.  ECF No. 54 at 21–22.  But, as explained above, Plaintiffs have failed to allege specific facts concerning the nature of those discount techniques, why they were improper, and what the Tomaino Agency's role was, except that Mr. Tomaino said to change "this to this" (without any further context).  *See supra* at 27–29.  Absent further factual allegations, Plaintiffs' allegation that the Tomaino Agency acted without privilege or justification is entirely speculative.  To the extent that Plaintiffs allege that the Tomaino Agency interfered with its Allstate loan agreement, the claim fails for the same reasons that it fails as to Allstate.  Thus, Plaintiffs have failed to state their claim for tortious interference against the Tomaino Agency.[4]

---

[4] At the end of their tortious interference argument in opposition to the Tomaino Agency's Motion, Plaintiffs briefly argue that "[t]he Tomaino [Agency's] actions spurred Plaintiffs' wrongful termination, which apparently left Plaintiffs

In sum, Allstate's Motion will be granted in part and denied in part as to Count VII.  The Court will dismiss Count VII as to the Tomaino Agency.

**IV.     Conclusion**

For the foregoing reasons, Allstate's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.  The Tomaino Agency's Motion to Dismiss will be GRANTED.  Plaintiffs will be granted leave to amend their allegations to address the deficiencies discussed above.  An accompanying order will set forth the dismissal of Plaintiffs' claims in further detail.

DATED this 28th day of December, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

bound to not compete with Allstate, inhibiting Plaintiffs' ability to sell insurance and earn a living."  ECF No. 54 at 22.  The Court will not address this argument, which Plaintiffs have not developed or supported with authority, and because the Second Amended Complaint does not set forth corresponding allegations to make this claim part of Count VII.