**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERTO CLEMENTE JR., KIMBERLY DSCHUHAN, RYAN NORTON, KAILEE CLEMENTE, and THE ROBERTO CLEMENTE JR. FAMILY AGENCY, LLC, | ) ) ) ) | |
| | ) | Case No. 2:22-cv-00056 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALLSTATE INSURANCE COMPANY | ) ) | |
| Defendant. | ) ) | |

**ALLSTATE'S AMENDED ANSWER AND DEFENSES
TO PLAINTIFFS' THIRD AMENDED COMPLAINT[1]**

Defendant Allstate Insurance Company ("Allstate"), by its attorneys, Riley Safer Holmes & Cancila LLP, submit its amended answer and defenses to the Third Amended Complaint ("TAC") of Plaintiffs Roberto Clemente Jr. ("Mr. Clemente"), Kimberly Dschuhan ("Dschuhan"), Ryan Norton ("Norton"), Kailee Clemente ("Ms. Clemente") and the Roberto Clemente Jr. Family Agency, LLC. (collectively, "Plaintiffs").

**JURISDICTION AND ADMINISTRATIVE REMEDIES**

1.      All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

**ANSWER:**    Defendant denies all the allegations contained in the foregoing paragraphs of this TAC and denies Paragraph 1.

2.      Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

---

[1] Defendant's Answer is amended only in that it adds Defendant's answer to the allegations in Count IV -Fraud and is otherwise identical to Defendant's previously filed answer and defenses to the TAC. (ECF No. 70.)

1

**ANSWER:**   Defendant states that the allegation of Paragraph 2 constitutes legal conclusions for which no answer is required.  To the extent that an answer is required, Defendant consents to the assertion that venue is proper in this Court. Defendant denies the remaining allegations of Paragraph 2.

3.     This Court has subject matter jurisdiction under the varying federal statutes alleging a cause of action in this case, including, but not limited to 42 U.S. Code § 2000e and 42 U.S. Code § 1981.

**ANSWER:**   Defendant states that the allegation of Paragraph 3 constitutes a legal conclusion for which no answer is required. To the extent that an answer is required, Defendant consents to the assertion that this Court has jurisdiction over the claims in this action.

4.     On or about August 30, 2021, Plaintiffs dual-filed a charge with the Pittsburgh office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations. *See* EEOC Charge of Discrimination, attached as Exhibit 1.

**ANSWER:**   Defendant admits that on or about August 30, 2021, one or more of the Plaintiffs filed a charge with the Pittsburgh office of the Equal Employment Opportunity Commission ("EEOC") (EEOC No. 533-2021-02051), which was cross-filed with the state agency, and admit that a copy of the EEOC Charge is attached to the TAC as Exhibit 1. Defendant denies the remaining allegations of Paragraph 4.

5.     The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiffs timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue letter that the EEOC issued. *Id*.

**ANSWER:**   Defendant states that the allegation of Paragraph 5 concerning a timely filed action constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant admits that the EEOC issued Dschuhan a Right to Sue letter dated October 12, 2021 on EEOC Charge No. 533-2021-02051 and denies the remaining allegations of Paragraph 5.

6.     Plaintiffs have fully complied with all administrative prerequisites for the

2

commencement of this action.

**ANSWER:**   Defendant states that the allegation of Paragraph 6 constitutes a legal conclusion for which no answer is required. To the extent that an answer is required, Defendant denies the allegation of Paragraph 6.

## PARTIES

7.      Roberto Clemente Jr. is a Black Latino male who, at all relevant times, was a licensed insurance agent who had an ownership stake in The Roberto Clemente Jr. Family Agency LLC.

**ANSWER:**    Defendant admits that Mr. Clemente is a Black Latino male.  Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 7.

8.      Kimberly Dschuhan is Roberto Clemente Jr.'s mother-in-law.  She, at all relevant times, was a licensed insurance agent who had an ownership stake in The Roberto Clemente Jr. Family Agency LLC.

**ANSWER:**    Defendant admits that Dschuhan is Mr. Clemente's mother-in-law and that at certain times Dschuhan was a licensed insurance agent. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 8.

9.      Ryan Norton is Roberto Clemente Jr.'s brother-in-law. He, at relevant times, was an insurance agent with The Roberto Clemente Jr. Family Agency LLC.

**ANSWER:**   Defendant admits that Norton is Mr. Clemente's brother-in-law and that at certain times he was a licensed sales producer (LSP) with the Roberto Clemente Jr. Family Agency LLC.  Defendant denies the remaining allegations of Paragraph 9.

10.      Kailee Clemente is Roberto Clemente Jr.'s wife.  She was, at relevant times, a non-licensed insurance agent who had an ownership stake in The Roberto Clemente Jr. Family Agency LLC.

**ANSWER:**    Defendant admits Ms. Clemente is Mr. Clemente's wife and that she was unlicensed.  Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 10.

11.      Allstate Insurance Company ("Allstate") is a nationwide insurance company that sells insurance policies, and, upon information and belief, is an affiliate of Allstate Insurance

Corporation.

**ANSWER:**   Defendant admits the allegations of Paragraph 11 except states that Allstate

Insurance Company is a subsidiary of Allstate Insurance Corporation.

### **FACTUAL BACKGROUND**

12.   Ms. Dschuhan started to strategize.   At the time, she worked for Nationwide
Insurance as a top producing agent.   Although she exceeded expectations in that role, she sought to
embark on a venture that would procure an ownership stake for her and her family.

**ANSWER:**   Defendant admits that at certain times Dschuhan worked for Nationwide

Insurance as an agent.   Defendant is without knowledge or information sufficient to admit or deny

the remaining allegations of Paragraph 12.

13.   Mr. Clemente and his wife, Ms. Clemente, decided to join Ms. Dschuhan in this
venture. Ms. Dschuhan is Ms. Clemente's mother and Mr. Clemente's mother-in-law.

**ANSWER:**   Defendant admits that Dschuhan is Ms. Clemente's mother and Mr.

Clemente's mother-in-law.   Defendant is without knowledge or information sufficient to admit or

deny the remaining allegations of Paragraph 13.

14.   Ms. Dschuhan sought to obtain a book of business for herself and her newly-
formed family partnership.   Ms. Dschuhan researched books of business for sale.   After a thorough
search, Ms. Dschuhan began negotiations with Daniel Cone for his book of business ("Book").

**ANSWER:**   Defendant admits that at a certain point, Dschuhan began negotiations with

Daniel Cone ("Cone") for his economic interest in the business. Defendant is without knowledge or

information sufficient to admit or deny the remaining allegations of Paragraph 14.

15.   Previously, Frank Wallace (black male), owned the business for 30 years prior to the
Cone Agency's acquisition of his Book. The Book consisted of mostly minority customers. Mr. Cone
(white male) bought the Book from Mr. Wallace.   The feedback that Plaintiffs got from their
customers was that Mr. Cone was not available to them.

**ANSWER:**   Defendant admits that Cone is a white male, that Cone bought the economic

interest in the business from Frank Wallace ("Wallace"), a black male, and that Wallace owned the

economic interest in the business for a period of time prior to Cone's acquisition of the economic

interest in the business. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 15.

16.     As a servicer of some lower-income minority policy holders, Plaintiffs knew that being available for their minority customer base was important.  For the first time since Mr. Wallace owned the Book, customers felt welcome.  Customers would often come into the office in person to make their payments either because that was the way they would have to pay or they wanted to meet Roberto Clemente Jr.  Either way, Plaintiffs welcomed minorities into the office.  Minority clients connected with Plaintiffs because they spoke the language of their clients, looked like their clients, and/or did not disregard their clients.  Simply, Plaintiffs provided their clients with better service.

**ANSWER:**  Defendant denies that customers did not feel welcome after Wallace sold his economic interest in the business until the time that Plaintiffs bought the economic interest in the business from Cone. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 16.

17.     In or around July 2017, Ms. Dschuhan and Mr. Clemente continued negotiations with Mr. Cone to purchase a premium-sized Book valued in excess of or around $1,300,000 for a purchase price of or around $225,000.  Plaintiffs would acquire the Cone Agency upon the purchase of Mr. Cone's Book.

**ANSWER:**     Defendant admits that in or around July 2017 Dschuhan negotiated with Cone to purchase his economic interest in the business for the purchase price of or around $225,000 and that the Roberto Clemente Jr. Family Agency LLC acquired the Cone Agency upon the purchase of the Cone's economic interest in the business. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 17.

18.     In or around August 2017, the Cone Agency and Plaintiffs signed a letter of intent for the purchase of Mr. Cone's Book.

**ANSWER:**     Defendant admits that in or about August 2017, Cone signed a Letter of Intent to sell the Cone Agency to Dschuhan.  Defendant denies the remaining allegations of Paragraph 18.

19.     To facilitate the sale, Mr. Cone was required by Allstate to involve Justin Young (white male), Cone's Allstate Field Sales Leader ("FSL") and Plaintiffs' would-be FSL, with Allstate.  Mr. Cone's Book was contingent on the purchaser remaining affiliated with Allstate. Plaintiffs would find out during these negotiations, which simultaneously occurred with Allstate's appointment process, that Mr. Young failed to disclose certain information, which, among other things, included that the Book was not fully vested.

**ANSWER:**   Defendant admits that Justin Young ("Young") is a white male, that at certain times Young was an Allstate Field Sales Leader for Cone and later a Field Sales Leader for Dschuhan, and that the selling of Cone's economic interest in the business was contingent on the purchaser of the economic interest in the business remaining affiliated with Allstate.   Defendant denies the remaining allegations of Paragraph 19.

20.     In or around August 2017, Mr. Young requested that Mr. Clemente, Ms. Clemente, and Ms. Dschuhan meet to discuss business strategy with Eric Copenhaver (Market Sales Manager), an Allstate employee/manager.  Mr. Young and Mr. Copenhaver, however, failed to disclose the meeting's true purpose, which was for Plaintiffs to disclose business strategy, plans, and secrets.

**ANSWER:**   Defendant admits that in or around August 2017, Mr. Clemente, Ms. Clemente, and Dschuhan met with Young and Eric Copenhaver ("Copenhaver"), another Field Sales Leader and an Allstate employee, to discuss business matters relating to Plaintiffs' proposed affiliation with Allstate. Defendant denies the remaining allegations of Paragraph 20.

21.     During this meeting, Mr. Young and Mr. Copenhaver repeatedly expressed sarcasm and levied inappropriate and offensive comments.  Although Allstate stated, at the time, that it endeavored to retain a workforce that mirrors the diversity of its customers and communities it serves, Mr. Young's and Mr. Copenhaver's actions demonstrated the opposite.

**ANSWER:**   Defendant admits that Allstate seeks to retain a workforce that reflects the diversity of its customers and the communities it serves.   Defendant denies that Plaintiffs were employees of Allstate and denies the remaining allegations of Paragraph 21.

22.     In or around August 2017 to January 2018, Mr. Young consistently "moved the goalposts" with respect as to when The Roberto Clemente Jr. Family Agency could complete its official affiliation with Allstate and open its doors.  This caused Plaintiffs to have to continuously push back the start date of their business operations.

**ANSWER:**   Defendant admits that the Agency's planned start date was pushed back several times for various reasons attributable to Plaintiffs and denies the remaining allegations of Paragraph 22.

23.     Almost six months into the acquisition, on January 10, 2018, Ms. Dschuhan received the below email from Mr. Young.

6

**ANSWER:**    Defendant admits that on January 10, 2018, Young sent Dschuhan the below

email, which email speaks for itself.  Defendant denies the remaining allegations of Paragraph 23.



24.    Mr. Young again memorialized that Plaintiffs' minority-owned agency would have its start date pushed back. And, in addition, Mr. Young stated that Plaintiffs could not use the family name Roberto Clemente Jr. in their agency name.

**ANSWER:**    Defendant states that Young's January 10, 2018 email to Dschuhan speaks for

itself.  Defendant denies the remaining allegations of Paragraph 24.

25.    Despite buying a Book from an agency that used the full name of its owner – Daniel Cone – Mr. Young told Plaintiffs that they could not use the name Roberto Clemente Jr. There was no Allstate policy making this name unavailable. Rather, Mr. Young did not want Plaintiffs to utilize the name of a prominent Afro-Latino athlete, entrepreneur, and humanitarian who shared the same name as his father.  This was because of the race affixed with Plaintiffs' family name.

**ANSWER:**    Defendant admits that Young told Dschuhan in the January 10, 2018 email

that she would not be able to name the agency "The Roberto Clemente Jr. Agency" and further states

that the email speaks for itself.  Defendant denies the remaining allegations of Paragraph 25.

26.    From the start, and continuing during Plaintiffs' time with Allstate, Allstate's white management (virtually everyone, if not, everyone) and employees did not want Plaintiffs to use a

name that was "ethnic" sounding.  The use of a "white-sounding" name was allowed, *see infra*, Allstate only listing Ms. Dschuhan's name in its directory.

**ANSWER:**    Defendant denies the allegations of Paragraph 26.

27.    In fact, other agencies – which are white-owned – used the name of their owners/financial backers for their agency name.

**ANSWER:**    Defendant    denies    the    allegations    of    Paragraph    27.





Allstate Agents

Blair Bogdan - Allstate Insurance Agent in Pleasant Hills, PA

Allstate Agents

Christopher Bogdan - Allstate Insurance Agent in Sewickley, PA

28.     Mr. Clemente contacted Allstate after he received a copy of this email.   Allstate stated that they were sorry for the experience that Mr. Clemente had and that the actions of Justin Young are not representative of Allstate, which was not true.  This was representative of Plaintiffs' experience with Allstate.

**ANSWER:**     Defendant admits that one or more Plaintiffs contacted Allstate after receiving the January 10, 2018 email.  Defendant denies the remaining allegations of Paragraph 28.

29.     Another territory manager for Allstate also called Mr. Clemente and Ms. Dschuhan to apologize for Mr. Young's actions.

**ANSWER:**     Defendant admits that one or more Plaintiffs contacted Allstate after receiving the January 10, 2018 email.  Defendant denies the remaining allegations of Paragraph 29.

30.     In or around March 2018, Field Sales Leader ("FSL") William Baldy (white male) introduced Plaintiffs to Ms. Valerie Staudt (white female), an Allstate employee with supervisory/managerial authority over Plaintiffs, who was assigned as Plaintiffs' Agency Process Specialist ("APS").  Mr. Young previously employed Ms. Staudt before her promotion to Corporate Agency Process Specialist in or around December 2014.

**ANSWER:**     Defendant admits that in or around March 2018, then-FSL William Baldy ("Baldy") introduced one or more Plaintiffs to Valerie Staudt ("Staudt"), who was assigned as Plaintiffs' Agency Process Specialist (APS), that Baldy is a white male, and that Staudt is a white female.  Answering further, Defendant admits that Staudt began in an APS role in or about December 2014 and that Staudt previously worked with Justin Young's agency.  Defendant denies the remaining allegations of Paragraph 30.

31.     As an APS, Ms. Staudt was tasked with assisting agency owners with the implementation of consistent business processes.  She was supposed to implement processes by working with agency staff, providing tips for improvement, implementing business plans, and instructing Plaintiffs on how to aline with Allstate's business objectives. In other words, she served as Plaintiffs' direct supervisor.  She worked for Allstate; as such, Ms. Staudt had the power to report to Allstate regarding Plaintiffs' performance.  And the power to potentially have them subject to discipline based on her report.

**ANSWER:**     Defendant admits that Staudt worked for Allstate and that as an APS, Staudt

assisted agency owners with onboarding, implementing business processes and providing guidance

regarding Allstate's business.  Defendant denies that Staudt was Plaintiffs' direct supervisor, denies

that Staudt had the power to subject them to discipline and denies the remaining allegations of

Paragraph 31.

32.     On May 1, 2018, Plaintiffs signed an Asset Purchase Agreement with Daniel Cone for the sale of Mr. Cone's Book.  Allstate was an intended beneficiary of this agreement, having been named in the agreement.  Ms. Staudt, a then-current Allstate employee, signed the agreement as a witness.  *See* Exhibit 2, Asset Purchase Agreement. Mr. Clemente, Ms. Dschuhan, and Ms. Clemente all signed the agreement.

**ANSWER:**     Defendant admits that an Asset Purchase Agreement dated May 1, 2018

between Cone and the Roberto Clemente Jr. Family Agency, LLC for the sale of Cone's economic

interest in the business was prepared and is attached as Exhibit 2 to the TAC and speaks for itself.

Defendant denies this was the final Asset Purchase Agreement related to the sale of Cone's economic

interest in the business and denies the remaining allegations of Paragraph 32.

33.     Allstate knew of this agreement, that Plaintiffs would suffer a financial loss should Allstate discriminate during its working relationship with Plaintiffs, and still intentionally discriminated against them anyway on the basis of race.

**ANSWER:**     Defendant admits that Allstate was aware of an Asset Purchase Agreement

between Cone and the Roberto Clemente Jr. Family Agency, LLC.  Defendant denies the remaining

allegations of Paragraph 33.

34.     Allstate interfered, on the basis of Mr. Clemente's race and the other individual Plaintiffs' intimate/familial association with him, with Plaintiffs' right to enforce its contractual agreement with Mr. Cone and enjoy the benefits of the consideration that they paid to Mr. Cone for his Book of business.

**ANSWER:**     Defendant denies the allegations of Paragraph 34.

35.     On or around June 1, 2018, The Roberto Clemente Jr. Family Agency LLC executed a contract with Allstate Insurance Company ("Contract"). *See* Exhibit 3. This Contract appointed The Roberto Clemente Jr. Family Agency to represent Allstate in its Exclusive Agency Program.

**ANSWER:**   Defendant admits that on or about June 1, 2018, the Roberto Clemente Jr. Family Agency LLC executed an Allstate R30001C Exclusive Agency Agreement with Allstate, which is attached to the TAC as Exhibit 3 and speaks for itself.  Defendant denies the remaining allegations of Paragraph 35.

36.     Per the terms of that contract, The Roberto Clemente Jr. Family Agency became an independent contractor/franchisee of Allstate.  To be clear, the terms of the contract are not indicative of how the law would classify Plaintiffs. Plaintiffs were, at all relevant times, Allstate's employees.

**ANSWER:**   Defendant admits that per the terms of the Allstate R3001C Exclusive Agency Agreement, the Roberto Clemente Jr. Family Agency became an independent contractor/franchisee of Allstate. Defendant states that the allegation of Paragraph 36 regarding how the law would classify Plaintiffs constitutes a legal conclusion for which no answer is required. Defendant denies that Plaintiffs were Allstate employees and denies the remaining allegations of Paragraph 36.

37.     Allstate retained the power to determine in its sole discretion all matters relating to its business and the operation of Allstate.

**ANSWER:**   Defendant states that the Allstate R3001 Exclusive Agency Agreement addressed various matters relating to the business relationship between Allstate and the Roberto Clemente Jr. Family Agency and speaks for itself.  Defendant denies the remaining allegations of Paragraph 37.

38.     The Contract further stated that it would employ the Key Person, who was identified in the agreement as "Kimberly Dschuhan."  Allstate employed Ms. Dschuhan "to provide services under this Agreement for its term."

**ANSWER:**   Defendant states that the Allstate R3001C Exclusive Agency Agreement identified Dschuhan as the Key Person and speaks for itself. Defendant denies the remaining allegations of Paragraph 38.

39.     After Plaintiffs became an official independent contractor/franchisee of Allstate, Plaintiffs expected that Allstate would use the official agency name on communications with clients and/or prospective clients.  To be clear, Allstate characterized Plaintiffs as an "official

independent/franchisee of Allstate." The law, however, does not allow for companies to skirt employment laws with unilateral characterizations. The individual Plaintiffs were joint employees of Allstate and The Roberto Clemente Jr. Family Agency.

**ANSWER:**   Defendant admits that the Roberto Clemente Jr. Family Agency became an independent contractor/franchisee of Allstate. Defendant states that the allegation of Paragraph 39 regarding what the law allows constitutes a legal conclusion for which no answer is required. Defendant denies the remaining allegations of Paragraph 39.

40.   Plaintiffs further paid for a service under the Blueprint Program. Plaintiffs paid valuable consideration for this program that they never received the benefit of. Allstate allotted Plaintiffs with a designated dollar amount that could only be used for the Blueprint program. Ms. Staudt was heavily involved in directing Plaintiffs on how to use this money. Yet Plaintiffs were never able to enjoy the full benefits of the program (primarily marketing) based on the racial discrimination identified in this Complaint.

**ANSWER:**   Defendant admits that the Roberto Clemente Jr. Family Agency paid for a marketing service called the Blueprint Program, and admits that Allstate allotted the Agency a designated dollar amount of marketing money that could be used for the Blueprint program. Defendant denies that Staudt was heavily involved in directing Plaintiffs on how to use the marketing service and denies the remaining allegations of Paragraph 40.

41.   Allstate refused to use Plaintiffs' agency name, which is clearly Afro-Hispanic, in the introduction letter to Plaintiffs' book of clients.

**ANSWER:**   Defendant denies the allegation of Paragraph 41.

42.   Further, Allstate did not use The Roberto Clemente Jr. Family Agency name on its agent listing page. Instead, Allstate only listed Ms. Dschuhan's name.

**ANSWER:**   Defendant admits that consistent with its regular practice, Allstate listed Dschuhan, the licensed agent, on its agent listing page. Defendant denies the remaining allegations of Paragraph 42.

43.   In or around 2018, Plaintiffs informed Ms. Staudt that Allstate had yet to provide Plaintiffs signage to which they were entitled.

**ANSWER:**   Defendant admits that at some point in 2018, Dschuhan spoke to Staudt about the Roberto Clemente Jr. Family Agency signage.  Defendant denies the remaining allegations of Paragraph 43.

IV.   **COMPANY PROPERTY, CONFIDENTIALITY:**
   A.   The Company will furnish Agency such signs, forms, manuals, records, and other materials and supplies as the Company deems advisable to assist Agency.  All such property and information furnished by the Company will remain the property of the Company.  In addition, the Company will offer, at Agency's expense, such additional materials and supplies as the Company feels may be helpful to Agency.

44.   Instead of providing the requisite signs and materials, Allstate coordinated for a signage company to cover up the previous agent's name with blue tape.  Other white agencies, however, were afforded proper signage so that they could represent Allstate and their agencies in a professional manner.  These agencies, among others, included: John Tomaino (white-owned), Tom Bianco (white-owned), Kenneth Mihalcin (white-owned), Robert Dunn (white-owned).

**ANSWER:**   Defendant admits that a signage company Allstate worked with used blue tape to cover the previous agent's name on the signs of new agencies as a temporary measure until the signage company could complete a new sign and that such signage company covered the previous agent's name with blue tape on one of the signs on Plaintiffs' agency building.  Defendant denies the remaining allegations of Paragraph 44.

45.   No other agency other than The Roberto Clemente Jr. Family Agency had another agent's sign on their building.

**ANSWER:**   Defendant denies that the Roberto Clemente Jr. Family Agency had another agent's sign on its building, denies that the Roberto Clemente Jr. Family Agency was the only agency where blue tape was used on the sign and denies the remaining allegations of Paragraph 45.

46.   As can be seen from the photos below, the "Cone Agency" was still visible on Plaintiffs' signage.

**ANSWER:**  Defendant denies the allegations of Paragraph 46.

47.   Allstate also declined to replace the signage on The Roberto Clemente Jr. Family Agency's building after Plaintiffs made repeated requests.  The signage still bore the name of the previous agency, Cone Agency.  The standard practice, however, is for Allstate to replace old signage automatically, without request, within three weeks.

**ANSWER:**   Defendant admits that one of the signs on the Roberto Clemente Jr. Family Agency building had the name of the Cone Agency covered with blue tape.  Defendant denies it declined to provide a new sign and denies the remaining allegations of Paragraph 47.

48.     Allstate also informed Plaintiffs that they could not place their own sign reading their agency name, Roberto Clemente Jr. Family Agency.  In contrast, the old agency still had its name affixed to the building.[2]

**ANSWER:**    Defendant denies the allegations of Paragraph 48.

49.     Allstate continued to associate Plaintiffs' agency with a white male (Daniel Cone) for over two years.  Plaintiffs' minority-named agency was misrepresented.

**ANSWER:**    Defendant denies the allegations of Paragraph 49.

50.     In or around November 2018, Plaintiffs noticed that the sign, which still had only blue tape covering it, began to light up at night during store hours.  The signage, in bright letters, displayed: "Cone Agency, 412-621-4811."   The sign at daytime with blue tape:



**ANSWER:**    Defendant is without knowledge or information sufficient to admit or deny what Plaintiffs noticed.  Defendant admits that the sign had blue tape covering the name and phone number of the Cone Agency. Defendant denies the remaining allegations of Paragraph 50.

---

[2] In referring to the sign, Plaintiffs refer to the larger sign that heads the building, not the smaller adhesive window sticker in the front window of the storefront.  As the pictures show below, the adhesive window sticker was barely visible at night.

51.    The sign at night:



**ANSWER:**    Defendant is without knowledge or information sufficient to admit or deny the

allegation of Paragraph 51.

52.    On or around November 19, 2018, Ms. Dschuhan reported to Valerie Staudt
(white female) and Bill Baldy (white male) at Allstate and sent photos, which detailed the
problem.  She also called another white woman at Allstate about this issue and the woman said the
signage was sufficient and hung up the phone immediately.  Ms. Dschuhan reported this encounter
to Ms. Staudt, and she shrugged off Plaintiffs' concerns and gave the excuse that this woman, who
was responsible for the sign, must have been busy.  The signage above Plaintiffs' building still had
yet to be changed.  Other white agencies, however, were given proper signage upon request.

**ANSWER:**    Defendant admits that on or about November 19, 2018, Dschuhan sent Staudt

a text and a photo of the sign asking if Staudt heard back from anyone about getting a new sign and

that at a certain point, Dschuhan spoke to Baldy about the sign.  Defendant is without knowledge or

information sufficient to admit or deny whether Dschuhan called an unnamed white woman at

Allstate or if so, what was said.  Defendant denies that Dschuhan reported such alleged encounter to

Staudt and denies the remaining allegations of Paragraph 52.

53.    Rather than fix the problem, Allstate had the previous signage company return and
tape over the blue tape again.  Ms. Dschuhan conversed with the employee for the signage company
and explained that simply placing another layer of blue tape looked unprofessional.

**ANSWER:**    Defendant admits that at a certain point the signage company put  blue tape on

the sign. Defendant  is  without  knowledge  or  information  sufficient  to  admit  or  deny  whether

Dschuhan conversed with the employee for the signage company.  Defendant denies the remaining allegations of Paragraph 53.

54.     The incorrect signage affected Plaintiffs' brand as agents. Plaintiffs endeavored to enter a contractual relationship with Allstate that allowed them to build a brand and business as independent contractors.  This relationship included the right to freely associate their own individual brand with Allstate.  And the parties' contractual relationship contemplated such a relationship. Instead of facilitating this relationship, Allstate, through its employees and agents, intentionally hindered – from the inception of Plaintiffs' business – a Black and Latino owned/represented business from establishing its brand, customer base, and representing its current minority clientele. Although Plaintiffs contemplated an independent contractor relationship, they were at Allstate's total control.  Allstate exercised more control over Plaintiffs than a typical company exercises over persons it readily identifies as employees.

**ANSWER:**     Defendant admits that the Allstate R3001C Exclusive Agency Agreement set forth terms of the relationship between Plaintiffs and Allstate, including Plaintiffs' status as independent contractors, and speaks for itself.  Defendant denies the remaining allegations of Paragraph 54.

55.     Allstate's hindrance of Plaintiffs' business prospects was based on the race of Roberto Clemente Jr. and his family members' association with him.  Allstate has little to no diversity among its agencies in Pennsylvania.  Allstate, at the Northeast Regional level, did not want Plaintiffs' agency – that marketed to and was loved by minorities – to succeed. White agencies knew and/or believed that they could not compete for the same business like a Black-Hispanic entrepreneur who would appeal to two communities.  Plaintiffs speak Spanish. Allstate's white agents in Pennsylvania do not.  Plaintiffs treat minority clients with respect and dignity.  As exemplified above and below, certain of Allstate's white agents in Pennsylvania do not.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny whether all Plaintiffs speak Spanish and whether any other agents in Pennsylvania speak Spanish, and whether Plaintiffs treated minority clients with dignity and respect. Defendant denies the remaining allegations of Paragraph 55.

56.     Allstate intentionally sabotaged Plaintiffs because of their race and/or association. In addition to the practical concerns of being able to compete for business, Allstate's Pittsburgh region is a good-ole-boy region dominated by primarily white male agents that all know each other and have been doing business with each other for decades.  These agents did not like that a minority-owned business was poised to succeed.  And, as the examples in this Complaint bear out, Allstate corporate and its agents, because of race, intentionally discriminated against Plaintiffs with respect to equal treatment under their contractual rights by discriminatorily terminating their contract.

**ANSWER:**     Defendant denies the allegations of Paragraph 56.

57.     In or around January 2019, Plaintiffs attended a Pittsburgh RV event located at the David L. Lawrence Convention Center in Pittsburgh at which Plaintiffs would be an insurance company vendor while representing Allstate.

**ANSWER:**    Defendant admits that in or around January 2019, Plaintiffs attended a Pittsburgh RV event held at the David L. Lawrence Convention Center in Pittsburgh.  Defendant denies that this was an Allstate event and denies the remaining allegations of Paragraph 57.

58.     All Plaintiffs, and Mr. Clemente's young son, Roberto Clemente III, greeted those attending the event in front of their booth, which advertised Allstate and their agency.  A white male approached Plaintiffs and hurled racial slurs.  He directed the comment, "Wonder if the n*gger had flight insurance? Do you sell flight insurance?" to Mr. Clemente.  Mr. Clemente's father, a humanitarian recognized worldwide for his unequivocal pursuit of human rights, died tragically  in an airplane crash while taking supplies to earthquake survivors in Nicaragua. Although Mr. Clemente's father was Pittsburgh's most renowned humanitarian, his son's family witnessed close-up virulent racism at an Allstate-sponsored event.

**ANSWER:**    Defendant admits that Mr. Clemente's father was a humanitarian recognized for his pursuit of human rights and that he died tragically in an airplane crash while taking supplies to earthquake survivors in Nicaragua. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 58.

59.     Plaintiffs complained to Allstate.  Specifically, Plaintiffs complained to Valerie Staudt (white), Bill Baldy (white), and Eric Copenhaver (white).  Allstate, however, did nothing to address this appalling, racist encounter that Plaintiffs had to endure.  Rather, Mr. Copenhaver responded that Plaintiffs should just not participate in vendor shows anymore and that they should use postcard mailers instead for advertising.  Specifically, Mr. Baldy said: "Oh yeah, you will have all kinds of people at those things."  Mr. Baldy did not care that Plaintiffs were the subject of virulent racism.  Rather, as his tone from that conversation denoted, he likely subscribed to these beliefs, which is why his actions evince intentional discrimination on the basis of race against Plaintiffs.  A normal reaction would have been to denounce this racist behavior and see what he, as an Allstate employee and manager, could do to rectify the situation. Mr. Baldy acquiesced to this behavior by shrugging it off.

**ANSWER:**    Defendant admits that Staudt, Baldy and Copenhaver are white and that Plaintiffs relayed to Staudt that an inappropriate comment allegedly was made by an unknown individual who was not an Allstate employee at the Pittsburgh RV event. Defendant denies the remaining allegations of Paragraph 59.

60.     Not only did Allstate fail to intervene and support its minority-owned agency when faced with virulent racism, Allstate ratified it. By telling Plaintiffs that they should not make public

appearances, Allstate validated the racist notion that minorities should just not participate so they can avoid discrimination.  Allstate, upon information and belief, did not tell any white-owned agencies to not publicly participate in vendor shows.  Plaintiffs were told not to because of Mr. Clemente's race and Plaintiffs' association with him.

**ANSWER:**    Defendant admits that it did not tell white-owned agencies or Plaintiffs not to

publicly participate in vendor shows, and denies the remaining allegations of Paragraph 60.

61.    In or around March 2019, Plaintiffs advised Allstate that the Google My Business page for their business still showed a street view image of the window and signage of the previous agent, Daniel Cone.  Allstate owned the domain name for The Roberto Clemente Jr. Family Agency. As such, Plaintiffs could not alter the images shown.  Plaintiffs continued to have the wrong signage associated with their agency. This caused clients to confuse Plaintiffs business with a business that was no longer operational.

**ANSWER:**    Defendant admits that at a certain time, Plaintiffs raised a concern related to

the image on the Goggle My Business page for their business. Defendant denies that Plaintiffs had

the wrong signage associated with their agency and is without information sufficient to admit or deny

the remaining allegations of Paragraph 61.

62.    Allstate retained the sole control of its web domain.  Plaintiffs, although presented as independent contractors, were at Allstate's whims when it came to an essential portion of its business; that is, its online business presence through Google.

**ANSWER:**    Defendant admits that Allstate retained control of Allstate's web domain and

admits that Plaintiffs were independent contractors.  Defendant denies the remaining allegations of

Paragraph 62.

63.    The inability to advertise their business on Google caused Plaintiffs to suffer significant losses in customer acquisition and retention. All other white agencies, upon information and belief, were able to advertise on Google with their Google-correct profile and a current and correct image of their business.  Examples, among others, include: John Tomaino (white-owned), Tom Bianco (white-owned), Kenneth Mihalcin (white-owned), Robert Dunn (white-owned). These white-owned agencies all had the correct Google presence.

**ANSWER:**    Defendant is without knowledge or information sufficient to admit or deny

that all other white agencies, including those named, were able to advertise on Google with their

correct profile and image, and denies the remaining allegations of Paragraph 63.

64.    In or around March 2019, Plaintiffs complained to Rebecca Kincade (white female), Senior Marketing Consultant and Allstate employee, to correct The Roberto Clemente Jr. Family Agency's signage and Google listing.   Still, Allstate never intervened to assist Plaintiffs with the

sign change.  Allstate never intervened because of race, including Mr. Clemente's race and Plaintiffs' association with it.

**ANSWER:**    Defendant admit that Rebecca Kincade ("Kincade") is a white female, that at

certain times Kincade was an Allstate Senior Marketing Consultant and that in or about 2019,

Plaintiffs asked Kincade about the Roberto Clemente Jr. Family Agency signage and Google listing.

Defendant denies the remaining allegations of Paragraph 64.

65.    Allstate never changed Plaintiffs' sign.  Rather, the old sign with blue tape affixed on top of the old agency's name remained in place until The Roberto Clemente Jr. Family Agency closed in August 2020.

**ANSWER:**    Defendant admits that the Roberto Clemente Jr. Family Agency sign had blue

tape covering the prior agency name and a new sign had not been delivered as of the time the Agency

was terminated, but denies that Allstate did not approve a new sign for the Roberto Clemente Jr.

Family Agency and denies the remaining allegations of Paragraph 65.

66.    Plaintiffs also advised Allstate that The Roberto Clemente Jr. Family Agency was not listed on Allstate's website, and, by extension, Allstate's Local Agent Locator.   Instead, Allstate only listed Ms. Dschuhan on the website.

**ANSWER:**    Defendant admits that Dschuhan was listed on the website as an Allstate agent

and is without knowledge or information sufficient to admit or deny the remaining allegations of

Paragraph 66.

67.    Customers would call Allstate asking for The Robert Clemente Jr. Family  Agency. Allstate, however, failed to list the agency and would only list Ms. Dschuhan.  As such, customers could not find the agency when they called. In fact, to test, Plaintiffs would call into Allstate and ask for their business.  Allstate's customer service could not locate The Roberto Clemente Jr. Family Agency by its agency name.  Plaintiffs could hear the customer service representatives typing, and they could not find the name of the agency.  And it was only until  Ms. Dschuhan gave her agency number, could Allstate locate them.   This was intentional.  White-owned agencies were all listed correctly in the agency locator. Plaintiffs were not because of Mr. Clemente's race and Plaintiffs' association with it.

**ANSWER:**    Defendant denies the allegations of Paragraph 67 to the extent they allege that

the asserted conduct was "intentional" or was "because of Mr. Clemente's race and Plaintiffs'

association with it", and is without knowledge or information sufficient to admit or deny the

remaining allegations of Paragraph 67.

68.     This led to an immeasurable loss of customer acquisition potential.  Potential and current clients often stated that they could not find Plaintiffs' agency because the sign on the building had the wrong name, and Plaintiffs' correct agency name was not listed on Allstate's website, which Allstate owned and retained control over.

**ANSWER:**     Defendant admits that Allstate owned and retained control over Allstate's

website, admits that Dshuchan's name was listed on the Allstate website, and is without knowledge

or information sufficient to admit or deny whether potential and current clients often stated that they

could not find Plaintiffs' agency.  Defendant denies that the sign on the building had the wrong name,

denies that the Roberto Clemente Jr. Family Agency name was not on the agency building, and denies

the remaining allegations of Paragraph 68.

69.     Similarly, Plaintiffs complained that Allstate used the wrong phone number inside their Allstate digital proposal/quote illustration.  Again, Allstate did nothing. This caused prospective and current clients to call the wrong number.  This caused confusion and frustration among Plaintiffs' customer base.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny the

allegations of Paragraph 69.

70.     In or around October 2019, Allstate displayed further intentional discrimination. One of Plaintiffs' clients called Allstate's customer service center (1-800-Allstate) to ask for Plaintiffs' correct business number after noticing that Allstate provided the incorrect number. Allstate placed the client on hold for over an hour.  After the client finally got through to Allstate's customer service representative, the representative intentionally discriminated against Plaintiffs by referring to their agency name as a "dead black baseball player." The representative then referred the customer to finish the paperwork with a different white agent, Ken Mihalcin.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny

whether one of Plaintiffs' clients called Allstate's customer service center to ask for Plaintiffs' correct

business number and the nature of such alleged conversation. Defendant denies that Allstate

displayed intentional discrimination toward Plaintiffs at any point and denies the remaining

allegations of Paragraph 70.

71.     Ms. Dschuhan told Mr. Baldy and Ms. Staudt about this.  Both Mr. Baldy and Ms. Staudt did not look into why this customer could not find The Roberto Clemente Jr. Family Agency.

**ANSWER:**     Defendant denies the allegations of Paragraph 71.

72.     On almost every occasion, Bill Baldy would say: "Hey, I'm running into a meeting;

I don't have time to talk to you about that."

**ANSWER:**    Defendant denies the allegation of Paragraph 72.

73.    Again, Plaintiffs received no apology or action from Allstate. They were never made aware of whether the customer service agency who took this call was subject to any type of corrective action for the racist comments made about Plaintiffs. They were never made aware of whether Allstate intended to implement diversity and inclusion training to ensure that this would not happen again. Allstate did nothing because Allstate was intentionally discriminating against Plaintiffs based on race and/or association with the race of Roberto Clemente Jr.

**ANSWER:**    Defendant is without knowledge or information as to whether Plaintiffs received an apology or were made aware of any action related to the customer service agency who allegedly took the call. Defendant denies that it intentionally discriminated against Plaintiffs based on race and/or association with the race of Roberto Clemente Jr. and denies the remaining allegations of Paragraph 73.

74.    Bill Baldy also made other comments to Plaintiffs based on race. Plaintiffs wanted to write commercial policies, which would have been a significant revenue source. David Sheetz (owner of Sheetz gas stations), for example, wanted Mr. Clemente to write commercial policies for his business. Plaintiffs needed to learn how to write commercial insurance. And Bill Baldy, in his managerial role with Allstate, was supposed to teach Plaintiffs how to quote insurance (including commercial insurance). Mr. Baldy refused to teach Plaintiffs how to quote commercial insurance. This was obviously because he did not believe that this minority-owned business should be engaged in this line of business. Mr. Baldy said that Plaintiffs should just "stick to the small stuff." This meant policies for individuals, not businesses. Upon information and belief, Bill Baldy did not tell white agencies to stick to the small stuff. He did not intentionally deprive white agencies of the opportunities to grow their business by not training them. This was because of Mr. Clemente's race and/or association with it.

**ANSWER:** Defendant admits that Baldy told his agents, including Dschuhan and other agents that asked him, that commercial insurance was not Allstate's market direction. Defendant denies that Baldy made comments to Plaintiffs based on race, denies that Baldy discriminated against Plaintiffs and denies the remaining allegations of Paragraph 74.



75.     As shown above, Allstate refused to list a name associated with a minority in its directory instead only listed the name of one of the white owners of the business.  Allstate, upon information and belief, did not refuse to list the name of any other white-owned agency names in its directory.  Those agencies were all listed by their agency name.  Plaintiffs' agency, however, was not listed because it is a minority-sounding name that would in turn attract minority customers.  And Allstate's white management structure did not want Plaintiffs to obtain more minority business and also did not want Plaintiffs to succeed because the face of the Plaintiffs' organization is Roberto Clemente Jr., a Black-Latino man.

**ANSWER:**     Defendant admits that Dschuhan's name was listed in Allstate's directory, denies that Allstate discriminated against Plaintiffs with respect to name listings or otherwise, and denies the remaining allegations of Paragraph 75.

76.     Plaintiffs would complain to Ms. Staudt regarding this issue, which was huge. Customers could not find The Roberto Clemente Jr. Agency by its name.

**ANSWER:**     Defendant admits that Plaintiffs spoke with Staudt about Dschuhan's name being listed in Allstate's directory.  Defendant is without information or knowledge sufficient to admit or deny whether customers could not find the Roberto Clemente Jr. Family Agency by name. Defendant denies the remaining allegations of Paragraph 76.

77.     The Robert Clemente Family Jr. Agency was started with the mission of filling a gap for minority and Spanish-speaking residents of the entire Commonwealth of Pennsylvania, which included residents of Pittsburgh where Plaintiffs' agency was a licensed producer to execute insurance policies.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny the allegations of Paragraph 77.

78.     Plaintiffs, however, feared that other agents were intimidated by their reach within minority communities.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny the allegations of Paragraph 78.

79.     In fact, that fear was true.  Plaintiffs were, upon information and belief, the only black-owned entity from Pittsburgh to Philadelphia.  Their superiors, however, were all white. Their superiors did not direct Plaintiffs to affinity groups that existed for minority-owned businesses, which was standard practice in other insurance companies.

**ANSWER:**     Defendant is without information or knowledge sufficient to admit or deny the standard practice in other insurance companies or whether Plaintiffs were directed to any affinity groups.  Defendant denies that Plaintiffs had "superiors" and denies the remaining allegations of Paragraph 79.

80.     In or around August 2019, it eventually came to Plaintiffs' attention that another white agent had stolen one of their customers and the corresponding policies associated with that customer.

**ANSWER:**     Defendant denies the allegations of Paragraph 80.

81.     Ms. Dschuhan contacted Allstate, inquiring why, upon information and belief, another Allstate agent, John Tomaino, wrote or "took" a policy for himself from The Roberto Clemente Jr. Family Agency.  Ms. Dschuhan additionally asked Allstate to contact John Tomaino and ask why he did not refer Plaintiffs' client back to The Roberto Clemente Jr. Family Agency, and how he gave the client a lower quote than the Plaintiffs had first provided.

**ANSWER:**     Defendant denies the allegations of Paragraph 81.

82.     Ms. Dschuhan had previously worked for many years in the insurance business at Nationwide Insurance.  At Nationwide, Ms. Dschuhan's understanding was that the written and/or unwritten rule is that you do not take a policy from another agency that had started a policy with a customer.  Plaintiffs were shocked to find out that Mr. Tomaino had violated this rule.

**ANSWER:**     Defendant admits that Dschuhan worked for many years in the insurance business at Nationwide Insurance.  Defendant denies that Mr. Tomaino violated any Allstate rule as

alleged, and is without knowledge or information sufficient to admit or deny the remaining

allegations of Paragraph 82.

83.     This policy in question had previously been quoted by Plaintiffs. As such, they had initiated contact with the potential client and given the rate that they were able to offer under Allstate's discount guidelines.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny the

allegations of Paragraph 83.

84.     Upon information and belief, Mr. Tomaino, in an effort to procure Plaintiffs' business, was able to access Plaintiffs' quoted prices. He was also able to start the application from scratch and re-quote the potential customers, applying more discounts in the process. Mr. Tomaino ended up securing the policy even though Plaintiffs had already quoted the customer and the customer was poised to sign with Plaintiffs' agency.

**ANSWER:**     Defendant is without knowledge or information sufficient to admit or deny

whether Plaintiffs had quoted a particular potential customer that Tomaino later quoted. Defendant

denies that Tomaino procured Plaintiffs' business and denies the remaining allegations of Paragraph

83.

85.     Mr. Tomaino, as a fellow Allstate agent, undercut Plaintiffs with respect to the quote on this policy. Ms. Dschuhan inquired with Allstate concerning Plaintiffs losing out on this policy. Allstate said that they would question him about his stealing of Plaintiffs' policies. Allstate corporate educator, Valerie Staudt, told Ms. Dschuhan that she had spoken to Mr. Tomaino, and Mr. Tomaino was criticizing the way that Plaintiffs quoted insurance. Ms. Staudt conveyed that Mr. Tomaino said that Plaintiffs, "...should have changed this to this, and changed this to this," ("this" being a discount).

**ANSWER:**     Defendant admits that at certain times Tomaino was an Allstate agent.

Defendant denies the remaining allegations of Paragraph 85.

86.     This conversation from Ms. Staudt was communicated in a way in which Plaintiffs understood that Mr. Tomaino was telling Plaintiffs that they were quoting this customer incorrectly and that they should have done it his way with respect to giving discounts.

**ANSWER:**     Defendant denies the allegations of Paragraph 86.

87.     Upon information and belief, Mr. Tomaino intended for Ms. Staudt, and by extension, Plaintiffs, to rely on his statements. Mr. Tomaino had a conversation with Ms. Staudt, which resulted in Ms. Staudt training Plaintiffs in accordance with his directions.

**ANSWER:**     Defendant denies that Tomaino told Staudt to train the Roberto Clemente Jr.

Family Agency or its agents on any subject, including discounts, denies that Staudt trained the

Roberto Clemente Jr. Family Agency or its agents based on any discussion with Tomaino, and denies

the remaining the allegations of Paragraph 87.

88.     Upon information and belief, Mr. Tomaino made the misrepresentations that Ms. Staudt conveyed with the intention that Plaintiffs rely upon them. Mr. Tomaino had just received a call questioning why he had taken a policy from a fellow agency. Upon information and belief, he gave clear direction to Ms. Staudt that if Plaintiffs would have done their discounting a certain way, they would not have lost out on the client. The obvious intention was for the message to be conveyed that Plaintiffs were not doing their discounts right and that they should do it Mr. Tomaino's way.

**ANSWER:**     Defendant denies the allegations of Paragraph 88.

89.     Upon information and belief, Mr. Tomaino knew that Ms. Staudt would be communicating their conversation with Plaintiffs regarding the discounts. Ms. Dschuhan called Ms. Staudt instead of Mr. Tomaino directly because she believed that it would be more appropriate pursuant to protocol to call the Allstate corporate supervisor instead of the agent directly. Ms. Dschuhan did just that and communicated that she wanted to know why another agent took their customer. Mr. Tomaino knew that this was the basis for the conversation with Ms. Staudt. And he made the misrepresentations described above and below to Ms. Staudt knowing that they would be communicated to Plaintiffs.

**ANSWER:**     Defendant denies the allegations of Paragraph 89.

90.     Upon information and belief, Ms. Staudt was questioned concerning whether Allstate allows agents to practice the techniques that Mr. Tomaino had used with respect to Plaintiffs' clients. Ms. Staudt responded and condoned Mr. Tomaino's actions of giving discounts in order to secure a sale, contrary to the Plaintiffs already completed quote that would have been a less favorable price based on the information provided to them from the client. Ms. Staudt also confirmed that other agents can do this as well. In retrospect, this may have been a false statement designed to induce Plaintiffs to rely on the techniques that Ms. Staudt would then teach them later. At a later time, Ms. Staudt offered and completed a visit to the Plaintiffs' agency where she in person instructed and taught Plaintiffs by example how to retain and secure new business utilizing certain techniques that provided lower prices or discounts.

**ANSWER:**     Defendant admits that Staudt provided certain training to some or all Plaintiffs,

including regarding discounts, and further states that Staudt trained all agents to record customer

information accurately. Defendant denies the remaining allegations of Paragraph 90.

91.     As an agent of Allstate, Mr. Tomaino and the Tomaino Insurance Agency ("Tomaino") knew of the existence of a valid contract between Plaintiffs and Allstate. They knew that Plaintiffs had termination clauses. They knew that Plaintiffs were bound by non-competes. And they knew that, upon termination, Plaintiffs had a set period of time to sell their Book. Tomaino interfered with Plaintiffs rights' to make, perform, modify, and terminate its contracts with Allstate as well as depriving them of the benefits, privileges, terms, and conditions of their contractual relationship with Allstate.

**ANSWER:**     Defendant admits that as an Allstate agent, Tomaino may have been generally aware of the existence of a contract between the Roberto Clemente Jr. Family Agency and Allstate. Defendant denies the remaining allegations of Paragraph 91.

92.     Tomaino is located in Squirrel Hill and was the closest agency in proximity to The Roberto Clemente Jr. Family Agency.  Mr. Clemente's father famously lived in Squirrel Hill while he played for the Pittsburgh Pirates.  Plaintiffs' association with the Clemente name, which is a minority name, was a direct threat.

**ANSWER:**     Defendant admits that at certain times the Tomaino Agency was located in Squirrel Hill.  Defendant is without information or knowledge sufficient to admit or deny whether Mr. Clemente's father lived in Squirrel Hill when he played for the Pittsburgh Pirates and whether the Tomaino Agency was the closest agency in proximity to the Roberto Clemente Jr. Family Agency.  Defendant denies the remaining allegations of Paragraph 92.

93.     Ms. Dschuhan, who had previously worked in the insurance business for many years for Nationwide, had never seen nor heard of another agency being allowed to access other agents' quotes and take a client from another agency.  She always understood that the correct practice was to refer that client back to the agency that originated the business if that client had in fact started an application with the insurance company. Mr. Tomaino did not do that. Instead, he seized on the opportunity to take Plaintiffs' clients for himself.

**ANSWER:**     Defendant admits that Dschuhan previously worked in the insurance business for many years for Nationwide.  Defendant is without knowledge or information sufficient to admit or deny what Dschuhan may have seen, heard or understood regarding other agencies.  Defendant denies the remaining allegations of Paragraph 93.

94.     Mr. Tomaino, among other white agents/agency owners at Allstate, knew that they had an uphill battle competing with a minority-owned agency with a clearly "ethnic" sounding name, which would attract customers in both the Black and Hispanic communities.

**ANSWER:**     Defendant denies the allegations of Paragraph 94.

95.     Mr. Tomaino stole this customer because of the race of Roberto Clemente Jr. and the other individual Plaintiffs' association with him.  If Mr. Clemente were white, Mr. Tomaino would not have, upon information and belief, taken this client. He would have followed the unwritten and/or written rule of referring that client back to the agency that originated the business.

**ANSWER:**     Defendant denies that Tomaino "stole" any customer and denies the remaining allegations of Paragraph 95.

96.     Upon information and belief, Mr. Tomaino did not take any policies from other white agencies.

**ANSWER:**     Defendant admits that Tomaino did not "take" any policies from the Roberto Clemente Jr. Family agency or other agencies, including "white agencies."  Defendant denies the remaining allegations of Paragraph 96.

97.     In retrospect, upon information and belief, Ms. Staudt only condoned Mr. Tomaino taking Plaintiffs' customers because Mr. Tomaino was taking from a minority-owned agency.

**ANSWER:**     Defendant denies that Tomaino took Plaintiffs' customers and therefore denies that  Staudt "condoned" it, and denies the remaining allegations of Paragraph 97.

98.     Upon information and belief, Mr. Tomaino and Ms. Staudt both knew that Mr. Tomaino should not have taken this policy from Plaintiffs.  Mr. Tomaino took this policy because he wanted to take a policy from a minority-owned agency that he perceived as having a competitive advantage over him.  He stole Plaintiffs' business because of Mr. Clemente's race and Plaintiffs' association with his race.

**ANSWER:**     Defendant denies that Tomaino took a policy from the Roberto Clemente Jr. Family Agency and denies the remaining allegations of Paragraph 98.

99.     Ms. Staudt offered to train and did train Plaintiffs Norton and Dschuhan, following Mr. Tomaino taking their customers.  Ms. Staudt physically sat with Mr. Norton by his computer to train him.  Plaintiffs began applying discounts as Ms. Staudt instructed.

**ANSWER:**     Defendant admits that Staudt provided certain training to Norton and Dschuhan at various times, including on occasion sitting with them at their respective computers.  Defendant denies that Plaintiffs applied discounts as Staudt instructed and denies the remaining allegations of Paragraph 99.

100.     Through text messages, Ms. Dschuhan would ask Ms. Staudt, on behalf of Plaintiffs, how certain discounts should be applied.

**ANSWER:**     Defendant admits that Dschuhan would text Staudt certain questions related to training and processes.  Defendant denies the remaining allegations of Paragraph 100.

101.     Ms. Staudt also accessed Plaintiffs' computer systems on occasions.  Plaintiffs do not know the full extent of what changes Ms. Staudt would make when accessing their computer systems.  She had the power to change insurance applications and quotes without Plaintiffs knowing.

**ANSWER:**     Defendant denies the allegations of Paragraph 101.

102.     Just a couple months after the policy-stealing incident and Ms. Staudt's offer to train Plaintiffs on discounts and her training of them, Plaintiffs, in or around January 2020, received a call from Eric Copenhaver at Allstate expressing that Plaintiffs should consider succession planning for the agency.  This struck Plaintiffs as strange because all individual Plaintiffs were in good health and not near retirement age.  Mr. Copenhaver suggested that The Roberto Clemente Jr. Family Agency consider Kailee Clemente as a successor to Ms. Dschuhan.

**ANSWER:**     Defendant admits that in or about early 2020, Copenhaver had a discussion

with Dschuhan regarding who might take over the agency if Dschuhan did not pass a certain required

test and that he mentioned Kailee Clemente, as well as Roberto Clemente, as possibilities.  Defendant

is without knowledge or information sufficient to admit or deny how this discussion struck Plaintiffs.

Defendant denies there was a "policy-stealing incident" and denies the remaining allegations of

Paragraph 102.



Jo Giannettino Snider is with **Valerie Bahur Staudt** and **49 others** at **Jo Snider: Allstate Insurance.**

Jun 10, 2020 · Monroeville · 🌐

PLEASE SEND CARDS!  This is Jean Matthews, mother of my good friend, customer and Allstate Exclusive Financial

103.     Allstate did not consider Mr. Clemente as the successor for the business despite the fact that he was the financial backer and a licensed insurance agent.  Allstate did not consider Mr. Clemente because of his race. He would have been the natural choice to succeed Ms. Dschuhan in this business as he was a financial backer and had a more involved role in the business than his wife did at the time.

**ANSWER:**     Defendant denies the allegations of Paragraph 103.

104.     Mr. Tomaino, Ms. Staudt, and many others would comment on each other's social media posts.  None of them invited Plaintiffs to be a part of their food donations and programs. They never liked The Roberto Clemente Jr. Family Agency's social media posts.  There were no minority agencies included among the friend group of agencies involved in supervising  Plaintiffs' agency. Upon information and belief, the white agencies, which included John Tomaino, did not like that their friend, Justin Young, left Allstate after a minority-owned agency reported that he discriminated against them, which was on the basis of race by not letting Plaintiffs use their family name.  This tension created further racial animus among the white agencies against Plaintiffs.

**ANSWER:**   Defendant admits that certain agencies and Staudt would comment on each other's social media posts. Defendant is without information or knowledge to admit or deny the allegations of Paragraph 104 related to unidentified food donations or programs. Defendant denies the remaining allegations of Paragraph 104.

105.    For example, in a Facebook post, the Snider Agency tagged 49 people, almost all of whom were Allstate agents in Plaintiffs' region.  The Snider Agency did not tag Plaintiffs for this post.

**ANSWER:**   Defendant states that the referenced Facebook post speaks for itself. Defendant denies the remaining allegations of Paragraph 105.

106.    Valerie Staudt was headlined in the post.  And John Tomaino and Justin Young were amongst those included.

**ANSWER:**  Defendant states that the referenced Facebook post speaks for itself.  Defendant



denies the remaining allegations of Paragraph 106.

107.    Plaintiffs were not invited to participate or even made aware of the event that Ms. Snider and Ms. Staudt were coordinating amongst 49 other people affiliated with Allstate.

**ANSWER:**   Defendant is without knowledge or information sufficient to admit or deny the allegation of Paragraph 107.

108.    In another example, in 2020, Plaintiffs' specifically asked Mr. Copenhaver about a Steelers' charity game event.  And Mr. Copenhaver deliberately excluded Plaintiffs from that event.

**ANSWER:**  Defendant denies the allegations of Paragraph 108.



109.    In the Pittsburgh region, upon information and belief, nearly every single agency was white-owned, except for Plaintiffs' agency.   That, itself, is indicative of racial discrimination.  See below:

**ANSWER:**  Defendant denies the allegations of Paragraph 109.





110.    On or around July 28, 2020, Ms. Dschuhan received a call from a male individual who identified himself as a fraud investigator for Allstate. This investigator questioned Ms. Dschuhan and Mr. Norton regarding the practice of applying a widow discount to certain policies.

**ANSWER:** Defendant admits that on or about July 29, 2020, a male investigator with Allstate Investigative Services conducted an interview with Dschuhan and questioned her about her practice of applying a widow discount to certain policies where the customer was not actually a widow. Defendant further admits that an investigator also questioned Mr. Norton regarding his practice of applying a widow discount to certain policies where the customer was not actually a widow. Defendant denies the remaining allegations of Paragraph 110.

111.    On or around August 20, 2020, Ms. Dschuhan received an email from Allstate

inviting her to a Zoom call with Eric Copenhaver (white male) and Mark Pianelli (white male).

**ANSWER:**   Defendant admits that on or around August 20, 2020, Dschuhan received an email inviting her to a Zoom call with Copenhaver and Mark Pianelli. Defendant denies the remaining allegations of Paragraph 111.

112.   On or around August 21, 2020, Mr. Pianelli and Mr. Copenhaver informed Ms. Dschuhan that Allstate decided to terminate Ms. Dschuhan's R3001C contract. They informed her that she had to close her office immediately.  And they gave her only two hours to accomplish this task, which included wiping her computers, making final deposits, and placing a closed sign on the door.  Ms. Dschuhan lived 45 minutes away from the office.

**ANSWER:**   Defendant admits that on or around August 21, 2020, Pianelli and Copenhaver informed Dschuhan that Allstate decided to terminate the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency effective immediately, and that consistent with Allstate protocol for terminated agencies, Defendant gave Dschuhan approximately two hours to complete certain agency shut-down tasks. Defendant is without knowledge or information sufficient to admit or deny how many minutes Dschuhan lived from the office.  Defendant denies the remaining allegations of Paragraph 112.

113.   Allstate made Plaintiffs disassociate with Allstate immediately.  Yet, with Mr. Cone, they never even bothered to disassociate his name with Plaintiffs' business.

**ANSWER:**   Defendant admit that pursuant to the R3001C Exclusive Agency Agreement, the Roberto Clemente Jr. Family Agency had certain obligations upon termination of the Allstate R3001C Exclusive Agency Agreement, which Agreement speaks for itself. Defendant denies the remaining allegations of Paragraph 113.

114.   Ms. Dschuhan was told that the termination was for fraud.

**ANSWER:**   Defendant admits that an August 21, 2020 letter to Dschuhan advised her that Allstate's termination of the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency was pursuant to Section XVII.B.3 of the Agreement and for reasons

that included proving false information to the company. Defendant further states that the letter

speaks for itself and denies the remaining allegations of Paragraph 114.

115.    Plaintiffs deny committing any fraud. If there were any mistakes, it was because they relied on Mr. Tomaino and Ms. Staudt. Allstate unilaterally terminated Plaintiffs' agency without providing any analysis for its decision.

**ANSWER:**    Defendant admits that Plaintiffs deny committing any fraud. Defendant

denies the remaining allegations of Paragraph 115.

116.    Allstate terminated Mr. Clemente and Ms. Clemente as agents. It is not alleged that Mr. and Ms. Clemente committed fraud. However, Allstate terminated them anyway. Allstate could have allowed them to keep their association with Allstate. Yet they did not. Plaintiffs could have kept their agency as only Ms. Dschuhan and Mr. Norton were under investigation. At the time, the investigation had just begun, there had been no finding of guilt from the insurance department, and Allstate made no attempt to ascertain what, if anything, Plaintiffs did to be targeted. Instead, Allstate just rid itself of Plaintiffs entirely, even though they did not have to.

**ANSWER:**    Defendant admits that Allstate terminated the Allstate R3001C Exclusive

Agency Agreement with the Roberto Clemente Jr. Family Agency, denies that Allstate

"terminated" Mr. and Ms. Clemente and denies the remaining allegations of Paragraph 116.

117.    Upon information and belief, other white agencies have been flagged and/or under investigation by the Pennsylvania insurance department and Allstate did not terminate/ fire the entity as well as each licensed agent, regardless of whether or not the individual agent was under investigation.

**ANSWER:**    Defendant denies the allegations of Paragraph 117.

118.    Upon information and belief, Mr. Tomaino and/or Ms. Staudt told Allstate and/or were involved in Allstate flagging Plaintiffs for fraud. Mr. Tomaino and Ms. Staudt were the two Allstate employees that knew that Plaintiffs were applying discounts in the way that Mr. Tomaino communicated and the way in which Ms. Staudt trained Plaintiffs to apply them.

**ANSWER:**    Defendant denies that Tomaino or Staudt were involved in "flagging"

Plaintiffs for fraud and denies the remaining allegations of Paragraph 118.

119.    Mr. Tomaino saw his friend Mr. Young leave Allstate, which was likely because of Plaintiffs. He had just stolen their customer. And then he eventually ended up with a number of Plaintiffs' other customers without paying for them. Upon information and belief, he felt that he could not compete because of race. He certainly had the motive to get rid of the minority-owned agency that was standing in the way of him acquiring more clients.

**ANSWER:**   Defendant denies the allegations of Paragraph 119.

120.   Plaintiffs reported numerous instances of racial discrimination, as noted throughout this Complaint, to Ms. Staudt.  She certainly had motive to dispose of Plaintiffs so that they would not continue to highlight racial inequities and discrimination at Allstate.

**ANSWER:**   Defendant denies that Plaintiffs reported numerous instances of racial discrimination to Staudt and denies the remaining allegations of Paragraph 120.

121.   Plaintiffs received a letter detailing the conditions of their termination.  Allstate iterated that it has the absolute right to approve any buyer to whom Plaintiffs wished to sell their Book.  Allstate informed Plaintiffs that they had to successfully sell their Book by December 1, 2020.  *See* Exhibit 4, Letter Advising Plaintiffs of Contractual Rights.

**ANSWER:**   Defendant admits that Dschuhan received a letter dated August 21, 2020 advising that Allstate was terminating the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency and admits that a copy of such letter is attached as Exhibit 4 to the TAC.  Defendant further states that the August 21, 2020 letter speaks for itself.  Defendant denies the remaining allegations of Paragraph 121.

122.   Specifically, the letter advises Plaintiffs of their contractual rights to sell their Book "...as outlined in the Independent Contractor Manual and Supplement for the R3001C Agreement" ("Supplement") to which The Roberto Clemente Jr. Family Agency was a signatory.

**ANSWER:**   Defendant states that the August 21, 2020 letter speaks for itself.  Defendant denies the remaining allegations of Paragraph 122.

123.   Paragraph C of the R3001C agreement states that "The Supplement for the R30001 Agreement ("Supplement") and the Exclusive Agency Independent Contractor Manual ("EA Manual"), and the Allstate Agency Standards ("Agency Standards") . . . are expressly incorporated in their entirety as part of this Agreement."

**ANSWER:**   Defendant states that Paragraph C of the R3001C agreement speaks for itself.  Defendant denies the remaining allegations of Paragraph 123.

124.   Under their contract with Allstate, Plaintiffs had until December 1, 2020 to sell their Book.  Plaintiffs elected to attempt to sell their Book pursuant to their contractual rights.

**ANSWER:**   Defendant admits that under the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, following the termination of the Agreement, the Roberto Clemente Jr. Family Agency had the option of accepting a termination payment from Allstate or selling the economic interest in the business to an approved buyer as outlined in the Independent Contractor Manual and Supplement for the R3001C Agreement. Defendant further admits that if the Roberto Clemente Jr. Family Agency elected to sell the economic interest in the business, Allstate has the absolute right of approval of the buyer and if Allstate approves a proposed buyer, the sale had to be completed on or before December 1, 2020. Defendant admits that Plaintiff attempted to sell their economic interest in the business but were unsuccessful and denies the remaining allegations of Paragraph 124.

125.    Following the termination, Plaintiffs had to recoup their investment by selling their Book.  Allstate, by and through its agents, interfered with and made this process impossible.

**ANSWER:**    Defendant denies the allegations of Paragraph 125.

126.    Although Plaintiffs purchased a Book, they did not have sole discretion to whom they could sell the Book following their termination.  Rather, Mr. Copenhaver and Allstate retained veto power over the sale of the Book.

**ANSWER:**    Defendant admits that if the Roberto Clemente Jr. Family Agency elected to sell its economic interest in the business, Allstate had the absolute right of approval of the buyer and the buyer must meet Allstate's eligibility requirements. Defendant denies the remaining allegations of Paragraph 126.

127.    Allstate did not approve certain potential buyers for the Book, which prevented Plaintiffs from selling it.  On at least one occasion, Allstate provided a pretextual reason for blocking the sale.

**ANSWER:**    Defendant denies the allegations of Paragraph 127.

128.    Allstate stymied the sale of the Book by not allowing Plaintiffs to sell it to independent agents. But it allowed other agents – Justin Young (white male) for example – to own Allstate agencies and a separate independent agency.

**ANSWER:**   Defendant denies the allegations of Paragraph 128.

129.   Despite Mr. Copenhaver being charged with helping Plaintiffs facilitate a sale, he was purposefully unhelpful.  He informed Plaintiffs that he was retiring during this transitional period and did not inform his successor of the situation.

**ANSWER:**   Defendant admits that Copenhaver retired in or around November 14, 2020 and that he informed Plaintiffs that he was retiring.  Defendant denies the remaining allegations of Paragraph 129.

130.   Plaintiffs were eventually made aware that if they could not sell the Book, a TPP process would ensue.  Plaintiffs never received any official documents explaining this TPP process.  Thus, Plaintiffs were never informed of the consequences of not selling their Book in time.

**ANSWER:**   Defendant admits that Plaintiffs were made aware, including by letter dated August 21, 2020, that if the Roberto Clemente Jr. Family Agency did not present a buyer or the buyer that the Agency presented is not approved, then Allstate would process a termination payment.  Defendant denies the remaining allegations of Paragraph 130.

131.   Plaintiffs also had a separate agreement with Allstate's loan company, which is a separate entity from Defendant, to secure the capital of the loan.  Because of Defendant's actions, Plaintiffs received notification that they were in default of that loan.

**ANSWER:**   Defendant is without information sufficient to admit or deny whether Plaintiffs had an agreement with a loan company to secure the capital of the loan.  Defendant denies the remaining allegations of Paragraph 131.

132.   In or around February 2021, Plaintiffs' clients received communications from Mr. Tomaino, which stated that Mr. Tomaino was now Plaintiffs' clients' new agent.

**ANSWER:**   Defendant admits that in or around February 2021, certain individuals were sent communications from Tomaino stating that Dschuhan was no longer their agent and that Tomaino was their new Allstate agent, which communications speak for themselves. Defendant denies the remaining allegations of Paragraph 132.

133.   Plaintiffs lost the full value of their investment into the Book and the insurance business with Allstate.  Plaintiffs' investment would have matured and they would have capitalized

on a measurable return.  However, due to Defendant's actions, Plaintiffs never realized these gains.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

whether Plaintiffs would have realized a return on any investment.  Defendant denies the remaining

allegations of Paragraph 133.

134.     Although Plaintiffs purchased the Book directly from Daniel Cone, Allstate stripped Plaintiffs of their ownership of the Book when it unilaterally decided to terminate Plaintiffs' contract with Allstate.  Plaintiffs gave consideration for the Book.

**ANSWER:**   Defendant admits that Cone and the Roberto Clemente Jr. Family Agency,

LLC entered into an Asset Purchase Agreement for the sale of Cone's economic interest in the

business and denies the remaining allegations of Paragraph 134.

135.     Plaintiffs have not received any compensation for the Book that they forfeited due to Allstate's illegal termination of their services/contractual agreement.  Apart from their monetary loss, they were damaged in their professional and personal relationships and reputations from Defendant's actions.

**ANSWER:**   Defendant denies the allegations of Paragraph 135.

136.     In mid-October 2020, Mr. Tomaino agreed to receive certain seeded policies owned by The Roberto Clemente Jr. Family Agency from Allstate.  He did not call Plaintiffs to inquire why he was getting these policies for free.  He did not ask them if there was any paperwork involved in transitioning these policies. He did not ask them to assist in transitioning the customers from one agency to another. He did not ask Plaintiffs to make any introductions and introduce Mr. Tomaino as Plaintiffs' former customers' new agent.  Many of Plaintiffs' customers  paid  their policies  in  person  and  would  have  had  to  physically  walk  or  get transportation to Mr. Tomaino's agency.  Some of Plaintiffs' customers spoke Spanish and preferred to communicate in Spanish rather than English.  Mr. Tomaino and Plaintiffs never had a conversation regarding how to transition these customers and ensure that their needs continued to be met.  There were no conversations regarding a transition, which indicates that these policies were not transitioned in a professional business manner. Rather, they were wrongfully taken from Plaintiffs.  This is further confounded by the fact that Allstate had given The Roberto Clemente Jr. Family Agency until December 2020 to sell their Book to other agents.

**ANSWER:**   Defendant admits that in or about mid-October 2020, Allstate contacted

Tomaino to inquire if his agency would want to be seeded certain Allstate policies held by former

customers of the Roberto Clemente Jr. Family Agency, admit that Tomaino's agency agreed to be

seeded the policies, which it would handle under Allstate's Service Fee Plan, and admit that

Tomaino did not speak to Plaintiffs about these policies.  Answering further, Defendant states that

Tomaino did not receive any of those policies prior to December 1, 2020. Defendant is without

information or knowledge sufficient to admit or deny the specific allegations related to Plaintiffs'

former customers, including whether Plaintiffs' former customers paid in person, spoke Spanish

and preferred to communicate in Spanish rather than English.  Defendant denies the remaining

allegations of Paragraph 136.

137.    If Defendant had allowed Plaintiffs to sell their Book per the terms of their
agreements and in good faith, they would not have even been able to.  Mr. Tomaino had already
taken a portion of Plaintiffs' business away from them in October 2020, before the December
deadline.

> **ANSWER:**    Defendant denies the allegations of Paragraph 137.

138.    Mr. Tomaino and other agents, upon information and belief, knew that they were
getting Plaintiffs' clients for free.  No one called Plaintiffs and told them that Allstate approached
them to take Plaintiffs' customers and not have to pay money for them.

> **ANSWER:**    Defendant is without knowledge or information sufficient to admit or deny

whether no customers called Plaintiffs, and denies the remaining allegations of Paragraph 138.

139.    Allstate began contacting agencies to receive Plaintiffs' Book and clients before
Plaintiffs' allotted time to sell the Book. Defendant had no intention of letting Plaintiffs sell their
Book at fair value.  Rather, Allstate intended to give Plaintiffs' Book away to other white-owned
agencies.  This was both intentional discrimination based on race as well as an explicit breach of
the parties' contractual agreement.  Upon information and belief, Allstate did not give any of
Plaintiffs' customers to minority-owned agencies.  This was a ruse to redistribute Plaintiffs'
customers to white agencies without them having to pay for them.

> **ANSWER:**    Defendant admits that prior to December 1, 2020, Allstate reached out to

certain agencies to inquire if they would be willing to service certain Allstate policies related to

the Roberto Clemente Jr. Family Agency after December 1, 2020.  Defendant denies the remaining

allegations of Paragraph 139.

140.    Allstate, in addition to discriminating against Plaintiffs, discriminated against
their own clients.  Stephanie Clemm (black female) called Plaintiffs' office and said that she just
had her car towed and needed roadside assistance. Allstate roadside assistance damaged her

vehicle, rendering the car undrivable. Ms. Dschuhan told the client that they would find out information and get back to her. Ms. Dschuhan called Allstate and Allstate Claims in an attempt to help the client. Allstate, however, said that this woman was making this story up and that there was no damage.

**ANSWER:**  Defendant is without knowledge or information sufficient to admit or deny

the allegations regarding Dschuhan's alleged conversations with the referenced customer and

alleged conversation with the Claims department.  Defendant denies that Allstate discriminated

against its clients and denies the remaining allegations of Paragraph 140.

141.     Allstate made this woman, who was pregnant, jump through many hoops to obtain a rental vehicle while the damage to her car was repaired.  Allstate wanted her to come up with the name of the representative that told her that she had to take photographs and that she would have to fill out the report.  This customer was nine months pregnant at the time.  Allstate also wanted her to crawl under her vehicle at nine months pregnant to prove that she had damage to her vehicle and that it was not drivable.   If this were a white woman, she would have been given a vehicle immediately.

**ANSWER:**  Defendant denies that Allstate discriminates against its clients and is without

knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 141.

142.     Allstate's actions resulted in this woman, who was pregnant, not being able to potentially go to the emergency room for lack of transportation.  Frustrated, Ms. Dschuhan told Ms. Staudt: "Do you want this in the news that Allstate made a woman lose her baby because she was forced to crawl under the car at nine months pregnant?"

**ANSWER:**  Defendant denies the allegations of Paragraph 142.

143.     A portion of this conversation is memorialized in the below text message:

**ANSWER:**  Defendant states that the below text message speaks for itself and denies the

remaining allegations of Paragraph 143.



144.    Ms. Staudt had the authority to go up the chain of command.  Ms. Staudt refused. Plaintiffs' superior, who worked at Allstate, displayed utter disregard for a human being with the obvious implication that this human being was treated this way because she is black.

**ANSWER:**    Defendant     denies     that     Staudt     was     Plaintiffs'

"superior" and denies the remaining allegations of Paragraph 144.

145.    Specifically, Ms. Dschuhan told Ms. Staudt that this was related to race.  She stated that Allstate would never ask a white woman at nine months pregnant to crawl under a car. The normal business practice would have been for the client to obtain a car that night.  Allstate had the ability to assign a claims adjuster immediately. Allstate could and should have gotten a rental car setup for this client that night.

**ANSWER:**    Defendant denies the allegations of Paragraph 145.

146.    In another instance, Ms. Dschuhan spoke on behalf of the agency at the Hill District and promoted renters insurance.  Ms. Dschuhan put on a whole program regarding renters insurance for low-income residents (who were almost exclusively minorities) of the Hill District.

**ANSWER:**    Defendant is without information or knowledge sufficient to admit or deny

the allegations of Paragraph 146.

147.    Marcia (Mar-cee-uh) Scott, a Black female, allowed Plaintiffs to quote her on her homeowners and auto insurance. At the post-bind inspection, Allstate sent out a cancellation to Marcia Scott for the homeownership policy that Plaintiffs wrote. Ms. Dschuhan looked at the inspection report and saw that the reason for the cancellation was Ms. Scott's roof.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

the allegations of Paragraph 147.

148.    Ms. Dschuhan knew that Ms. Scott had a new roof. She called Allstate and asked them to open the report. Underwriting, however, said that the condition of the roof was so poor and did not meet the criteria for Allstate.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

the allegations of Paragraph 148.

149.    Ms. Scott called Ms. Dschuhan and was highly upset because she was hesitant on letting Plaintiffs quote her homeowners' insurance in the first place. Ms. Scott felt that she was wronged because Plaintiffs solicited her for homeowners' insurance. Allstate's inspector said that there were shingles missing on the roof. The inspector, however, did not even get on the roof. Ms. Scott proved that there were no shingles missing and that her roof had recently been replaced. Ms. Scott had to have her roofer come back to the house to help her prove the same. The roofer came back and provided pictures showing that the roof was new. Allstate was going to make Ms. Scott pay thousands of dollars to get a new roof before they insured her.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

the allegations of Paragraph 149.

150.    Ms. Dschuhan told Ms. Staudt. Again, she did nothing. She did nothing because this cancellation involved a black customer. If it were a white customer, the policy would have never been canceled.

**ANSWER:**   Defendant denies that Allstate discriminates against its customers and

denies the remaining allegations of Paragraph 150.

151.    In another instance, Dr. Lima, a Brazilian man and cardiologist, was discriminated against. Allstate sent out an inspector. Allstate said that Plaintiffs' clients refused to let Allstate do an inspection. This was in fact a lie. All the client said was that the inspector could come back another time. The inspector, of course, canceled the policy. This was obviously due to the fact that this customer was a racial minority with an accent. Allstate would not have canceled an affluent white family's policy.

**ANSWER:**   Defendant denies that Allstate discriminated against Dr. Lima.  Defendant is without information or knowledge sufficient to admit or deny the remaining allegations of Paragraph 151.

152.   Ms. Dschuhan called Allstate directly to prevent them from sending another cancellation letter to a minority client.  Allstate continued to develop further racial animus toward Plaintiffs as they repeatedly highlighted racial inequities in the company.

**ANSWER:**   Defendant denies the allegations of Paragraph 152.

153.   Also, during this time, Allstate would simply not entertain applications from certain minorities as exemplified in the below screenshot.

**ANSWER:**   Defendant denies the allegations of Paragraph 153.



154.   Plaintiffs knew that Allstate discriminated against its clients based on the basis of race by the examples that they saw.  And they knew that Allstate was discriminating against them based on no white agency being treated in the same manner.  It is easy to see how a company that would discriminate against its clients would discriminate against its own employees (or supposed independent contractors).  The fact that Allstate even attempts to label agents as independent contractors is an attempt to avoid federal discrimination laws under Title VII.  Allstate notoriously fired its employee agents and attempted to reclassify them as independent contractors

for this very reason.

    **ANSWER:**    Defendant denies the allegations of Paragraph 154.

155.    Further, Plaintiffs noticed Allstate's overall company policy of discriminating against minority customers. Ms. Dschuhan reported that she was being impeded from bundling insurance policies for her minority customers. Most of Plaintiffs' minority customers were not given the opportunity to bundle, which resulted in higher insurance premiums for those customers. Allstate retaliated against Plaintiffs for reporting a multitude of discrimination events that were occurring against their customers and against them as agents.



    **ANSWER:**    Defendant denies that Allstate has policy of discrimininating against

minority customers and denies the remaining allegations of Paragraph 155.

156.    Plaintiffs complained to Allstate in multiple different ways about the discrimination that they faced. Plaintiffs requested to speak to diverse agencies regarding their discriminatory treatment and recourse to address it. Allstate did nothing, presumably because there were no Latino or Black agency owners with whom to speak.

    **ANSWER:**    Defendant is without knowledge or information sufficient to admit or deny

whether Plaintiffs ever requested to speak to any diverse agencies. Defendant denies that Allstate

discriminated against Plaintiffs and denies the remaining allegations of Paragraph 156.

157.    On November 30, 2020, Plaintiffs contacted Allstate's Corporate Territory Manager, David Campbell, regarding selling the Book. Plaintiffs, in good faith, believed that Allstate was adhering to their previous promise of giving them until December 1, 2020 to sell the Book. Plaintiffs explained that they had been diligently trying to sell their book since August 21, 2020 and that they had several interested parties that contacted them expressing interest.

    **ANSWER:**    Defendant admits that on November 30, 2020, Dschuhan sent an email to

Allstate's Corporate Territory Manager, David Campbell, regarding the Roberto Clemente Jr.

Family Agency selling its economic interest in the business and further states that the email speaks

for itself. Defendant denies the remaining allegations of Paragraph 157.



158.    Plaintiffs, by and through Ms. Dschuhan, expressed that they had not been able to communicate with Allstate corporate because of recent personnel changes, the COVID-19 pandemic, and the last-minute replacement of Eric Copenhaver, who was overseeing the agency's transition, to Mark Shokalook (FSL), another Allstate employee.

**ANSWER:**    Defendant admits that on November 30, 2020 Dschuhan sent an email to David Campbell regarding the Roberto Clemente Jr. Family Agency selling its economic interest in the business and further states that the email speaks for itself.  Defendant denies the remaining allegations of Paragraph 158.

159.    Allstate did not give Plaintiffs any such extension.  Without their knowledge, Allstate had already begun giving away their economic interests to white-owned agencies thereby depriving Plaintiffs of their contractual right to sell their economic interest with Allstate.

**ANSWER:**    Defendant admits that it did not extend the December 1, 2020 deadline. Defendant denies the remaining allegations of Paragraph 159.

160.    Allstate, by and through its agents and supervisors, did not want a minority-owned agency to even recoup the value of the policies they bought.  Rather, Allstate chose to hand-select who would receive Plaintiffs' policies.  Of course, the agents that received

44

Plaintiffs' policies – without paying Plaintiffs for them – were, upon information and belief, all white.

**ANSWER:**   Defendant admits that certain nearby agents were assigned the Allstate policies previously related to the Roberto Clemente Jr. Family Agency, that such agents did not pay Plaintiffs and that such agents were white. Defendant denies the remaining allegations of Paragraph 160.

161.    This was more than bad faith. It was intentional discrimination. Corporate management servicing Plaintiffs' region at Allstate were all white.  The agencies in Plaintiffs' region were virtually all white-owned.  The Roberto Clemente Jr. Family Agency was the one, if not the only, black-owned and/or Latino-owned agency in the entire state of Pennsylvania at the time of their separation from Allstate.

**ANSWER:**   Defendant denies the allegations of Paragraph 161.

162.    Plaintiffs all spoke Spanish, which gave Plaintiffs a natural edge with the Latino community.  Roberto Clemente Jr.'s name is associated with one of the most beloved Black athletes of all time.

**ANSWER:**   Defendant admits that Roberto Clemente Jr.'s name is associated with one of the most beloved black athletes of all time. Defendant is without information or knowledge sufficient to admit or deny whether all Plaintiffs speak Spanish. Defendant denies the remaining allegations of Paragraph 162.

163.    Allstate agencies and agents were both jealous and also saw the loss of a business opportunity.

**ANSWER:**   Defendant denies the allegation of Paragraph 163.

164.    The Roberto Clemente Jr. Family Agency serviced a large proportion of black and brown clients.  These clients, understandably, were drawn to The Roberto Clemente Jr. Family Agency.

**ANSWER:**   Defendant admits that the Roberto Clemente Jr. Family Agency serviced black and brown clients.  Defendant denies the remaining allegations of Paragraph 164.

165.    Allstate's other agencies in the region that The Roberto Clemente Jr. Family Agency serviced did not believe that they could compete with a Black/Latino-owned business for Black and Latino customers.

**ANSWER:**   Defendant denies the allegations of Paragraph 165.

166.   As such, Allstate, by and through its management, trumped-up fraud charges against Plaintiffs.  Then, after finding pretext to end Plaintiffs' contract/employment, Allstate's management blocked Plaintiffs, in bad faith, from selling their Book to other agencies.  This was deliberate and intentional.

**ANSWER:**   Defendant denies the allegations of Paragraph 166.

167.   Allstate said they "condoned" the techniques that were taught to Plaintiffs.  Yet they terminated Plaintiffs for this reason.  They did not terminate white agencies for utilizing these techniques.

**ANSWER:**   Defendant denies the allegations of Paragraph 167.

168.   Allstate taught Plaintiffs certain techniques so that they could have pretext to target Plaintiffs and terminate their contracts.

**ANSWER:**   Defendant denies the allegations of Paragraph 168.

169.   Allstate intended to discriminate based on race.  Its sole motivation was race.  Allstate's agents/supervisors, who had been in the region for years, did not like the fact that a Afro-Hispanic-owned agency might succeed in the space they occupied.  Allstate's white agents resented Plaintiffs for this.

**ANSWER:**   Defendant denies the allegations of Paragraph 169.

170.   And, to compound matters, Allstate's agents and supervisors, upon information and belief, were especially incensed by the fact that they felt that Plaintiffs were able to attract customers that they were not able to attract as Caucasians.  This was borne out by the lengths that Allstate agents went to steal The Roberto Clemente Jr. Family Agency's business.

**ANSWER:**   Defendant denies the allegations of Paragraph 170.

171.   Upon information and belief, agencies, such as the Tomaino Insurance Agency (and the other white agencies that received Plaintiffs' customers), paid no consideration for Plaintiffs' policies.  These policies would have generated significant long-term gains should Plaintiffs have been able to hold on to these policies in the coming years.

**ANSWER:**   Defendant admits that Tomaino agreed to service certain Allstate policies formerly related to the Roberto Clemente Jr. Family Agency and that Tomaino did not pay any consideration for the policies. Defendant denies the remaining allegations of Paragraph 170.

172.   An Afro-Hispanic-owned agency paid a significant amount of money for a Book of business with Allstate.  Allstate then blocked every attempt that Plaintiffs made to sell their

interest.  Then, white agents ended up with Plaintiffs' policies after having paid no consideration for it.

**ANSWER:**   Defendant denies the allegations of Paragraph 172.

173.   Upon information and belief, Allstate did not give these policies to minority agencies.  This assumes, of course, that it had a minority agency to give these policies to, which is doubtful considering Allstate's practice of non-inclusion among its agencies.  If Allstate did, it chose to give minority policies away to white agencies rather than giving them to minority agencies.  Allstate intentionally took policies away from a Black-owned agency and gave them to white agents without paying Plaintiffs.

**ANSWER:**   Defendant denies that it "gave away" these Allstate policies and denies the remaining allegations of Paragraph 173.

174.   Allstate did not even tell Plaintiffs to whom they gave their policies away. Plaintiffs did not discover that Allstate had given their policies away until February 11, 2021.

**ANSWER:**   Defendant denies that it "gave away" these Allstate policies.  Defendant is without information sufficient to admit or deny when Plaintiffs learned that a new agent was servicing these policies.  Defendant denies the remaining allegations of Paragraph 174.



175.   Not until February 11, 2021 did Plaintiffs fully understand the depth of Allstate's

racial discrimination against them. They previously understood that Allstate treated them disparately compared to white agencies in numerous ways outlined throughout this Third Amended Complaint.

**ANSWER:**   Defendant denies that Allstate engaged in discrimination and denies the remaining allegations of Paragraph 175.

176.   On February 11, 2021, however, Plaintiffs learned that Allstate deliberately stole their economic interests out from under them. Allstate gave Plaintiffs' policies away to a white-owned agency. Allstate gave away Plaintiffs' policies because they feared that minorities would prefer to work with a minority-owned agency over a white-owned agency. Because Allstate could not assuage the concerns of its many white-owned agency owners, Allstate, by and through its management and agents, decided to run Plaintiffs out of the insurance business and give the white agents the policies for which they believed they could not compete.

**ANSWER:**   Defendant denies the allegations of Paragraph 176.

177.   The process of selling their Book was stifling. Plaintiffs, during a global pandemic, had to sell their Book to only Allstate-approved buyers. Plaintiffs made selling the Book their job. They were not thinking about litigation. They were not thinking about the past; they were focused on the present. Plaintiffs never thought that Allstate would deny potential sellers in order to steal their Book. Yet, this is in fact what happened.

**ANSWER:**   Defendant admits that following the termination of the Allstate R3001C Exclusive Agency Agreement, the Roberto Clemente Jr. Family Agency had the option of accepting a termination payment from Allstate or selling the economic interest in the business to an approved buyer and that if the Agency elects to sell the economic interest in the business, Allstate has the absolute right of approval of the buyer. Defendant further admits that Plaintiffs unsuccessfully attempted to sell their economic interest in the business and that a global pandemic was ongoing at this time. Defendant is without information or knowledge sufficient to admit or deny what Plaintiffs were thinking during this time. Defendant denies the remaining allegations of Paragraph 177.

178.   Plaintiffs had tangible ownership of their Book until the December 1, 2020 date. They had an economic interest in their Book; they owned it.

**ANSWER:**   Defendant admits that the Roberto Clemente Jr. Family Agency had the option to sell the economic interest in the business to a buyer that met Allstate's eligibility requirements and was approved by Allstate, and that if Allstate approved a proposed buyer, the sale had to be completed on or before December 1, 2020. Defendant denies the remaining allegations of Paragraph 178.

179.    Plaintiffs' circumstances with respect to Covid-19, the emotional distress of being wrongly being targeted for fraud, the emotional distress of the insurance department wrongly investigating them, amongst others, delayed their pursuit of their administrative rights.

**ANSWER:**   Defendant denies the allegations of Paragraph 179.

180.    Plaintiffs, having to sell their Book, had an employment relationship with Allstate until December 1, 2020.  Although certain of Plaintiffs' obligations were relieved beforehand, Allstate gave Plaintiffs a certain amount of time to keep its affiliation with Allstate to the extent that it was still involved in dictating to whom Plaintiffs could sell their Book.

**ANSWER**:   Defendant denies the allegations of Paragraph 180.

181.    Allstate's continued exercise of control delayed Plaintiffs from exercising their rights under Title VII.

**ANSWER:**   Defendant denies the allegation of Paragraph 181.

182.    Allstate could have informed Plaintiffs that they did not intend to let them sell the Book.  Instead, Allstate acted in bad faith and strung Plaintiffs along based on the belief that Plaintiffs could sell their economic interests that were inherently tied to Allstate.

**ANSWER:**   Defendant denies the allegations of Paragraph 182.

183.    If Plaintiffs had not been doing everything in their power to sell their Book, they would have considered their legal options earlier.

**ANSWER:**   Defendant is without sufficient information to admit or deny the allegation of Paragraph 183.

184.    Plaintiffs did not appreciate the full extent of Allstate's deception until February 2021, when they were informed that a competitor had taken their customers after paying no consideration.

**ANSWER:**   Defendant denies the allegations of Paragraph 184.

185.    Allstate could have told Plaintiffs that their relationship with Allstate was completely over and that they were not going to allow Plaintiffs to sell their Book. They did not. Instead, they strung Plaintiffs along in bad faith to deter Plaintiffs from exercising their legal rights.

**ANSWER:**    Defendant denies the allegations of Paragraph 185.

186.    COVID-19 was also in full swing.  Plaintiffs had to figure out how to end a business with which they were joint employees with Allstate during the middle of a pandemic. This required Plaintiffs to figure out logistics such as who would take over their physical location, how they were going to proceed going forward, and what their legal recourse was.

**ANSWER:**    Defendant admits that the COVID-19 pandemic was ongoing in the fall of

2020.  Defendant denies the remaining allegations of Paragraph 186.

187.    Plaintiffs also had to deal with fraud allegations with the insurance department after Allstate falsely reported them to it.  Because of Allstate's actions, they needed to first secure their licenses to sell insurance.  This necessitated that Plaintiffs deal with a separate legal situation with the insurance department, which Allstate caused.  Understandably, Plaintiffs were focused on resolving that first.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny what

Plaintiffs were focused on resolving, and denies the remaining allegations of Paragraph 187.

188.    Allstate's bad faith created many delays in exhausting administrative requirements.

**ANSWER:**    Defendant denies the allegation of Paragraph 188.

### Allstate Employed Each Individual Plaintiff

189.    Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

**ANSWER:**    Defendant realleges and incorporates by reference its answers to the above-

mentioned paragraphs as though fully set forth herein.

190.    Allstate exercised control over each of the Plaintiffs.

**ANSWER:**    Defendant denies the allegation of Paragraph 190.

191.    Allstate dictated the many terms of their employment.  Allstate determined how Plaintiffs could advertise their business, what signage Plaintiffs could use in or on their business, what domain address they could use for their website, and the ways in which Plaintiffs could write policies.

**ANSWER**:   Defendant denies that it had an employment relationship with any of the Plaintiffs, and further states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship. Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements.   Defendant denies the remaining allegations of Paragraph 191.

192.     Allstate exercised control of its policies over The Roberto Clemente Jr. Family Agency.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 192.

193.     Allstate provided the specialized training needed for the job. All licensed and non-licensed agents had to complete Allstate's education program and an Allstate education program had to be signed. Exclusive Allstate agents were required to attend two Allstate university phases. This included classes with agents from all over the United States at Allstate's corporate headquarters in Chicago, Illinois, and the second phase of training classes were held at Allstate corporate headquarters in Malvern, Pennsylvania.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated

therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 193.

194.     The above-mentioned education programs were also required for the rest of staff in order to be granted access to Allstate's systems (perform essential job functions) and be issued a user ID and password.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 194.

195.     Before a licensed agent could sell insurance, the licensed agent had to satisfactorily complete Allstate's education requirements and become approved by Allstate to access any computer system to perform work.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 195.

196.     Other insurance companies did not require agents to pass this stringent curriculum before they could perform their work.

**ANSWER:**   Defendant is without knowledge or information to admit or deny the allegations of Paragraph 196.

197.     Allstate mandated certain education and license requirements to be approved to work for Allstate.  Allstate had the power to appoint agents within The Roberto Clemente Jr. Family Agency, and the power to terminate their agency.  Plaintiffs had no say and no part in approving and appointing agents and terminating staff if Allstate dictated that staff members needed to be terminated.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 197.

198.     Allstate retained the power and control to approve Plaintiffs' agency's physical location. If Allstate did not approve the location, The Roberto Clemente Jr. Family Agency could not open for business.  Allstate also kept ownership of the location's physical address once the agency contract ended.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms

governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 198.

199.    Allstate exercised a detailed level of control over the agency's physical location, including the wall colors, the percentage of a certain color on the wall, the lettering style of window signage, the branded Allstate emblem being required, and the mandated office hours being listed on the storefront.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 199.

200.    Allstate provided the exclusive agent a single Allstate interfaced laptop.  Other agents were allowed to purchase their own laptops but were mandated to send those laptops to Allstate for Allstate interface installation.  Agents of Allstate had no power to install this software themselves.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 200.

201.     Allstate's interface software was needed to access, maintain, service, sell, and/or complete any business or function with Allstate, which, of course, included selling insurance policies.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency

Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated

therein, the relationship between Allstate and Plaintiffs was solely an independent contractor

relationship.   Further, Allstate admits that many terms of the parties' independent contractor

relationship were set forth in the agreement, which speaks for itself, and that any other terms

governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements.

Defendant denies the remaining allegations of Paragraph 201.

202.     Allstate provided the computer, EA reports, and detailed information that was vital to successfully operate an agency.  Allstate mandated that agents use the Agency Gateway and Advisor Pro software for all quoting of policies.  Plaintiffs could not use any of its own software to operate its business and had to use Allstate's interface system.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency

Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated

therein, the relationship between Allstate and Plaintiffs was solely an independent contractor

relationship.   Further, Allstate admits that many terms of the parties' independent contractor

relationship were set forth in the agreement, which speaks for itself, and that any other terms

governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements.

Defendant denies the remaining allegations of Paragraph 202.

203.     Plaintiffs had to use Ivantage (Allstate's system) to communicate and bind business with all broker companies.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency

Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated

therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 203.

204.    Allstate mandated the exclusive use of and provided the personalized proposal or quote format to be given to proposed and existing clients.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 204.

205.    Allstate provided formatted, standard business cards to The Roberto Clemente Jr. Family Agency's staff.  Business cards were branded and Plaintiffs' employees had no power to choose anything different.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 205.

206.    Allstate controlled the manner in which The Roberto Clemente Jr. Family Agency could market its agency, which, as referenced above and incorporated herein, included, among many other things, Plaintiffs' Google My Business profile.

**ANSWER:**    Defendant denies the allegation of Paragraph 206.

207.    Allstate controlled Plaintiffs' emails.  Plaintiffs had to use Allstate's system. Allstate monitored and controlled all information that Plaintiffs could communicate at all times.

**ANSWER:**    Defendant denies the allegation of Paragraph 207.

208.    The computers had to come from Allstate's marketplace if they were not provided to the exclusive agent.  The computers came with an interface on the computers.  Plaintiffs could not control their computers.  The computers blocked G Drive and other commonly-used third-party storage applications that independent contractors (unlike Plaintiffs) typically use in their businesses.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 208.

209.    Plaintiffs' computers required a two-step verification process.  You could not use anything that was not approved by Allstate.  This included a two-step authentication (VIP code) application on cell phones and computers.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor

relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 209.

210.     Allstate would not allow Plaintiffs' to text customers.  As a purported independent contractor, that decision should have rested with Plaintiffs.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 210.

211.     Allstate had access to each of Plaintiffs' interfaces.  Allstate could log onto Plaintiffs' computers and their interface.  In fact, Ms. Staudt could override Plaintiffs' interface and be logged on at all times.  She did in fact do this on occasion.

**ANSWER:**   Defendant admits that certain Allstate employees could log onto certain Allstate applications used by the Roberto Clemente Jr. Family Agency, and denies the remaining allegations of Paragraph 211.

212.     Plaintiffs could not send drip campaigns without Allstate's approval. This required Plaintiffs using Allstate's keywords.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor

relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 212.

213.   Regarding social media, Plaintiffs had to abide by Allstate's colors, and use Allstate's keywords.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 213.

214.   Plaintiffs did not have a Facebook page.  And when they finally received one, Allstate reserved the right to post on Plaintiffs' behalf.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 214.

215.     Allstate controlled Plaintiffs' work hours.  They had to be open at certain times of the day and so many hours of the week.  Plaintiffs wanted to work a different schedule, but they could only do so with Allstate's approval.   If Plaintiffs did not operate the minimum number of hours, they would be terminated.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 215.

216.     Allstate provided and mandated non-compete and confidentiality agreements to all staff before any access was granted to Allstate's laptops or Plaintiffs were able to perform any work.  Plaintiffs could not work for Allstate without non-compete and confidentiality agreements in place.

**ANSWER:**     Defendant admits that pursuant to the terms of the Allstate R3001C Exclusive Agency Contract with the Roberto Clemente Jr. Family Agency, the individual Plaintiffs signed     Confidentiality     and     Non-Competition     Agreements,     which speak for themselves.  Defendant denies the remaining allegations of Paragraph 216.

217.     Allstate provided the Plaintiffs' agency standards manual, which added many more stringent requirements.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms

governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 217.

218.    Allstate provided exclusive digital proposals for all clients on Plaintiffs' behalf.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 218.

219.    Allstate provided the agency/staff tools needed to operate and meet requirements of R30001(c); this includes, among other things, exterior signage, branded presence materials, Allstate's branded solicitation programs, brochures, etc.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 219.

220.    Allstate provided Plaintiffs' website for The Roberto Clemente Jr. Family Agency.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 220.

221.   Allstate provided a Blueprint program with structured, pre-designed mailers, letters, advertisements, media, emails, digital proposals, e-agent programs, and leads.  The money allotted to this program was taxable income that Plaintiffs could only use to purchase services through this program.  Allstate's employee, Ms. Staudt, directed Plaintiffs on how they should use this money within the program.

**ANSWER:**   Defendant admits that Allstate offered a marketing program called Blueprint Program, denies that Staudt directed Plaintiffs on how they use the money within this marketing program and denies the remaining allegations of Paragraph 221.

222.   Allstate provided an assigned Agency Process Specialist to the agency and all staff for opening the agency, educating, training, and overall agency support in its day-to-day processes and completing Allstate business.

**ANSWER:**   Defendant admits that it assigned an Agency Process Specialist to the agency.   Defendant further states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 222.

223.    If Plaintiffs were not selling an Allstate product, they had to get approval from Allstate to go out and write that policy.  Even though Allstate could not write the policy, Plaintiffs had to go through the Ivantage program, which was Allstate's program.  If they were independent contractors, they should have been able to write policies with other companies if they were not competing with Allstate.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 223.

224.    Allstate had an Agency manager called a Field Sales Leader who was an employee of Allstate.  This Field Sales Leader had the power to supervise Plaintiffs in their capacity as joint employees of The Roberto Clemente Jr. Family Agency and Allstate.  Plaintiffs had to report to the Field Sales Leader.  The Field Sales Leader was tasked by Allstate with training its agencies and agents.  The Field Sales Leader is supposed to help agencies with business planning, improve agency operations, increasing revenue, identify issues and opportunities, provide sales tips, etc.

**ANSWER:**    Defendant admits a Field Sales Leader is an employee of Allstate and that a Field Sales Leader provides consultation to agents regarding business planning and increasing profits and revenue.  Defendant denies that Field Sales Leaders "supervise" Plaintiffs, denies that Plaintiffs were "joint employees" of Allstate and denies the remaining allegations of Paragraph 224.

225.    The individual plaintiffs had agency meetings with corporate educators, territory managers, and other Allstate employees that were all held on Allstate's corporate premises.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.   Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 225.

226.   Plaintiffs' working relationship with Allstate was not defined nor sporadic. Plaintiffs would have had an indefinite working relationship, hopefully until retirement, if Allstate did not discriminate against Plaintiffs and terminate their employment.

**ANSWER:**   Defendant denies the allegations of Paragraph 226.

227.   Plaintiffs' could not sell their own Book of business without Allstate's approval. They had to sell their Book to an Allstate-approved business.  As such, they could not exit Allstate's control without Allstate's exclusive control.

**ANSWER:**   Defendant admits that pursuant to the terms of the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, if the Agency elects to sell the economic interest in the business, any proposed buyer must meet Allstate's eligibility requirements and   be approved by Allstate.   Defendant denies the remaining allegations of Paragraph 227.

228.   Allstate also contracted for non-compete agreements with the individual Plaintiffs.   There is a strong presumption that an independent contractor with a non-compete provision is an employee, not an independent contractor.

**ANSWER:**   Defendant admits that pursuant to the terms of the Allstate R3001C Exclusive Agency Contract with the Roberto Clemente Jr. Family Agency, the individual Plaintiffs signed   Confidentiality   and   Non-Competition   Agreements,   which speak for themselves, and denies the remaining allegations of Paragraph 228.

229.     Allstate would not allow Plaintiffs to continue to carry on any business within one mile of the Allstate location that they previously resided at.  They also could not use the same location that they previously had for their next business venture if Allstate had terminated them.

**ANSWER:**     Defendant states that the Confidentiality and Non-Competition Agreements with Allstate that Plaintiffs signed speak for themselves, and denies the remaining allegations of Paragraph 229.

230.     Plaintiffs did not own their own telephone number. Plaintiffs had to immediately assign this back over to corporate after termination.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 230.

231.     Allstate had the right to assign Plaintiffs additional projects.  Allstate required Plaintiffs, in addition to their core job functions, to complete deposits of policy payments and remit them to Allstate's bank.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 231.

232.    Allstate required Plaintiffs to create certain customer service initiatives for Allstate.

**ANSWER:**    Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship.  Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 232.

233.    Allstate maintained control over Plaintiffs' employees.  Plaintiffs could interview staff but could not hire them until they completed Allstate's education.  Allstate approved all staff whether or not that particular staff person had access to Allstate's computers and purportedly confidential information.  Allstate completed background checks on all licensed sales producers. Plaintiffs could not hire additional staff to sell products other than Allstate for the agency.  As such, they were restricted to working only with Allstate.

**ANSWER:**    Defendant denies that Allstate maintained control over Plaintiffs' employees. Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship. Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 233.

234.     Plaintiffs' work was part of Allstate's regular business. Allstate is in the business of selling insurance policies.  Plaintiffs were in the business of selling insurance policies. Both Allstate and Plaintiffs were in the same exact business.

**ANSWER:**     Defendant admits that Allstate is in the insurance business and that at certain times, the Roberto Clemente Jr. Family Agency was an Allstate Exclusive Agency.  Defendant denies the remaining allegations of Paragraph 234.

235.     Allstate also offered Plaintiffs benefits such as life insurance, disability, and medical benefits.

**ANSWER:**     Defendant states that pursuant to the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated therein, the relationship between Allstate and Plaintiffs was solely an independent contractor relationship. Further, Allstate admits that many terms of the parties' independent contractor relationship were set forth in the agreement, which speaks for itself, and that any other terms governing their independent contractor relationship were the same terms that applied to all of Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements. Defendant denies the remaining allegations of Paragraph 235.

236.     Allstate had the power to terminate the individual Plaintiffs' employment, which it did.

**ANSWER:**  Defendant denies the allegations of Paragraph 236.

237.     Allstate was the joint employer, or, in the alternative, sole employer of the individual Plaintiffs. Allstate had the power to alter, supervise, and control Plaintiffs' conditions of employment to a substantial degree as well as hire and fire Plaintiffs.

**ANSWER:**     Defendant denies the allegations of Paragraph 237.

238.     Allstate unilaterally determined the compensation that The Roberto Clemente Jr. Family Agency would receive.

**ANSWER:**     Defendant denies the allegation of Paragraph 238.

239.     Allstate controlled and approved all new business.  Allstate maintained authority to decline business that Plaintiffs generated.

**ANSWER:**   Defendant denies the allegations of Paragraph 239.

240.   Allstate created staff identifications for each individual Plaintiff, which necessarily denotes that Allstate considered Plaintiffs among its employees among its staff. *E.g.*, Exhibit 5.

**ANSWER:**   Defendant denies the allegations of Paragraph 240.

241.   Allstate required each of the Plaintiffs to file a non-competition agreement, which makes them employees. Exhibit 6. Allstate Insurance Company was a direct and intended beneficiary of the non-compete agreements.

**ANSWER:**   Defendant admits that pursuant to the terms of the Allstate R3001C

Exclusive Agency Contract with the Roberto Clemente Jr. Family Agency, the individual Plaintiffs

signed      Confidentiality      and      Non-Competition      Agreements,      which

speak for themselves.  Defendant denies that Plaintiffs were employees of Defendant and denies

the remaining allegations of Paragraph 241.

242.   Allstate maintained control of whether policies purchased from Plaintiffs were renewed and set the guidelines for renewal.

**ANSWER:**   Defendant states that pursuant to the Allstate R3001C Exclusive Agency

Agreement with the Roberto Clemente Jr. Family Agency, including the documents incorporated

therein, the relationship between Allstate and Plaintiffs was solely an independent contractor

relationship.  Further, Allstate admits that many terms of the parties' independent contractor

relationship were set forth in the agreement, which speaks for itself, and that any other terms

governing their independent contractor relationship were the same terms that applied to all of

Allstate's independent agents who signed Allstate R3001C Exclusive Agency Agreements.

Defendant denies the remaining allegations of Paragraph 242.

243.   Plaintiffs in all respects were economically dependent on Allstate for work.  As soon as they joined Allstate, Allstate controlled all facets of their job functions.   Moreover, Allstate restricted Plaintiffs from writing policies with other insurance companies. This went so far as to exclude Plaintiffs from writing a certain type of insurance policy that Allstate did not even write.  A true independent contractor is able to work for multiple companies at the same time and

balance their work among these companies accordingly. For example, a general contractor often works on multiple projects for different homeowners at once. Allstate, however, mandated that Plaintiffs only sell Allstate's products, even where selling another product would not interfere with Allstate's business.

**ANSWER:** Defendant admits that pursuant to the Allstate R3001C Exclusive Agency Agreement with Roberto Clemente Jr. Family Agency, Plaintiffs were independent contractors and had an exclusive agency relationship with Allstate. Defendant further states that the terms of the Agreement and the Confidentiality and Non-Competition Agreements signed by Plaintiffs speak for themselves, and denies the remaining allegations of Paragraph 243.

244.     Allstate retained the right to terminate Plaintiffs' employment (working relationship) with Allstate. As such, Plaintiffs had to adhere to all of Allstate's systems of control outlined above or Allstate would terminate Plaintiffs. These methods of control, as outlined in this Complaint, were above and beyond the obligations for which the parties contracted. But, given that Allstate could rely on the provision in its contractual agreement regarding its right to terminate, Allstate was able to exercise absolute control over Plaintiffs' employment.

**ANSWER:** Defendant admits that pursuant to the Allstate R3001C Exclusive Agency Agreement with Roberto Clemente Jr. Family Agency, Plaintiffs were independent contractors and had an exclusive agency relationship with Allstate. Defendant further states that the terms of the Agreement and the Confidentiality and Non-Competition Agreements signed by Plaintiffs speak for themselves, and denies the remaining allegations of Paragraph 244.

245.     In fact, Allstate terminated two employees of The Roberto Clemente Jr. Family Agency, Mr. and Ms. Clemente, without cause. An independent contractor relationship does not contemplate that the owner may unilaterally terminate and employee of the independent contractor.

**ANSWER:** Defendant denies the allegations of Paragraph 245.

## COUNT I
### Section 1981
### *Race Discrimination, Hostile Work Environment, and Retaliation*
### **(Plaintiffs v. Defendant)**

246.     Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

**ANSWER:**   Defendant realleges and incorporates by reference its answers to the above-mentioned paragraphs as though fully set forth herein.

247.   Mr. Clemente is an Afro-Hispanic male.   Ms. Clemente, Mr. Norton, and Ms. Dschuhan are white.   But they were discriminated against because of their association with Mr. Clemente.

**ANSWER:**   Defendant admits that Mr. Clemente is an Afro-Hispanic male and that Ms. Clemente, Mr. Norton and Ms. Dschuhan are white.   Defendant denies the remaining allegations of Paragraph 247.

248.   The Third Circuit has recognized associational discrimination claims, which are based on familial or other relationships with persons discriminated against based on race.

**ANSWER:**   Defendant states that the allegations of Paragraph 248 constitute legal conclusions for which no answer is required.   To the extent that an answer is required, Defendant denies that it discriminated against Plaintiffs.

249.   Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

**ANSWER:**   Defendant denies the allegations of Paragraph 249.

250.   Plaintiffs had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

**ANSWER:**   Defendant states that the allegations of Paragraph 250 constitute legal conclusions for which no answer is required.   To the extent that an answer is required, Defendant admits the allegations of Paragraph 250.

251.   Plaintiffs were at-will employees, which implicates their right to make and enforce contracts.

**ANSWER:**   Defendant denies the allegations of Paragraph 251.

252.   In the alternative, Plaintiffs were independent contractors, which implicates their right to make and enforce contracts.

**ANSWER:**   Defendant states that the allegations of Paragraph 252 constitute legal conclusions for which no answer is required.  To the extent that an answer is required, Defendant admits the allegations of Paragraph 252.

253.    Defendant abridged Plaintiffs' right to make and enforce contracts by its discriminatory conduct toward Plaintiffs.

**ANSWER:**   Defendant denies the allegation of Paragraph 253.

254.    As a result of Defendant's actions, Defendant has denied Plaintiffs the right to the same terms, conditions, privileges and benefits of their employment with Defendant.

**ANSWER:**   Defendant denies the allegation of Paragraph 254.

255.    Defendant, by and through its supervisors, intentionally discriminated against Plaintiffs on the basis of race.

**ANSWER:**   Defendant denies the allegation of Paragraph 255.

256.    Plaintiffs are a member of a protected class and were qualified for the position that Plaintiffs held.

**ANSWER:**   Defendant admits that Mr. Clemente is an Afro-Hispanic male and that Ms. Clemente, Mr. Norton and Ms. Dschuhan are white.  Defendant denies the remaining allegations of Paragraph 256.

257.    Defendant's actions altered Plaintiffs' work environment.

**ANSWER:**   Defendant denies the allegation of Paragraph 257.

258.    The discrimination that Plaintiffs faced detrimentally affected Plaintiffs. And this discrimination would detrimentally affect a reasonable person in like circumstances.

**ANSWER:**   Defendant denies the allegations of Paragraph 258.

259.    This severe and pervasive environment continued throughout Plaintiffs' employment.

**ANSWER:**   Defendant denies the allegation of Paragraph 259.

260.    Defendant is liable for its supervisors under respondeat superior.

**ANSWER:**    Defendant states that the allegation of Paragraph 260 constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies the allegation of Paragraph 260.

261.    Plaintiffs participated in protected conduct.  Defendant retaliated against Plaintiffs because of his participation in protected activities.  There is a causal connection between Plaintiffs' participation in protected activities and the adverse employment action from which Plaintiffs suffered.

**ANSWER:**    Defendant denies the allegations of Paragraph 261.

262.    Specifically, Plaintiffs participated in protected conduct by complaining about a racist incident at an Allstate-sponsored event.

**ANSWER:**    Defendant denies the allegation of Paragraph 262.

263.    As a direct and proximate result of Defendant's acts and conduct, Plaintiffs have suffered and will suffer those injuries, damages, and losses alleged herein and have incurred and will incur attorneys' fees.

**ANSWER:**    Defendant denies the allegations of Paragraph 263.

264.    The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

**ANSWER:**    Defendant denies the allegation of Paragraph 264.

265.    Plaintiffs suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiffs.

**ANSWER:**    Defendant denies the allegation of Paragraph 265.

266.    Plaintiffs complained about race discrimination in the contractual processes with Allstate.

**ANSWER:**    Defendant denies the allegation of Paragraph 266.

267.    Plaintiffs were terminated as a result of Defendant's discriminatory conduct.

**ANSWER:**    Defendant denies the allegation of Paragraph 267.

268.    Allstate discriminated against Plaintiffs during the process in which Plaintiffs attempted to sell their Book.  Allstate intentionally stymied Plaintiffs from selling their economic interest to a private buyer.

**ANSWER:**     Defendant denies the allegation of Paragraph 268.

269.    But for Plaintiffs' opposition to race discrimination, they would not have experienced the retaliation to which Allstate subjected them to.

**ANSWER:**    Defendant denies that Allstate discriminated against Plaintiffs or subjected

Plaintiffs to retaliation and denies the remaining allegations of Paragraph 269.

270.    Justin Young intentionally discriminated against Plaintiffs when he attempted to prevent Plaintiffs from using their name in association with their business. His reasons were pretextual. Other white agencies were allowed to use their name with their respective agency. Mr. Young endeavored to preclude Plaintiffs from using the Roberto Clemente name for fear that Plaintiffs would attract minority business away from Mr. Young.

**ANSWER:**    Defendant denies the allegations of Paragraph 270.

271.    Justin Young also discriminated against Plaintiffs after Plaintiffs entered into a contractual agreement with Daniel Cone for his Book. This discrimination occurred after an identifiable contract had already been agreed to between Plaintiffs and Daniel Cone. In fact, his interference with Plaintiffs during the appointment process could have put Plaintiffs' previous contract with Mr. Cone in jeopardy and did delay Plaintiffs start date for their business.

**ANSWER:**    Defendant denies the allegations of Paragraph 271.

272.    Justin Young, was at all relevant times, an agent of Allstate.

**ANSWER:**    Defendant admits that at certain times Young was an agent of Allstate.

Defendant denies the remaining allegations of Paragraph 272.

273.    Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**ANSWER**:   Defendant denies the allegation of Paragraph 273.

*Allstate's Termination of the Individual Plaintiffs' Employment Provides the Contractual Predicate for a Section 1981 Claim*

274.    The Court has already found that the individual Plaintiffs have pleaded a plausible employment relationship with Allstate. *Clemente v. Allstate Ins. Co.*, 2:22-CV-00056-CCW, at *22-23 (W.D. Pa. Dec. 28, 2022) ("These factual allegations, in combination with others in the Second Amended Complaint give rise to the plausible inference that Allstate employed the individual plaintiffs.").

**ANSWER:**    Defendant states that the allegation of Paragraph 274 constitutes a legal

conclusion for which no answer is required. To the extent that an answer is required, Defendant

states that the Court's opinion speaks for itself and denies that Plaintiffs had an employment relationship with Defendant.

275.    Allstate eventually terminated the individual Plaintiffs' employment.

**ANSWER:**  Defendant denies the allegation of Paragraph 275.

276.    Any employment relationship, even an at-will employment relationship, can serve as the contractual predicate for a Section 1981 claim.

**ANSWER**:  Defendant states that the allegation of Paragraph 276 constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies that Plaintiffs had an employment relationship with Defendant and denies the remaining allegations of Paragraph 276.

277.    In *Rouse v. II-VI, Incorporated*, the United States District Court of the Western District of Pennsylvania expressly found that terminating an at-will employee may give rise to a Section 1981 action. 2:06-cv-566, at *19 (W.D. Pa. Mar. 30, 2007) ("terminating an at-will employee may give rise to a § 1981 action").

**ANSWER:**  Defendant states that the allegation of Paragraph 277 constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant states that the referenced court opinion speaks for itself and denies that Plaintiffs had an employment relationship with Defendant.

278.    At the very least, the individual Plaintiffs were at-will employees of Allstate.

**ANSWER**:  Defendant denies the allegation of Paragraph 278.

279.    Allstate interfered with the individual Plaintiffs' at-will employment contract by terminating their employment.

**ANSWER:**  Defendant denies the allegation of Paragraph 279.

280.    The individual Plaintiffs' at-will employment relationship serves as a sufficient predicate for a Section 1981 claim against Allstate.

**ANSWER:**   Defendant denies that Plaintiffs had an employment relationship with Allstate and denies the remaining allegations of Paragraph 280.

281.    Further, Allstate bound each individual Plaintiff to non-compete agreements.

**ANSWER:**    Defendant admits that pursuant to the terms of the Allstate R3001C

Exclusive Agency Contract with the Roberto Clemente Jr. Family Agency, the individual Plaintiffs

signed         Confidentiality         and         Non-Competition         Agreements,         which

speak for themselves.  Defendant denies the remaining allegations of Paragraph 281.

282.    To the extent that the at-will relationship does not serve as the contractual predicate
for a Section 1981 claim – which it does – Allstate also discriminated by terminating the individual
Plaintiffs who had non-compete agreements.

**ANSWER:**    Defendant denies the allegations of Paragraph 282.

283.    This Court has noted that "[e]very contract contains as an implied term the duty of
good faith and fair dealing." *Clemente v. Allstate Ins. Co.*, 2:22-CV-00056-CCW, at *8 (W.D. Pa.
Dec. 28, 2022) (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165,
170 (3d Cir. 2013). Consistent with that duty, "where discretion is given under a contract, the
discretion must be exercised reasonably." *Orange v. Starion Energy PA, Inc.*, No. CV 15-773, 2016
WL 1043618, at *3 (E.D. Pa. Mar. 16, 2016), *aff'd*, 711 Fed.Appx. 681 (3d Cir. 2017).

**ANSWER:**    Defendant states that the allegations of Paragraph 283 constitute a legal

conclusion for which no answer is required.  To the extent that an answer is required, Defendant

states that the referenced opinion of the Court speaks for itself and denies that Defendant breached

any contract with Plaintiffs.

284.    Allstate unreasonably exercised its discretion to terminate the individual Plaintiffs'
employment.  Discrimination is unreasonable.

**ANSWER:**    Defendant admits that discrimination is unreasonable and denies the

remaining allegations of Paragraph 284.

285.    The individual Plaintiffs were left with no employment.  Yet Allstate retained, as
the non-compete might be interpreted, the benefit of eliminating future competitors who could no
longer compete against Allstate in the insurance space.

**ANSWER:**    Defendant states that the allegations of Paragraph 285 constitute legal

conclusions for which no answer is required.  To the extent that an answer is required, Defendant

denies that Plaintiffs were employees of Defendant and denies the remaining allegations of Paragraph 285.

286.    The interference with the non-compete agreements separately or coupled with Allstate's termination of the individual Plaintiffs serves as the contractual predicate for the individual Plaintiffs' Section 1981 claim.

**ANSWER:**    Defendant denies the allegation of Paragraph 286.

<u>**COUNT II**</u>
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Race Discrimination; Retaliation; Hostile Work Environment)**
**(Plaintiffs v. Defendant)**

287.    Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

**ANSWER:**    Defendant realleges and incorporates by reference its answers to the above-mentioned paragraphs as though fully set forth herein.

288.    Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiffs of the rights guaranteed under Title VII.

**ANSWER:**    Defendant denies the allegation of Paragraph 288.

289.    Defendant is a covered employer under Title VII and employs more than 15 employees.

**ANSWER:**    Defendant admits that it is a covered employer under Title VII and employs more than 15 employees, but denies that Defendant was Plaintiffs' employer and denies the remaining allegations of Paragraph 289.

290.    As a result of Defendant's actions, Defendant has denied Plaintiffs the right to the same terms, conditions, privileges and benefits of Plaintiffs' employment with Defendant.

**ANSWER:**    Defendant denies the allegation of Paragraph 290.

291.    Mr. Clemente is an Afro-Hispanic male. Ms. Clemente, Mr. Norton, and Ms. Dschuhan are white.  But they were discriminated against because of their association with Mr. Clemente.

**ANSWER:**     Defendant admits that Mr. Clemente is an Afro-Hispanic male and that Ms. Clemente, Mr. Norton and Ms. Dschuhan are white.  Defendant denies the remaining allegations of Paragraph 291.

292.    Defendant, by and through its supervisors, intentionally discriminated against Plaintiffs on the basis of race.

**ANSWER:**     Defendant denies the allegation of Paragraph 292.

293.    Plaintiffs are a member of a protected class and are qualified for the position that Plaintiffs held.

**ANSWER:**     Defendant denies that all Plaintiffs are members of a protected class and denies the remaining allegations of Paragraph 293.

294.    Defendant's actions altered Plaintiffs' work environment.

**ANSWER:**     Defendant denies the allegation of Paragraph 294.

295.    The discrimination that Plaintiffs faced detrimentally affected Plaintiffs. And this discrimination would detrimentally affect a reasonable person in like circumstances.

**ANSWER:**     Defendant denies the allegation of Paragraph 295.

296.    This severe and pervasive environment continued throughout Plaintiffs' employment.

**ANSWER:**     Defendant denies the allegation of Paragraph 296.

297.    Defendant is liable for its supervisors under respondeat superior.

**ANSWER:**     Defendant denies that it was Plaintiffs' employer and denies the remaining allegations of Paragraph 297.

298.    Plaintiffs participated in protected conduct.  Defendant retaliated against Plaintiffs because of their participation in protected activities. There is a causal connection between Plaintiffs' participation in protected activities and the adverse employment action from which Plaintiffs suffered.

**ANSWER:**     Defendant denies the allegations of Paragraph 298.

299.    Specifically, Plaintiffs participated in protected conduct by complaining about a racist incident at an Allstate-sponsored event.

**ANSWER:**   Defendant denies the allegations of Paragraph 299.

300.   As a direct and proximate result of Defendant's acts and conduct, Plaintiffs have suffered and will suffer those injuries, damages, and losses alleged herein and have incurred and will incur attorneys' fees.

**ANSWER:**   Defendant denies the allegations of Paragraph 300.

301.   The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory rights of Plaintiffs.

**ANSWER:**   Defendant denies the allegation of Paragraph 301.

302.   Plaintiffs suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiffs.

**ANSWER:**   Defendant denies the allegation of Paragraph 302.

303.   Plaintiffs were terminated as a result of Defendant's discriminatory conduct.

**ANSWER:**   Defendant denies the allegation of Paragraph 303.

304.   Allstate discriminated against Plaintiffs during the process in which Plaintiffs attempted to sell their Book.  Allstate intentionally stymied Plaintiffs from selling their economic interest to a private buyer.

**ANSWER:**   Defendant denies the allegation of Paragraph 304.

305.   Justin Young intentionally discriminated against Plaintiffs when he attempted to prevent Plaintiffs from using their name in association with their business.  His reasons were pretextual.  Other white agencies were allowed to use their name with their agency.  Mr. Young endeavored to preclude Plaintiffs from using the Roberto Clemente name for fear that Plaintiffs would attract minority business away from Mr. Young.

**ANSWER:**   Defendant denies the allegations of Paragraph 305.

306.   Justin Young was, at all relevant times, an agent of Allstate.

**ANSWER:**   Defendant states that the allegation of Paragraph 306 constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant admits that at certain times Young was an agent of Allstate. Defendant denies the remaining allegations of Paragraph 306.

307.   Plaintiffs are now suffering and will continue to suffer irreparable injury and

monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**ANSWER:** Defendant states that the allegations of Paragraph 307 constitute legal conclusions for which no answer is required. To the extent an answer is required, Defendant denies Defendant discriminated against Plaintiffs or violated Title VII, denies that Plaintiffs are entitled to any relief in this action, and denies the remaining allegations of Paragraph 307.

## COUNT III
### Breach of Contract
### (Roberto Clemente Jr. Family Agency  v.  Defendant)

308.    Plaintiffs hereby incorporate all allegations contained in the above-mentioned paragraphs fully as if they were set forth at length.

**ANSWER:** Defendant realleges and incorporates by reference its answers to the above-mentioned paragraphs as though fully set forth herein.

309.    The Roberto Clemente Jr. Family Agency entered into a contractual agreement in which Plaintiffs received an affiliation with Allstate and The Roberto Clemente Jr. Family Agency compensated Allstate for this affiliation.

**ANSWER:** Defendant admits that Allstate and the Roberto Clemente Jr. Family Agency entered into the Allstate R3001C Exclusive Agency Agreement, which speaks for itself. Defendant denies the remaining allegations of Paragraph 309.

310.    The parties exchanged valuable consideration for their respective promises.

**ANSWER:** Defendant admits that Allstate and the Roberto Clemente Jr. Family Agency entered into the Allstate R3001C Exclusive Agency Agreement, which speaks for itself. Defendant denies the remaining allegations of Paragraph 310.

311.    The parties distilled their offer and acceptance into a written contractual agreement.

**ANSWER:** Defendant admits that Allstate and the Roberto Clemente Jr. Family Agency entered into the Allstate R3001C Exclusive Agency Agreement, which speaks for itself. Defendant denies the remaining allegations of Paragraph 311.

312.    Every contractual agreement carries with it the implied duty of good faith and fair dealing.

**ANSWER:**    Defendant states that the allegation of Paragraph 312 constitutes a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies that it breached any contract with Plaintiffs and denies the remaining allegations of Paragraph 312.

313.    Allstate's agreement allowed The Roberto Clemente Jr. Family Agency to "transfer its entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest to an approved buyer.  The Company retains the right in its exclusive judgment to approve or disapprove such a transfer."

**ANSWER:**    Defendant states that the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency speaks for itself.  Defendant denies the remaining allegations of Paragraph 313.

314.    The parties reasonably expected that Allstate's judgment would not be arbitrary, capricious, and/or discriminatory when they executed the contract.

**ANSWER:**    Defendant is without information to admit or deny the allegations regarding what Plaintiffs expected. Answering further, Defendant denies that Allstate's judgment was arbitrary, capricious and/or discriminatory and denies the remaining allegations of Paragraph 314.

315.    Allstate blocked The Roberto Clemente Jr. Family Agency from selling its business interest, *i.e.,* the Book, to multiple agencies that fit Allstate's general guidelines.

**ANSWER:**    Defendant denies the allegations of Paragraph 315.

316.    Allstate breached its contractual obligations by terminating the contract based on a discriminatory (illegal) reason.

**ANSWER:**    Defendant denies the allegations of Paragraph 316.

317.    In the alternative, Allstate breached its agreement when it acted in bad faith to strip Plaintiffs' economic interests away from them.

**ANSWER:**    Defendant denies the allegations of Paragraph 317.

318.    Allstate breached its contractual agreements when one of its agents instructed

Plaintiffs on a certain insurance technique and then, after Plaintiffs utilized this instruction, used this insurance practice as pretext to terminate the contract.

**ANSWER:**   Defendant denies the allegations of Paragraph 318.

319.    Allstate further breached other contractual terms of the parties' agreement.

**ANSWER:**   Defendant denies the allegations of Paragraph 319.

320.    In further breach of the contract, Allstate did not allow Plaintiffs the full amount of time for which the parties contracted to sell the Book. Under the contract, and its incorporated supplements, Plaintiffs had until December 1, 2020 to sell their Book. Allstate, however, began giving away Plaintiffs' policies and their Book in October 2020.

**ANSWER:**   Defendant denies the allegations of Paragraph 320.

321.    Allstate paid Plaintiffs no consideration; instead, Allstate gave Plaintiffs' policies away in breach of contract.

**ANSWER:**   Defendant denies the allegations of Paragraph 321.

322.    Upon information and belief, due to Allstate's actions, it was able to convert Plaintiffs' Book based on bad faith.

**ANSWER:**   Defendant denies the allegations of Paragraph 322.

323.    As a direct and proximate result of Defendant's unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's intentional, discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**ANSWER:**   Defendant states that the allegations of Paragraph 323 constitute legal conclusions for which no answer is required. To the extent an answer is required, Defendant denies Defendant discriminated or retaliated against Plaintiffs or engaged in any unlawful practices, denies that Plaintiffs are entitled to any relief in this action, and denies the remaining allegations of Paragraph 323.

### COUNT IV
### Fraud
### (Plaintiffs v. Defendant)

324.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

**ANSWER**:  Defendant realleges and incorporates by reference its answers to the foregoing paragraphs as though fully set forth herein in their entirety.

325.    Defendant materially misrepresented that Plaintiffs would be able to operate with the Book in good faith. Specifically, Allstate, by and through its agents, represented that Plaintiffs would have a good-faith opportunity to grow their Book.

**ANSWER:**  Defendant admits that Plaintiffs had a good faith opportunity to operate and grow their Book, and denies the remaining allegations of Paragraph 325.

326.    Similarly, the Tomaino Insurance Agency, by and through John Tomaino, represented, by and through Valerie Staudt, that Plaintiffs utilize certain discount techniques.

**ANSWER:** Defendant denies that the Tomaino Insurance Agency by and through Tomaino told Staudt to train the Roberto Clemente Jr. Family Agency or its agents (including Plaintiffs) on any subject, including discounts, denies that Staudt taught the Roberto Clemente Jr. Family Agency or its agents (including Plaintiffs) based on any discussion with Tomaino, and denies the remaining allegations of Paragraph 326.

327.    Allstate made these statements knowing that they did not intend to treat Plaintiffs in the same manner as other agencies. Rather, Allstate, by and through their employees, knew that an agency that shares a last name with a famous baseball star might compete with and take business from other agencies. As such, from the beginning, Plaintiffs were sabotaged and not allowed the same business opportunities.

**ANSWER:**  Defendant denies the allegations of Paragraph 327.

328.    Upon information and belief, John Tomaino and the Tomaino Insurance Agency communicated the discount technique by way of Valerie Staudt as his proxy, with the knowledge that the technique was not correct pursuant to Allstate's policies and practices.

**ANSWER:**  Defendant denies the allegations of Paragraph 328.

329.    Upon information and belief, the Tomaino Insurance Agency had a part in Allstate terminating Plaintiffs because they used the technique that the Tomaino Insurance Agency told Valerie Staudt to teach them.

**ANSWER:**  Defendant denies the allegations of Paragraph 329.

330.    Allstate intended for Plaintiffs to rely on their statements. They endeavored for Plaintiffs to rely on their statements because they could not outright refuse to allow them to become

an agency pursuant to anti-discrimination laws. As such, they used bad faith as a means to end around anti-discrimination laws and prematurely terminate Plaintiffs without sufficient cause.

**ANSWER:** Defendant denies the allegations of Paragraph 330.

331.    Tomaino Insurance Agency intended for Plaintiffs to rely on its statements that the technique that Valerie Staudt taught Plaintiffs, by and through John Tomaino's instructions, was the correct technique.

**ANSWER:** Defendant denies that Tomaino told Staudt to train the Roberto Clemente Jr. Family Agency or its agents (including Plaintiffs) on any subject, denies that Staudt taught the Roberto Clemente Jr. Family Agency or its agents (including Plaintiffs) based on any discussion with Tomaino, and denies the remaining allegations of Paragraph 331.

332.    Plaintiffs justifiably relied on Allstate's statements.

**ANSWER:**   Defendant states that the allegation of Paragraph 332 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant denies the allegation of Paragraph 332.

333.    Plaintiffs justifiably relied on the Tomaino Insurance Agency's statements and representations.

**ANSWER:**   Defendant states that the allegation of Paragraph 333 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant denies the allegation of Paragraph 333.

334.    John Tomaino and the Tomaino Insurance Agency ended up receiving Plaintiffs' policy, with little or no consideration paid, in October 2020. Allstate gave Plaintiffs until December 1, 2020 to sell their Book. Upon information and belief, Mr. Tomaino and the Tomaino Insurance Agency knew that they would be receiving Plaintiffs' policies for little or no consideration. As such, they knew that they did not need to buy Plaintiffs' Book that Plaintiffs were trying to sell.

**ANSWER:** Defendant admits that under the Allstate R3001C Exclusive Agency Agreement with the Roberto Clemente Jr. Family Agency, following the termination of the Agreement, if the Roberto Clemente Jr. Family Agency elected to sell the economic interest in the

business, the Roberto Clemente Jr. Family Agency needed to complete the sale to a proposed buyer approved by Allstate and the sale had to be completed on or before December 1, 2020. Defendant denies the remaining allegations of Paragraph 334.

335.    On June 25, 2018, Ms. Staudt, under the pretext of trying to help Plaintiffs, began to help Plaintiffs. She specifically said "can I help you in getting business pushed through and physically write some for you?"

**ANSWER:**   Defendant admits that at certain times, Staudt tried to help Plaintiffs but is without information or knowledge sufficient to admit or deny the alleged quoted statement in Paragraph 335.  Defendant denies the remaining allegations of Paragraph 335.

336.    As noted below, she would rewrite certain policies and on June 28, 2018, stated that Plaintiffs should send her "those photographs and the policy number it's associated with and [she'll] submit the WSR."

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny the alleged quoted statement in Paragraph 336, denies that Staudt "rewrote" policies for Plaintiffs and denies the remaining allegations of Paragraph 336.

337.    Further, Allstate's fraud extended well beyond Mr. Tomaino's statements.

**ANSWER:**   Defendant denies that Allstate engaged in fraud and denies the remaining allegations of Paragraph 337.

338.    In summer, 2019, Plaintiffs asked Ms. Staudt why Plaintiffs were not writing Auto policies.

**ANSWER:**    Defendant is without information or knowledge sufficient to admit or deny the allegation of Paragraph 338.

339.    And they also asked her specifically why every quote that they were making was higher than the potential client's quotes elsewhere, including their current insurance.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny the allegation of Paragraph 339.

340.    Plaintiffs asked whether there were any future discounts that Allstate was going to

market or any adjustment to the rating that would help agents write policies for new business.

**ANSWER:** Defendant is without information or knowledge sufficient to admit or deny

the allegation of Paragraph 340.

341. At that time, Plaintiffs were competitive in writing homeowners' policies but were not writing many auto policies.

**ANSWER:** Defendant is without information or knowledge sufficient to admit or deny

the allegation of Paragraph 341.

342. Ms. Staudt specifically stated that she would come to Plaintiffs' business and go over quotes to make sure that they were not missing any discounts and that they were quoting policies correctly.

**ANSWER:** Defendant admits that Staudt, on occasion, would review quotes with

Plaintiffs and denies the remaining allegations of Paragraph 342.

343. Ms. Staud offered to sign into Plaintiffs' computer systems and provide quotes for Plaintiffs. At one point, Ms. Staudt provided an insurance card template to manually manipulate insurance information. Ms. Staudt said that the card was created by Justin Young and used in his agency.

**ANSWER:** Defendant denies the allegations of Paragraph 343.

344. Plaintiffs trusted Ms. Staudt, believing that she was training them on how to quote insurance policies more effectively. Their reliance on Ms. Staudt was certainly justifiable given her role specifically involved helping insurance agents to obtain more businesses.

**ANSWER:** Defendant admits that Staudt provided Plaintiffs with certain education and

training, including on the proper method of quoting insurance policies, and that Staudt tried to help

Plaintiffs obtain more business. Defendant is without information or knowledge sufficient to admit

or deny whether Plaintiffs trusted Staudt.  Defendant states that whether Plaintiffs' alleged reliance

on Staudt was justifiable constitutes a legal conclusion for which no answer is required. To the

extent an answer is required, Defendant denies the remaining allegations of Paragraph 344.

345. Plaintiffs believed that the discounting techniques that Ms. Staudt taught them fully complied with all insurance department regulations.

**ANSWER:** Defendant admits that the discounts Staudt taught Plaintiffs, when used appropriately, fully complied with all insurance department regulations. Defendant is without information or knowledge sufficient to admit or deny what Plaintiffs "believed". Defendant denies the remaining allegations of Paragraph 345.

346.   Ms. Staudt specifically sat with Mr. Norton in his office to review customers' renewals when they called in and advised him on how to make changes or retain customers who threatened to leave Allstate because of premium increases.

**ANSWER:** Defendant admits that Staudt provided certain training, including related to customer renewals, to Norton at certain times, including on occasion sitting with him in his office, and further states that Staudt trained all agents to record customer information accurately. Defendant denies the remaining allegations of Paragraph 346.

347.   Ms. Staudt taught Plaintiffs a variety of techniques to reduce prices.

**ANSWER:** Defendant admits that Staudt provided certain training to some or all of Plaintiffs, including regarding how to record customer information and apply discounts accurately, which can result in reduced prices. Defendant denies the remaining allegations of Paragraph 347.

348.   Ms. Staudt specifically said that if Plaintiffs were going to apply a discount that lowered the premium, they should only apply one discount at renewal or release and not multiple in case they needed to apply another discount to retain a customer at a later date.

**ANSWER:** Defendant denies the allegations of Paragraph 348.

349.   In Summer, 2019, Ms. Staudt specifically taught Plaintiffs how to apply the widow discount, amongst other discounting techniques.

**ANSWER:**  Defendant admits that at certain times, Staudt provided certain training to some or all of Plaintiffs, including regarding how to record customer information and apply discounts accurately. Defendant denies that there was a "widow discount," denies that Plaintiffs accurately recorded customer information as Staudt instructed and denies the remaining allegations of Paragraph 349.

350.    In Summer, 2019, Ms. Staudt taught Plaintiffs how to apply a retirement vs. employed discount or a business use vs. pleasure discount.

**ANSWER:** Defendant admits that at certain times, Staudt provided certain training and education to some or all Plaintiffs, including regarding how to record customer information and apply discounts accurately and how certain terms are defined and when they apply. Defendant denies that Plaintiffs accurately recorded customer information as Staudt instructed, denies that what Plaintiffs describe in Paragraph 350 are "discounts" and denies the remaining allegations of Paragraph 350.

351.    In Summer 2019, Ms. Staudt represented that all of these discounts were strictly in accordance with the way that Allstate quotes insurance and complied with all insurance department regulations.

**ANSWER:** Defendant admits that at certain times, Staudt provided certain training to some or all of Plaintiffs, including regarding how to record customer information and apply discounts accurately, and states that Staudt trained all agents to record customer information and apply discounts accurately. Answering further, Defendant states that the training and education that Staudt provided Plaintiffs, when applied correctly, was in accordance with the way Allstate quotes insurance and complied with all insurance department regulations. Defendant denies that Plaintiffs recorded customer information as Staudt instructed and denies the remaining allegations of Paragraph 351.

352.    If Allstate deemed that any of these discount techniques were improper, including the widow discount, then it was Allstate's employees and representatives that taught Plaintiffs these techniques.

**ANSWER:** Defendant denies that there was a "widow discount," denies that Staudt taught Plaintiffs any improper discounting or other practices and denies the remaining allegations of Paragraph 352.

353.    Ms. Staudt also had the power and did enter Plaintiffs' computer system to view emails and access their policies.

**ANSWER:** Defendant denies the allegations of Paragraph 353.

354.    Allstate had installed on Plaintiffs' computers an application in which they had to log onto to conduct their business.

**ANSWER:** Defendant admits that to conduct certain business as an Allstate agency,

Plaintiffs, like other Allstate agencies, needed to download an application to their computers.

Defendant denies the remaining allegations of Paragraph 354.

355.    The Allstate application, Alias, prevented Plaintiffs from performing non-Allstate functions on their laptops.

**ANSWER:**   Defendant denies the allegations of Paragraph 355.

356.    Plaintiffs had to use a two-step authentication procedure to log onto Allstate's system, which included using their specific employee identification number.

**ANSWER:** Defendant admits the allegations of Paragraph 356.

357.    Ms. Staudt did not have to use two-step authentication to log into Plaintiffs'/Allstate's system. Rather, she could bypass the two-step authentication using a platform called EAGENT.

**ANSWER:** Defendant denies the allegations of Paragraph 357.

358.    This allowed her to interact as whoever she wished; that is, she could log in as one of the individual Plaintiffs and Allstate's system would not show Ms. Staudt's name, it would show the individual Plaintiff.

**ANSWER:** Defendant denies the allegations of Paragraph 358.

359.    Ms. Staudt was intimately involved in Plaintiffs' quoting. She would tell them that she could remit policies for them if they did not know how.

**ANSWER:** Defendant admits that at certain times Staudt assisted Plaintiffs with quoting

policies. Answering further, Defendant admits on occasion Staudt "remitted", or transferred,

policies which Plaintiffs had already bound to the corporate office. Defendant denies that Staudt

was "intimately involved" in Plaintiffs' quoting and denies the remaining allegations of Paragraph

359.

360.    Ms. Staudt also had the ability to remotely log into or enter through Plaintiffs'

admin interface on Plaintiffs' computer systems as well.

**ANSWER:** Defendant denies the allegation of Paragraph 360.

361.   Plaintiffs still, to this day, are unaware of the practice that Allstate claims is fraudulent as Allstate never provided them with any investigative findings. They were provided no due process.

**ANSWER:** Defendant admits that it did not provide Plaintiffs with "investigative findings" but denies that Plaintiffs are unaware of the fraudulent practice for which their agency was terminated and denies the remaining allegations of Paragraph 361.

362.   Plaintiffs presume, because an Allstate investigator told Mr. Norton, that the application of a widow technique was Allstate's fraudulent and pretextual basis for terminating their business and employment.

**ANSWER:** Defendant is without information or knowledge sufficient to admit or deny what Plaintiffs presume. Answering further, Defendant states that Plaintiffs' falsification of marital status on numerous customer policies as "widowed" to provide customers with more attractive rates to which they were not otherwise entitled was the basis for terminating Plaintiffs' agency. Defendant denies the remaining allegations of Paragraph 362.

363.   Plaintiffs were taught a variety of techniques from Ms. Staudt. If this or any technique was indeed not in congruence with Allstate's policies – which Plaintiffs in no way admit that it was not because they have no way of knowing – then it was Ms. Staudt who taught Plaintiffs this technique and Plaintiffs' justifiably relied on her teachings.

**ANSWER:** Defendant admits that Staudt provided certain training to some or all of Plaintiffs, including regarding how to record customer information and apply discounts accurately. Defendant denies that Staudt taught Plaintiffs any techniques that did not comply with Allstate's policies, denies that Plaintiffs justifiably relied on Staudt's teachings when they falsified the marital status of customers, and denies the remaining allegations of Paragraph 363.

364.   Further, Ms. Staudt, as Allstate's representative, taught Plaintiffs a variety of discounting techniques upon which they relied. Plaintiffs have no way of knowing which, if any techniques were not deemed in congruence with Allstate's purported policies. Only Ms. Staudt and Allstate know.

**ANSWER:** Defendant admit that Staudt provided certain training to some or all of Plaintiffs, including regarding how to record customer information and apply discounts accurately. Defendant denies that Staudt taught Plaintiffs any techniques that did not comply with Allstate's policies, denies that Plaintiffs relied on Staudt's teachings when they falsified the marital status of customers, and denies the remaining allegations of Paragraph 364.

365.    Further, Ms. Staudt could, as she had access to Plaintiffs' computers and did work as if she were Plaintiffs, could have submitted a policy that gave Allstate fodder to target Plaintiffs.

**ANSWER:**  Defendant denies the allegation of Paragraph 365.

366.    Allstate by and through Ms. Staudt, leveraged Ms. Staudt's teachings to target Plaintiffs.

**ANSWER:**  Defendant denies the allegation of Paragraph 366.

367.    Allstate as an entity, stood to gain from pretextually targeting Plaintiffs for fraud. After termination, Allstate arbitrarily deemed certain of Plaintiffs' policies to be unvested. As such, these policies became owned by Allstate.

**ANSWER:**  Defendant denies the allegations of Paragraph 367.

368.    Allstate then used these policies and distributed them to their other agents while Plaintiffs were left to pay the balance of their loan with Allstate Lenders Corp. ("ALP"). Indeed, Plaintiffs are firmly aware that Allstate gave Plaintiffs' policies away to Mr. Tomaino *before* their deadline.

**ANSWER:**  Defendant denies the allegations of Paragraph 368.

369.    Allstate could give the policies to its preferred agents without having to pay for them while Plaintiffs were stuck repaying a loan from ALP.

**ANSWER:**  Defendant denies the allegations of Paragraph 369.

370.    Further, in the alternative, it also stands to reason that Ms. Staudt changed a policy that Plaintiffs owned to trigger a fraud alert. Ms. Staudt had access to their computers. Ms. Staudt had the ability, as an admin, to log into Allstate's interface from anywhere, and Ms. Staudt could write, change, and edit policies under Ms. Dschuhan's agency number. Ms. Stuart also viewed Plaintiffs' email. And she wrote policies from Plaintiffs' computers. Ms. Staudt could have easily changed a policy from one that complied to one that did not comply.

**ANSWER:**  Defendant denies the allegations of Paragraph 370.

371.    Ms. Staudt specifically, on June 28, 2018 at 6:45 p.m., offered to remit a policy for Plaintiffs on behalf of Plaintiffs. Ms. Staudt used Plaintiffs' Allstate accounts and made changes to policies that would make it look like Plaintiffs themselves made the changes.

**ANSWER:**  Defendant is without information or knowledge sufficient to admit or deny whether Staudt offered to remit a policy on the date and time referenced in Paragraph 171. Defendant denies the remaining allegations of allegations of Paragraph 371.

372.    Plaintiffs committed no fraud. Either Ms. Staudt fraudulently submitted a policy without their knowledge (she had complete access and ability to do so) or Ms. Staudt taught them techniques upon which they relied and Allstate was able to flag. Either way, Ms. Staudt made explicit misrepresentations.

**ANSWER:**  Defendant denies the allegations of Paragraph 372.

373.    The discovery rule tolls Plaintiffs' claims. Plaintiffs did not discover until 2022, through a sworn declaration from John Tomaino, that Allstate had given away its Book of business before the December 1, 2020 deadline.

**ANSWER:**  Defendant states that the allegations of Paragraph 373 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant denies the allegations of Paragraph 373.

374.    As a direct and proximate result of Defendant's unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested

**ANSWER:**  Defendant states that the allegations of Paragraph 374 constitute legal conclusions for which no answer is required. To the extent an answer is required, Defendant denies Defendant discriminated or retaliated against Plaintiffs or engaged in any unlawful practices, denies that Plaintiffs are entitled to any relief in this action, and denies the remaining allegations of Paragraph 374.

## COUNT VII
### Tortious Interference
### (Plaintiffs v. Defendant)

375.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in

their entirety.

**ANSWER:**   Defendant realleges and incorporates by reference its answers to the foregoing paragraphs as though fully set forth herein in their entirety.

376.   A valid contract existed between Plaintiffs and Allstate Insurance Company.

**ANSWER:**   Defendant states that the allegation of Paragraph 376 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant admits that Allstate and the Roberto Clemente Jr. Family Agency entered into the Allstate R3001C Exclusive Agency Agreement, which speaks for itself.  Defendant denies the remaining allegations of Paragraph 376.

377.   Plaintiffs had a valid contract with Allstate's loan company.

**ANSWER:**   Defendant states that the allegation of Paragraph 377 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant is without information or knowledge sufficient to admit or deny the allegation of Paragraph 377.

378.   A valid contract also existed between Plaintiffs and Daniel Cone for Mr. Cone's Book.

**ANSWER:**   Defendant states that the allegation of Paragraph 378 constitutes a legal conclusion for which no answer is required. To the extent an answer is required, Defendant admits that Daniel Cone and the Roberto Clemente Jr. Family Agency LLC entered into an Asset Purchase Agreement, which speaks for itself.  Defendant denies the remaining allegations of Paragraph 378.

379.   Defendant knew about the existence of the contracts between Plaintiffs and Allstate Insurance Company and Mr. Cone.

**ANSWER:**   Defendant admits that it knew of the existence of the Allstate R3001C Exclusive Agency Agreement between Allstate and the Roberto Clemente Jr. Family Agency, and that certain Allstate representatives knew, at certain times, of the existence of the Asset Purchase

Agreement between Daniel Cone and the Roberto Clemente Jr. Family Agency LLC. Defendant

denies the remaining allegations of Paragraph 379.

380.    Defendant acted intentionally and improperly by instructing Valerie Staudt to teach Plaintiffs discount techniques for the purpose of eventually securing Plaintiffs clients.

**ANSWER:**    Defendant denies the allegation of Paragraph 380.

381.    Defendant interfered with the contract that Plaintiffs had between Plaintiffs and Mr. Cone. As detailed more fully below and above, Allstate stripped Plaintiffs of the benefit of their bargain with Mr. Cone to improperly secure an economic advantage for itself.

**ANSWER:**    Defendant denies the allegation of Paragraph 381.

382.    The loan agreement was through Allstate Lenders Corp ("ALC"). Allstate Lenders Corp. is a separate entity from Allstate. Allstate has emphasized in this case that Plaintiffs had a separate contract with ALC. [ECF, 44] ("Instead, Plaintiffs have merely alleged that they have defaulted on the *loan* contract with Allstate's loan company as a consequence of Allstate terminating its *separate* contract with Plaintiffs.") (emphasis not added).

**ANSWER:**    Defendant states that ECF 44 speaks for itself. Defendant is without

information or knowledge sufficient to admit or deny the remaining allegations of Paragraph 382.

383.    Plaintiffs entered into the loan agreement with ALC in or around 2018.

**ANSWER:**    Defendant is without information or knowledge sufficient to admit or deny

the allegation of Paragraph 383.

384.    Plaintiffs had a strict repayment schedule with ALC. ALC would take a payment straight off the top of Plaintiffs' commission. The repayment term was for approximately 4 or 5 years.

**ANSWER:**    Defendant is without information or knowledge sufficient to admit or deny

the allegations of Paragraph 384.

385.    ALC would take a direct deposit from Plaintiffs' commission for repayment of the loan.

**ANSWER:**    Defendant is without information or knowledge sufficient to admit or deny

the allegation of Paragraph 385.

386.    At all times, Plaintiffs believed that they were purchasing a fully vested Book.

Vested means that they owned the particular policies in full that Mr. Cone sold them.

**ANSWER:**   Defendant is without information or knowledge to admit or deny what

Plaintiffs believed.  Defendant denies the remaining allegations of Paragraph 386.

387.   Plaintiffs were never told that any portion of Plaintiffs' Book was not vested.  In or around, December 2020, Allstate made a determination on which of Plaintiffs' insurance policies were vested or not.  Plaintiffs had no due process for this determination.   Allstate unilaterally determined which of Plaintiffs' policies that their agency fully owned and which Allstate retained ownership.

**ANSWER:**   Defendant denies the allegations of Paragraph 387.

388.   Plaintiffs bought a Book that was 40 years old.  Plaintiffs were led to believe that all of their newly-purchased policies were fully vested.

**ANSWER:**   Defendant denies that it led Plaintiffs to believe any incorrect vested status

of the policies and is without information or knowledge to admit or deny the remaining allegations

of Paragraph 388.

389.   Plaintiffs never received any official documentation regarding whether the Book was or was not vested.

**ANSWER:**   Defendant is without information or knowledge to admit or deny the

allegations of Paragraph 389.

390.   The value to Allstate of the Book not being vested is that Allstate could theoretically incur a windwall by arbitrarily terminating an agency.  The unvested portion of the Book would remain owned by Allstate. As such, upon termination, more of Plaintiffs' book would automatically revert back to Allstate. And Allstate could begin distributing Plaintiffs' Book to its preferred agents.

**ANSWER:**   Defendant denies that Allstate "arbitrarily" terminated any agency, and

denies the remaining allegations of Paragraph 390.

391.   In fact, Plaintiffs know that is what happened as Mr. Tomaino received seeded policies from Allstate *before* the termination date.

**ANSWER:**   Defendant denies the allegations of Paragraph 391.

392.   ALC, in turn, sent Plaintiffs a letter stating that Plaintiffs owed money still because portions of the Book were not vested.  Plaintiffs should not have owed any money to ALC at the

termination of their business.  The equity in their Book should have far exceeded any repayment.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

the allegations of 392.

393.   Plaintiffs put money down for their Book.  And in return, Plaintiffs purchased a Book with a certain amount of equity.  Plaintiffs grew their Book from the day they bought it. As such, logic follows that Plaintiffs should not have been sent a letter from ALC claiming that they owed money to ALC.

**ANSWER:**   Defendant admits that Daniel Cone and the Roberto Clemente Jr. Family

Agency LLC entered into an Asset Purchase Agreement related to the sale of Cone's economic

interest in the business, which agreement speaks for itself. Defendant denies the remaining

allegations of Paragraph 393.

394.   Plaintiffs never received any notification from Allstate regarding the value of the Book.  Allstate unilaterally told Plaintiffs that their Book was not vested.

**ANSWER:**   Defendant denies the allegations of Paragraph 394.

395.   Allstate interfered, as incorporated by the allegations above, by purposely and pretextually terminating the contract. This set the wheels in motion.  Plaintiffs now would have to forfeit their Book to Allstate and ALC.

**ANSWER:**   Defendant denies the allegation of Paragraph 395.

396.   But Allstate did not stop at simply improperly terminating Plaintiffs' agreements and employment.  Allstate unilaterally determined that a number of Plaintiffs' policies were not vested.  As such, ALC claimed that Plaintiffs owed ALC money.

**ANSWER:**   Defendant is without information or knowledge sufficient to admit or deny

whether ALC claimed that Plaintiffs owed ALC money. Defendant denies the remaining

allegations of Paragraph 396.

397.   As noted above, Plaintiffs in no way should have owed ALC money following the termination of their agency.

**ANSWER:**   Defendant denies the allegation of Paragraph 397.

398.   Allstate, through this vesting determination, was able to abscond with Plaintiffs' policies without paying for them.  And then force Plaintiffs to pay back a loan with ALC, a separate

entity, which they should have had sufficient equity in their Book to pay back.

**ANSWER:**   Defendant denies the allegations of Paragraph 398.

399.   These actions interfered with Plaintiffs' contract with ALC and could have induced a potential breach of the agreement with ALC.

**ANSWER:**   Defendant denies the allegations of Paragraph 399.

400.   The Book sale agreement was with Mr. Cone.  Plaintiffs had a right to the benefit of that bargain.  Allstate intentionally interfered with it.

**ANSWER:**   Defendant admits that Plaintiffs entered into an Asset Purchase Agreement with Mr. Cone, denies that Plaintiffs did not receive the benefit of their bargain under that agreement, and denies the remaining allegations of Paragraph 400.

401.   Allstate had no privilege to interfere with both ALC's agreement with Plaintiffs and Daniel Cone's.  Allstate further acted with malice with respect to both agreements.

**ANSWER:**   Defendant denies that it interfered with any agreements and denies the remaining allegations of Paragraph 401.

402.   Defendant unjustifiably induced a third party to not perform the contract.

**ANSWER:**   Defendant denies the allegation of Paragraph 402.

403.   Defendant's actions caused Plaintiffs to suffer injury.

**ANSWER:**   Defendant denies the allegation of Paragraph 403.

404.   As a direct and proximate result of Defendant's unlawful practices, Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's acts unless and until the Court grants the relief requested.

**ANSWER:**   Defendant states that the allegations of Paragraph 404 constitute legal conclusions for which no answer is required. To the extent an answer is required, Defendant denies Defendant engaged in unlawful practices and that Plaintiffs are entitled to any relief in this action, and denies the remaining allegations of Paragraph 404.

## AFFIRMATIVE AND OTHER DEFENSES

1.     Plaintiffs' TAC, in whole or in part, fails to state a claim upon which relief may be granted.

2.     Plaintiffs' claims and right to recovery are barred, in whole or in part, by the applicable statute of limitations.

3.     Plaintiffs' TAC is barred, in whole or in part, to the extent Plaintiffs failed to timely and properly exhaust any required administrative, statutory and/or jurisdictional prerequisites for the commencement of the action.

4.     Plaintiffs may not recover punitive damages because Defendant engaged in good faith efforts to comply with the law.

5.     Subject to a reasonable opportunity for investigation and discovery, Plaintiffs' claims are barred by the doctrines of waiver, estoppel, unclean hands, and/or laches.

6.     To the extent Plaintiffs have failed to mitigate any alleged damages, any recovery must be denied or correspondingly reduced.

7.     Plaintiffs' recovery in this action, if any, must be decreased by the amount of any earnings, compensation and benefits received by Plaintiffs during the relevant period.

8.     Defendant is not liable for any alleged harassment because no tangible employment action was taken and (a) Defendant exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

9.     Defendant reserves the right to amend its Answer and assert any additional defenses which become known to Defendant.

WHEREFORE, Defendant respectfully requests that the Court enter judgment in favor of Defendant and against Plaintiffs, that Plaintiffs take nothing by way of their Third Amended

Complaint, that costs and attorneys' fees be assessed against Plaintiffs, and that Defendant be awarded all other appropriate relief.

Dated:  April 27, 2023                          Respectfully submitted,

                                                By: */s/ Alan S. King*
                                                _____

                                                RILEY SAFER HOLMES & CANCILA LLP
                                                Alan S. King (admitted *pro hac vice*)
                                                Noreen H. Cull (admitted *pro hac vice*)
                                                Ariel Schepers Wilson (admitted *pro hac vice*)
                                                70 West Madison Street, Suite 2900
                                                Chicago, Illinois 60602
                                                Telephone:    312.471.8700
                                                Facsimile:    312.471.8701
                                                aking@rshc-law.com
                                                ncull@rshc-law.com
                                                awilson@rshc-law.com

                                                FISCHER & PHILLIPS LLP
                                                Brian D. Balonick (PA 89272)
                                                Erica G. Wilson (PA 316343)
                                                Six PPG Place, Suite 830
                                                Pittsburgh, PA 15222
                                                Telephone:    (412) 822-6633
                                                Facsimile:    (412) 774-6101
                                                bbalonick@fisherphillips.com
                                                ewilson@fisherphillips.com

                                                *Counsel for Defendant Allstate Insurance Company*